

1    PADAM KUMAR KHANNA
     2600 Tenth Street
2    Berkeley, CA. 94710

3    Tel: 1-510-524-6181
     Fax: 1-510-524-6765
4

5    EMail: pkhanna@pacbell.net
     *Pro Per*

**FILED**

MAY 1 6 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

6

7    UNITED STATES DISTRCIT COURT

8    NORTHERN DISTRICT OF CALIFORNIA

     OAKLAND DIVISION
9

10

11   PADAM KUMAR KHANNA,                    )   Case No: C07 - 02587  EMC
                                            )
12              Plaintiff,                   )   COMPLAINT FOR MONEY DAMAGES
                                            )   FOR VIOLATION OF CIVIL RIGHTS,
13        vs.                                )   FIFTH, SIXTH, EIGHTH AND
                                            )   FOUTEENTH AMENDMENTS TO THE
14   THE STATE BAR OF CALIFORNIA;           )   UNITED STATES CONSTITUTION,
                                            )   PERJURY, AND REQUEST FOR
15   PAT McELROY, Judge of The State Bar     )   INJUNCTIVE AND DECLATORY RELIEF,
                                            )   42 U.S.C. § 1983
16   Court of California; TAMMY ALBERTSEN-   )
                                            )
17   MURRAY, Deputy Trial Counsel, Office of )
                                            )
18   the Chief Trial Counsel, the State Bar of )
                                            )   **DEMAND FOR JURY TRIAL**
19   California;  ALICE VERSTEGEN,           )
                                            )
20   Investigator of the State Bar of California; )
                                            )
21   JAGJIT SINGH RANDHAWA and BALJIT       )
                                            )
22   RANDHAWA,                               )
                                            )
23              Defendants.                  )

C · 07 - 5136

Plaintiff complains of Defendants named above and alleges herein as follows:

**INTRODUCTION**

1.       This is an unprecedented and unparalleled case in the history of American jurisprudence.  This case totally abolishes the liberty and property due process rights of California attorneys.  It subjects them to a trial, which is not conducted in a Court of Law as

defined by the acts of Congress and the California State Legislature. The decision of a single State Bar Court trial judge is the final decision, which the California Supreme Court can affirm by simply denying the review.

2.      Armed with such power and authority, the State Bar Court trial judge (judge) can conduct the trial any which way she desires.  The trial judge is the sole judge and jury – a single person show.  The State Bar Court judge's power is even superior to the President of the United States.  President Nixon resigned because there was an implication that he erased 18 ½ minutes of incriminating tape.  Here the judge has erased one (1) hour forty (40) minutes of incriminating testimony of the main witness.  The electronic recording device, which recorded witness's testimony at the trial (no court reporters are allowed to transcribe the State Bar trial proceedings), was in an exclusive control of the judge.  She deliberately erased the main accuser's testimony on cross-examination because that would have exonerated plaintiff.  The California Supreme Court by denying the review has affirmed this authority of the judge.  This is very well documented in the trial records.

3.      The judge has the full authority to admit or deny any evidence, document or testimony regardless of any legal standard.  Proceedings before the State Bar Court are *sui generis*, which is defined as unique, peculiar and constituting a class alone. Ordinary criminal or civil procedural safeguards do not apply. The trial judge has an absolute discretion to disregard any or all civil or criminal procedural safeguards and follow, if she so desires, the Rules of Procedure and Practice published by the State Bar Court.  The State Legislature does not enact these Rules of Procedure and Practice.  The trial record is full of instances where the judge has denied admission of exculpatory documents such as the certificate of incorporation of the Indian corporation and the DHL Airway Bill receipt showing delivery of DHL cover letter mailed from India and duly received at Ms. Verstegen, the State Bar investigator's address at her Los Angeles office. The judge has overruled legitimate objections.  The judge has denied plaintiff's twelve character witnesses to testify as they were ready to testify but the judge ruled that they had to be issued with subpoenas and without subpoenas they could not testify.

4.      Again armed with such power, the trial judge has absolute discretion to call the witnesses as credible even though they commit blatant, obvious and ironclad perjury (Well documented in this case). The Supreme Court does not have time to review because undoubtedly the Supreme Court judges are extremely busy and profoundly overworked.

5.      Furthermore, the trial judge has the discretion to conspire with the prosecuting attorney of the State Bar to allow the prosecutor to fabricate, spoliate and destroy the crucial exculpatory evidence and term it as the evidence planted secretly by the charged attorney as part of the "*web of deception*" to lure his clients to invest in a sham and non-existent company in India. Never before in the history of American judicial settings has a judge accused a charged attorney with fraudulent, untrue and speculative statements such as, " *Absent any evidence of tampering, the Court believes that Respondent somehow had the letter delivered to the State Bar and not necessary from India"* and gotten away with. The trial judge implied that the plaintiff somehow or the other put on a Harry Potter invisible cape and performed a Houdini act by bypassing all the security, signup logs, found the State Bar investigator's desk, placed the evidence and disappeared.  Plaintiff is unaware of the reason as to why the Supreme Court has no comment about this statement of the trial judge. This incidence was the crucial issue of conviction of plaintiff by the trial judge for weaving a so-called *web of deception*.

6.      These are some of the legal and factual issues before this Court in this case.  This is a case where one person (the State Bar Court trial judge, Ms. Pat McElroy, who got so carried away with hate, prejudice and bias and who possesses enormous power and authority), can take the law into her own hands as the California Supreme Court which has an exclusive authority to administer and regulate State Bar Court does not like to interfere and not accord a judicial hearing, present oral arguments or issue a written opinion but simply deny the review.

7.      On October 20th, 2004, judge Pat McElroy, the trial judge of the State Bar Court, issued a decision after a three days trial wherein she immediately placed plaintiff on an involuntary inactive enrollment effective within three days of the decision invoking California Business and Professions Code section 6007 (c)(4) and rule 220(c) of the Rules of Procedure of the State Bar and recommended disbarment.  This order suspended plaintiff from practicing his

profession. No review was sought from the Review Department of the State Bar as plaintiff had

an option to seek review directly from the California Supreme Court. Plaintiff filed a timely

Petition for Review with the Supreme Court. The Supreme Court did not accord any judicial

hearing or allow plaintiff to present any oral argument and summarily denied plaintiff's petition

on June 21, 2006 and issued the Final Judgment of disbarment and made the decision of the trial

judge of the State Bar stand as the final decision of the case. Plaintiff was deprived of his right

to practice his profession BY THE TRIAL JUDGE of the State Bar for one and one half year

before the Supreme Court made its decision as the final judgment. Plaintiff pleaded before the

Supreme Court that the State statute Business and Professions Code section 6007(c)(4) was

unconstitutional and even if it was constitutional, it did not allocate the power to suspend a

license of an attorney in the hands of a single referee or a judge of the trial department of the

State Bar Court. The Supreme Court was again silent on this issue. Plaintiff respectfully

petitions this Court to rule whether Business and Professions Code 6007(c)(4) and rule 220(c) of

the Rules of Procedure of State Bar Court are valid and constitutional.

     8.     In her decision of October 20, 2004 (Decision) judge McElroy ruled that in a

single act plaintiff, eleven years ago, sometimes in November 1996, lured his husband and wife

team of clients to invest in a sham and non-existent corporation in India. Judge stated that

plaintiff used the funds, which the clients gave plaintiff for investment in the so-called non-

existent Indian Corporation, instead, for personal purposes. Her decision stated that the clients

were promised a stock certificate indicating the number of shares in the fake Indian Company,

which was labeled as Amerindia Foods Limited (AFL). They testified under the penalty of

perjury that they were *never* contacted by AFL or its officers, that they never received any mail

or letters from AFL, that all three letters from AFL were hand delivered by plaintiff. No other

proof whatsoever was offered. The judge regarded the testimony of Jagjit and Baljit as credible.

The prosecutor presented three letters written on the letterhead of AFL stationary and signed by

the officers and directors of AFL which the prosecutor alleged that these letters were NOT

written by AFL or its fake and made up officers but by plaintiff himself to defraud his clients.

Furthermore, the prosecutor presented the testimony of State Bar Investigator, Alice Verstegen,

1   who testified that she tried to contact the bogus Indian Company, AFL, and its officers in India

2   but never got any response. Verstegen also testified that she found an envelop that mysteriously

3   appeared on her desk in her offices in Los Angeles which was purportedly written by the

4   Chairman and Director of Finance of AFL and that this envelop never came through the regular

5   mail from India even though she made enquiries at her place of business.  The judge ruled that

6   by creating a fake, non-existent company in India, fabricating AFL letterheads, impersonating

7   AFL officers and placing favorable letter mysteriously at the desk of the State Bar investigator,

8   plaintiff, a seasoned attorney created a *"web of deception"* to *seduce* his clients in investing their

9   money.  She stated that these acts of moral turpitudes and dishonesty shock the conscience of the

10  legal profession, pose a danger to the public and degrade the highest professional standards in

11  attorneys.  How could a judge with legal background and thoroughly vetted by the Supreme

12  Court could use such powerful derogatory, abusive, insulting and untrue statement is beyond the

13  imagination of plaintiff.  It is absolutely clear that the Supreme Court has given hundred percent

14  weight to the judge's finding and recommendation WITHOUT going through the records,

15  documents, evidence, testimonies and the trial transcripts.

16      9.      This Decision became the final decision as the Supreme Court denied to review

17  the case. (Attached as Annexure 13 of the Criminal Complaint which is Attachment One))

18      10.     As AFL and its directors and officers all resided in India, it was extremely

19  difficult to produce duly attested and authenticated documents admissible to the Court in time.

20  The documents presented by plaintiffs during trial including incorporation certificate of AFL in

21  India and other documents of AFL's existence in India were made inadmissible and the judge

22  accused plaintiff of fabricating these fake documents and misrepresenting to the Court about the

23  existence of AFL.  The judge disregarded and rejected any and all documents presented to show

24  that AFL did in fact existed in India.  The judge termed these documents as fake and

25  manufactured by plaintiff and categorized the presentation as misrepresentations to the Court

26  without giving any reason.

27      11.     The prosecutor offered no evidence, whatsoever, to prove that AFL was indeed a

28  sham and non-existent company set up by imagination of plaintiff.  The judge's sole reliance was

1   on the testimony of Ms. Verstegen, the State Bar investigator who testified that she wrote three

2   letters to the directors of AFL but never got any reply.

3       12.    *NEW EVIDENCE, RECENTLY DISCOVERED IN INDIA PROVES*

4   *BEYOND ANY SHADOW OF DOUBT THAT THE JUDGE AND THE PROSECUTOR*

5   *CONSPIRED TO FRAME PLAINTIFF AND THAT THE WITNESSES AT THE TRIAL*

6   *COMMITTED BLATANT PERJURY AND THAT THE PROSECUTOR, MURRAY,*

7   *SUBORNATED WITH THE WITNESSES JAGJIT, BALJIT AND VERSTEGEN, TO*

8   *COMMITT PERJURY UNDER OATH AND THAT THE PROSECUTOR, MURRAY*

9   *FABRICATED, DESTROYED, AND/OR SPOLIATED THE CRUCIAL EXCULPATORY*

10  *EVIDENCE – THE LETTER FROM AFL IN INDIA.*

11      13.    An authenticated copy of the CRIMINAL COMPLAINT filed by Amerindia

12  Foods Limited (AFL) in an Indian Criminal Court against Jagjit Singh Randhawa and his wife

13  Baljit Randhawa and duly attested by the Consul of the United States Embassy in the Republic of

14  India on February 8, 2007 attached herewith reveals the following:

- That AFL is indeed a legitimate Indian Corporation duly existing and registered in the State of Andhra Pradesh, India and contrary to judge McElroy's finding, AFL is not a sham and non-existing company.

- That Jagjit Randhawa violated Indian Penal Code, Section 191 when he made untrue and fabricating statements under oath in a judicial setting that he (Jagjit) did not have any contacts with AFL as AFL presented substantial evidence to the Court about his contacts both documentary and direct.

- That Jagjit did receive corresspondence from AFL wherein he was in touch with AFL and its officers and according to AFL's records submitted with the said complaint reveal that he was sent at least five letters and an envelope containing the stock certificate.

- That Jagjit's remittance of funds for investment, wired through Mr. Padam Khanna, his attorney in California, was duly acknowledged by AFL and his testimony that Mr. Padam Khanna misappropriated those funds for his own personal use was incorrect and fraudulent. Appropriate bank records with the dates of remittances and acknowledment in the corporate books of AFL were produced and attached with the complaint by AFL.

- That Jagjit committed an act of perjury when he stated to the Court during the trial of Mr. Padam Khanna, his attorney, that he did NOT receive a Stock Certificate acknowleding his investment. AFL's records showed that on November 11, 2003 a Stock Certificate of face value Rs. 10/- each and bearing 50,000 shares was duly issued against his payment of Rs. 5,00,000 paid by Draft Order No. 001108 dated December 30, 1996 issued by Union bank of India.

- That Jagjit committed various acts of perjury when he testified under oath that he did not receive the three letters admitted in evidence by prosecutor Murray in Padam Khanna's case before the State Bar. The three letters in question were indeed written by the officers of AFL and duly addressed to Jagjit at his given address.

14.    This evidence is admissible in the U.S. Courts as it is duly authenticated and attested by the U.S. Consul in the foreign country. The following case law confirms the authentication and attestation.

*Societe National Industrielle Aerospatiale v. U.S. District Court,* 107 S. Ct. 2542 & N. 28 (1987). *Grand Jury Proceedings: The Bank of Nova Scotia II, In re ,* 740 F.2d 817 (11th Cir. 1984), *cert. den.,* 469 U.S. 1106 (1985); 105 S. Ct. 778 (1985); *United States v. Bank of Nova*

*Scotia I,* 691 F.2d 1384 (11th Cir. 1982), cert. denied, 103 S. Ct. 3086 (1983); *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468 (9th Cir. 1992); *In re Perrier Bottled Water Litigation,* 138 F.R.D. 348 (D. Conn. 1991); *Reinsurance Co. v. Administratia Asigurarilor de Stat,* 902 F.2d 1275 (7th Cir. 1990); *In Re Grand Jury Proceedings Yanagihara,* 709 F. Supp. 192 (C.D. Cal 1989); *United States v. Rubin,* 836 F.2d 1096 (8th Cir. 1988); *Hudson v. Hermann Pfanter GmbH & Co.,* 117 F.R.D. 33 (N.D.N.Y. 1987); *United States v. Davis,* 767 F.2d 1025 (2d Cir. 1985); *Graco, Inc. v. Kremlin, Inc., 101 F.R.D. 503 (N.D. Ill. 1984); Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 42 (D.D.C. 1984); *United States v. Toyota Motor Corp.,* 569 F. Supp. 1158 (C.D. Cal. 1983); *Hong Kong and Singapore Bank Corp. v. Commissioner,* 85 T.C. No. 41 (Nov. 5, 1985); *United States v. First National Bank of Chicago,* 699 F.2d 341 (7th Cir. 1983); *United States v. Vetco,* 691 F.2d 1281 (9th Cir.) cert. denied, 454 U.S. 1098 (1981); *SEC v. Banca della Svizzera Italiana,* 92 F.R.D. 111 (S.D.N.Y. 1981); *In re Uranium Antitrust Litigation,* 480 F. Supp. 1138 (N.D. Ill. 1979); *In re Westinghouse Elec. Corp. Uranium,* 563 F.2d 992 (10th Cir. 1977); *Federal Maritime Commission v. DeSmedt, 366 F. 2d 464 (2d Cir.), cert. denied,* 385 U.S. 974 (1966); *Societe Internationale v. Rogers, 357 U.S. 197 (1958).*

15.      The enclosed copy of the criminal complaint filed in India by AFL against Jagjit and his wife Baljit is duly attested by the Ministry of External Affairs of India and further attested and autheticated under the Hague Convention and in accordance with the laws of the United States by the Embassy of the United States in India. (Attachment One)

16.      Plaintiff also encloses a recently issued letter, dated February 15, 2007 by one Mr. R. S, Mahla, Advocate Delhi High Court, India, who represents AFL in India. The letter is addressed to Mr. Jagjit Singh Randhawa and Mrs. Baljit Randhawa. It serves as a Legal Notice about a civil suit to be filed. Indian laws require that a Legal Notice apprising the defendants of the allegations of the lawsuit must first be sent to defendant prior to filing a civil lawsuit for damages. This letter again proves that AFL, a legitimate Indian corporation, did in fact receive the funds for investment from plaintiff which were duly recorded in the name of Jagjit Singh and a stock certificate was indeed issued by AFL and delivered to Jagjit. Plaintiff requests permission from this Court to file a certfied, attested and authenticated copy of the Civil Complaint, being filed in India, as and when available. (Attachment Two)

**JURISDICTION**

17.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 (Federal Question) and 42 U.S.C. § 1983.

**VENUE**

18.    Venue is proper in the Northern District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a). Venue is also proper and appropriate as both the defendants reside in this district, and a substantial amount of acts and omissions giving rise to this lawsuit occurred in this district.

**INTRADISCTRICT ASSIGNMENT**

19.    This lawsuit should be assigned to the Oakland Division of this Court because a substantial part of events or omissions which give rise to this lawsuit occurred in Alameda County.

**PARTIES**

20.    Plaintiff is a resident of Berkeley, California and was engaged in the practice of law from 1979 through October 24, 2004 with offices at 2600 Tenth Street, Berkeley, California. He was a member of the State Bar of California and except this single incident did not have any disciplinary charges against him.

21.    The State Bar of California (State Bar) is a Public Corporation which is commonly referred to as an "integrated bar." It is not a state or a government agency and is subject to suits for damages. The State Bar is conducting business within the jurisdiction of the Northern District at San Francisco, California.

22.    Ms. Pat McElroy (judge and/or judge McElroy)) is the judge of the State Bar Court of California at San Francisco. She is not an Article VI Section 1 judge of the Constitution of the State of California. She is and has been appointed by the California Supreme Court and not by the Legislature or the Governor.

23.    Ms. Tammy Albertsen-Murray (prosecutor and/or Murray and/or DTC) is the Deputy Trial Counsel of the Office of the Chief Trial Counsel of the State Bar.

24.    Ms. Alice Verstegen (Verstegen) is the Investigator of the State Bar.

25.    Mr. Jagjit Singh Randhawa (Jagjit) is the resident of Hercules, California who was represented by plaintiff in two drunk driving charges.

26.    Mrs. Baljit Randhawa (Baljit) is the wife of Jagjit and a resident of Hercules, California who was represented by plaintiff in one criminal charge of theft and two civil matters.

## STATEMENT OF FACTS

27.    Plaintiff provided excellent legal services to the husband and wife team of Jagjit Singh Randhawa (Jagjit) and Baljit Randhawa (Baljit) in five different matters. Plaintiff represented Jagjit and Baljit from 1996 to 1997. There is no dispute about the quality of services provided. However there is a dispute as to what Plaintiff should have charged as his fees. For example, in the shoplifting case, the judge ruled that approximately $100 per hour, as fees, was NOT proper. The judge fixed the fee as Ten Dollars and Sixty-Two Cents ($10.62) per hour in that case where plaintiff made at least three court appearances, meetings with the shop owners and the district attorneys and filed volumes of legal papers – over 32 hours of time was spent. (See Decision page 3).

28.    The judge in her decision has misrepresented the facts about representation of parties. Why this has been done is not known.

29.    On November 19, 2001, both Jagjit Randhawa and his wife Baljit Randhawa, collectively known as Randhawas, filed a complaint with the State Bar under the penalty of perjury under the laws of the State of California stating that:

"Yes, Mr. Khanna was employed from January 1996 to March 1999.

He was paid at least $2,100.00 in cash and checks." Exhibit 9, page 1, para5)

30.    During the trial in the hearing department of the State Bar Court held on August 17-19, 2004, however, where Honorable Judge Pat McElroy (judge) presided, Jagjit admitted that this was a false statement and that he did not tell his new attorney, Mr. Bruce Byrnes, that plaintiff, Mr. Khanna, was paid $2,100 for fees in cash or checks. (T.T. I-174: 16-20). The judge

DISREGARDED this obvious perjured statement and called the testimony of Jagjit as 'credible. How the Supreme Court has allowed this finding of the judge to stand is extremely confusing.

31.    Plaintiff represented Jagjit for the first time in January- February, 1996 when he had an accident on a California freeway while taking his new bride recently arrived from India and who was at the Battered Women shelter in San Francisco at that point in time, to social security offices.  Jagjit stated that he was legally drunk and while having another fight with his wife, he collided with a truck.  As he already had an earlier DUI a month ago and was represented by a public defender, he simply ran away from the scene and left his wife to take the rap.  He stated further that the police in fact gave a vehicle code violation citation to his wife who had never driven a car in her life.  In the complaint, Jagjit stated:

> **"January to February 1996** – Mr. Khanna (Plaintiff) defended Jagjit Randhawa
> against DUI charges, case 23152(A). There was no written retainer agreement that
> we recall and Mr. Khanna has not given us the files in spite of repeated requests."
> Exhibit 9, page 3, para 1

32.    At the trial, however, Jagjit stated that this statement though signed under the penalty of perjury was false. (T.T. I-176: 22-24, I-177: 1-3) and that it was not he who was driving but it was his wife. (T.T. I-177: 16-25 also T.T. I-181: 21-24).  The Deputy Trial Counsel (DTC) shifted the blame to Mr. Byrnes, their new attorney, for filing a false statement (T.T. I-174: 5-11) in the hope that Mr. Byrnes could probably get away due to California Code of Civil Procedure, section 47 Privilege.  Mr. Byrnes testified that he did not know whether the above-mentioned statement was correct or false and he desperately tried to justify his drafting of the document and stated that he derived the information from Plaintiff's written response to him and that he took the facts from Plaintiff's letters. (T.T. II-29: 12-25 and II-30: 1-25). Jagjit also testified that he never asked Mr. Khanna for the files. (T.T. I-177: 4-15). *The judge in her Finding of Facts, however, found that Jagjit was correct and that it was Jagjit's wife Baljit*

*whom Plaintiff represented in that DUI, Vehicle Code violation matter. (Dec. p.3: 5-6).* How the

judge arrived at such a conclusion with ALL these facts, documents and testimony before her, is

not known.

33.    Paragraph 3, Page 3of the complaint further stated that:

**"March to July 1996** – Mr. Khanna assisted Baljit Randhawa in getting a

Temporary Restraining Order against Jagjit Randhawa. Matters resolved parties

reconciled. There was no written retainer agreement that we recall and Mr.

Khanna has not given us the files in spite of repeated requests." <u>Exhibit 9, page 3,

para 3.</u>

34.    During the trial both Baljit and Jagjit testified that this statement was also false.

(T.T. I). Baljit forcefully stated that Plaintiff was NOT her attorney in this matter and that she

met Plaintiff after this "husband and wife fight". (T.T.)

35.    *Unlike the first statement, however, the judge, disregarded Baljit and Jagjit's

testimony and interjected her own conclusion. The judge concluded in her Findings of Fact that

everyone was wrong, Jagjit, Baljit, Mr. Byrnes, Plaintiff and even the DTC in their statements

about this TRO matter. The judge ruled that Plaintiff **did** represent Baljit.* She wrote in her

decision as follows," Respondent (Plaintiff) provided legal services on behalf of and advice to

Baljit in three matters: (1) Vehicle Code violations; (2) Temporary Restraining Order (TRO);

and (3) shoplifting matter." (Dec. p. 3:5-7). How this decision was arrived at also is unknown.

36.    Even Baljit's testimony at the trial solicited by DTC for the benefit of the judge

was disregarded.

"Q. Okay. Okay, now, sometime in 1996, was there trouble between you

and your husband?

A. Yes.

Q. Did Mr. Khanna provide any legal representation to you with respect to

the trouble that was going on between you and your husband?

A. So, on that case, he was not our attorney because *I met him after that*

*case. I did not meet him before that. (*Emphasis added)

Q. Okay. By the time – when you did meet M. Khanna, did he provide any form of

counseling to you and your husband to try to make things smoother between the two of

you?

A. So, I told you, I don't know Mr. Khanna before that fight – husband

and wife, so then the case was finished. *Then, I met Mr. Khanna*

(Emphasis added)."

(T.T.)

37.     Despite all this testimony and documents on record, the judge insisted that

Plaintiff did represent Baljit in her TRO matter.  Again the reason is unknown.

38.     Clients' complaint further stated that:

> **July to September 1996** – Mr. Khanna defended Baljit Randhawa against petty
> theft charges Plea-bargaining reduced to $100 fine.   There was no written
> agreement that we recall and Mr. Khanna has not given us the files in spite of
> repeated requests.

39.     Plaintiff did and an exemplary job in getting Baljit off by pleading guilty to a

minor charge. Baljit was caught red-handed on video camera taking price tags and labels off the

merchandise and stuffing in her large bag at Ross Dress for Less store in Berkeley. Plaintiff met

with the security officer, manager and other personnel and diligently worked with the D.A.

Plaintiff spent over 37 hours. Fee was set for $5,000, which the Randhawas had agreed. As the

financial situation of Randhawas was not good, Plaintiff deferred the payment for later date and

was paid $500 in **check**. The judge, however, arbitrated the fee to be only $500 for such a great job, which amounted to about $10 and 62 cents per hour. Strangely enough the judge made an unusual statement in her decision. She wrote, "But Baljit did not plead guilty to shoplifting and was let off with a fine of $100." (Dec.p.3: 21-22). Even our elementary students know that no one gets 'let off' with a fine by pleading not guilty.

40.    Next, Plaintiff represented Baljit in her retrieval of personal property, which she had left with a neighbor while she moved away from the apartment she was sharing with her husband. However, the judge somehow or the other concluded that Plaintiff represented Jagjit and not Baljit.

41.    It was Baljit who had left her husband because of cruelty and other charges and had moved some of her stuff from her residence to a friend's house when Jagjit was away for a day. She and her husband were living in a two-bed room apartment with another couple at that point in time. After reconciliation, Baljit asked Plaintiff to recover her personal property from this friend who would not return it to her. She gave Respondent a handwritten detailed two page list signed in her own handwriting which listed the furniture and goods she moved in one day when her husband was away. This list is attached as <u>State Bar Exhibit 1, insert 14</u>. It was totally incredible and unbelievable. Here she had just arrived for the first time in the United States from India. Within two months without a job and her husband working as a gas station attendant, she appeared to have amassed such wealth and material goods. They could not pay legal fees. They were living with another couple who had four children in a crammed two-bedroom apartment. Plaintiff was flabbergasted but he did file the complaint in the Contra Costa County on HER behalf. The Case Number is 039235. Defendants' lawyer defended the matter quite well. Defendants propounded substantial interrogatories and were going to file a cross-complaint. At that point in time she requested Plaintiff to drop the case and Plaintiff gladly obliged.

42.    Again, the judge made a deliberate misrepresentation of this fact. She ruled that Plaintiff represented JAGJIT and not BALJIT in this property retrieval case. (Dec. p.4: 5-7). The judge knew who Jagjit was and who Baljit was and furthermore Baljit is a female and Jagjit is a

male and her designation of his and her clearly demonstrates that she intended Jagjit and not

Baljit.  Why she did that is unknown.

43.      While working on this Baljit case, Jagjit visited Plaintiff in his offices in July

1996. He saw some material about an Indian company on a separate desk next to the receptionist

area. Plaintiff did not have a secretary at that time and that space next to the receptionist area was

temporarily leased to an Indian company, Amerindia Foods Limited (AFL). AFL was

contemplating buying food-processing machinery from Italy for shipment to India.  As Plaintiff

was AFL's legal counsel in the United States and had an equity interest in the Indian Company,

he was retained by AFL to negotiate the purchase at that time.[1]  Plaintiff remembers talking to

Jagjit about AFL and its operations in India.  Jagjit showed sufficient knowledge of farming

when Plaintiff told Jagjit that he and his family in India were working on development of hybrid

organic tomato seeds.

44.      On or about September 15.1996, on Sunday, both Jagjit and Baljit, urgently, met

with Plaintiff and desperately needed an assistance of a lawyer in India as Baljit's brother was in

some terrorist related scrutiny by the Indian Secret Service allegedly connected to 'Khalistan

Movement.'[2] This fact of Baljit's brother's activity was not communicated to Plaintiff.

45.      Plaintiff referred the Randhawas to his brother in India who was an Advocate of

the Supreme Court in India. Plaintiff gave all the instructions and set up the appointment for

Baljit's brother to meet with Mr. Chiter Khanna the next day, September 17, 1996 (there was a

time difference between California and India Unbeknown to Plaintiff, at that point in time, in

desperate moves to obtain U.S. visa, Indian people, particularly in Punjab, were associating with

Indian companies who had ties with a business entity in the U.S.  They would pay anywhere

---

[1] Even though AFL was an Indian company, Plaintiff did have a disclosure form duly
signed by ALL the directors of AFL which satisfied all the five criteria of Rule 3-300 as
Plaintiff was an equity holder and the legal counsel of the company.

[2] At that point in time, there was a great crisis in India where the Sikh community was
demanding a separate Sikh state by the name of Khalistan in Punjab.

from $30,000 to $50,000 to get some type of equity interest and then apply for a visa for training in the U.S. with the American entity. Plaintiff's Exhibit W showing a newspaper article about this fraudulent scheme was not admitted into evidence by the judge.

46.    Both Jagjit and Baljit denied that they sought Plaintiff's help. Their answers on this subject are in the deposition.  Plaintiff's Exhibit DD is self-explanatory.

47.    During the Re-cross examination of Jagjit at the partial retrial, Jagjit's testimony gave absolutely contradictory testimony to his entire stand that they never sought help from Plaintiff regarding their relative's immigration issues. Jagjit' testimony is well recorded. ( II-2:25, 3:1-17).

48.    In October 1996, Jagjit had another serious DUI. In that case his blood level was way high over the legal limits.  He had hit another car. He injured the driver and damaged the other car.  He ran away from the accident and hid in bushes where the police found him and arrested him. Plaintiff diligently and expertly defended his DUI.  The injured plaintiff sued him, his wife and his father, owner of the car, for considerable damages. This hit and run lasted for over seven months when Plaintiff was able to negotiate a settlement deal with the plaintiff's attorney for only $4,000 wherein Jagjit was to pay only $100 per month for the next three years because of his financial position.

49.    On or about November 18, 1996, Jagjit called Plaintiff and informed him that he had deposited $9,000 in Plaintiff's personal account for partial payment of overdue fees and $9,000 in the account of Khanna Foods, U.S.A. for onward transmission to AFL in India. Plaintiff was surprised and flabbergasted. Here was a couple, who could not even pay even court filing fees, came into sudden riches.  When Jagjit informed Plaintiff in the same telephone conversation that he was going to deposit another $16,000 the next day, Plaintiff strongly told him not to do so. State Bar Exhibit 28, page two.

50.    Surprisingly at the trial, Jagjit took a different position.  He stated that he did not receive this letter. During the cross-examination and in deposition, he did not remember whether he lived at the address given in the letter. It was in the files, which were given to his attorney.

The judge, however, agreed with Jagjit and concluded that Jagjit did not receive this letter, State Bar Exhibit 28, page two.

51.     DTC, in support of her case that Plaintiff solicited investment, introduced into evidence three letters, Exhibit 28 pp.3, 4,and 6.  DTC charged plaintiff with fraud of fabricating these three letters.  She asserted that these letters were NEVER written by AFL officers or directors but were manufactured by plaintiff himself.  In support of her argument, she introduced the testimony of Jagjit who stated under oath that he never received those letters in the mail and the DTC charged plaintiff with fraud of fabricating these three letters.  She asserted that these letters were NEVER written by AFL officers or directors but were manufactured by plaintiff himself.  In support of her argument, she introduced the testimony of Jagjit who stated under oath that he never received those letters in the mail and that the letters were in fact hand delivered by plaintiff.  No other proof was offered.  The judge agreed with the DTC and accused plaintiff of fabrication of the letters. All this took place in 1996-1997.

### FIRST CAUSE OF ACTION

### (Violation of Fifth Amendment – A Fair Trial)

### *A. ERADICATION OF MAIN WITNESS (JAGJIT'S) TESTIMONY:*

52.     Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

53.     Plaintiff alleges that after the three days trial when plaintiff received the recorded CDs of the proceedings of the trial, plaintiff discovered a gap of over one hour and forty minutes in the cross-examination of the main witness, Jagjit, where plaintiff believes that there were definite instances of Jagjit making false, misleading and perjured statements.  Plaintiff on information and belief alleges that the trial judge, McElroy, purposefully, intentionally, wantonly

and deliberately erased that said crucial testimony. First, the electronic recording machine was in exclusive, sole and single control of the trial judge, McElroy. Second, she had an extremely important **motive** to erase the said incriminating testimony because she had already decided to convict plaintiff whatever the evidence. Third, plaintiff believes and on that belief alleges that McElroy must have listened to the recording for her to issue a twenty-five page Decision. It is indeed very strange that her Decision DOES NOT mention this crucial one hour forty minutes gap. The Supreme Court's silence on this important issue is intriguing to say the least.

54.    Immediately on the discovery of this eradication of Jagjit's testimony, plaintiff filed for a New Trial with the State Bar. The Review Department of the State Bar rejected plaintiff's motion, overruled an important California Appellate Case, Weinstein and ordered a limited two hours of Jagjit's testimony to be retaken. Plaintiff asked for the disqualification of judge McElroy. This motion was denied. A very limited trial was conducted for a few hours before judge McElroy a YEAR LATER of the original trial. This was an extremely outré and bizarre trial. Every step of the way, the judge sustained prosecutor's objections and denied the opportunity to plaintiff to cross-examine Jagjit. Despite her absolute domination and control, it was very clear that Jagjit was coached to plead just eight: "I don't remember. It's been a long time." The CD of this limited trial proves that about over 70% percent of the questions propounded contain the answer, "I don't remember. It's been a long time."

55.    Plaintiff respectfully requests this Court to issue a ruling on this important, precedent setting incidence of either intentional erasure or malfunction of the recording machine used in the State Bar trials and whether Weinstein is indeed overruled. Supreme Court's silence indeed overrules Weinstein.

### B. CREDIBILTY OF WITNESS JAGJIT:

56.    Plaintiff alleges that the judge's discretion of declaring Jagjit's testimony at the trial goes beyond her powers and authority.

57.    Plaintiff is absolutely flabbergasted and dumbfounded to learn as to how a judge, even an administrative judge chosen by the Supreme Court of California, sworn to uphold justice and be fair, could stoop low that in order to disbar plaintiff she would vociferously declare stark and obvious lies and contradictions as credible.

Examples:

- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury. (See Statement of Facts, infra, para?).

- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury. (See Statement of Facts, infra, para?).

- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury. (See Statement of Facts, infra, para?).

- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury. (See Statement of Facts, infra, para?).

- Jagjit stated in his complaint to the State Bar that it was he who was driving the car on February? 1996 when he met with the accident. (?). At the trial he stated that it was not him but his wife who incidentally had never driven a car in her entire life, as she took off on California Freeways in an unknown car after her arrival in the country for the first time. (See Statement of Facts, infra, para?).

- Jagjit stated in his complaint under the penalty of perjury that he and his wife paid only $2,100 as fee for the five cases in cash and checks. (Exhibit?  ). However during trial, he changed his story and said that he

never issued a check because he could not produce any cancelled checks but paid ALL fees in cash. Of course, he never had any receipt because he claimed plaintiff did not give him any receipts. (T.T.

- Though the trial judge has broad discretion in not treating combined THREE drunk driving charges, committed within seven years as here, as felony, plaintiff alleges that trial judge, McElroy, abused her discretion in declaring the testimony of Jagjit as credible. Plaintiff further alleges that the entire testimony of jagjit, taken as whole, and coupled with three drunk driving was not credible.

58.    It was vociferously obvious through out the trial that Jagjit was lying and not telling the truth and yet the trial judge, McElroy, declared his testimony to be credible. The trial record is full of inconsistent and untrue statements of Jagjit. However, Plaintiff would illustrate the contradictions and apparent untruth of Jagit in the following few examples.

### C. CREDIBILITY OF STATE BAR INVESTIGATOR – MS. VERSTEGEN:

59.    Plaintiff alleges that Ms. Verstegen committed obvious perjury when she denied having received a reply response from the Chairman and the Director of Finance. Ms. Verstegen knew that the statement was false and committed perjury with a deliberate intention of harming plaintiff by stating that the letter sent to her at her Los Angeles State Bar office address was not delivered by mail but **mysteriously** appeared at her desk.

### D. DELAY:

60.    Plaintiff states that the State Bar trial proceedings are conducted on complicated digital recordings, which have the so-called 'state-of-the-art' technology to download and listen. This digital recording is in total control of the hearing department judge. There are no safeguards afforded to the charged attorney. Plaintiff did make a motion for a live court reporter to the hearing department judge and this motion was denied.

61.     When Plaintiff found one hour forty minutes of gap in the CD of the trial proceedings, he immediately filed a motion for a new trial. This motion was denied by the Review Department. Instead the Review Department of the State Bar Court ordered a PARTIAL LIMITED TRIAL wherein plaintiff was asked to re-cross examine the main witness, Jagjit. The trial was held ONE YEAR later. It was a very outré, bizarre and Kafkaesque trial that lasted for a few hours. Plaintiff was restricted from examining Jagjit and Jagjit almost took the Fifth Amendment over 85 percent of Jagjit's answers were, " I don't remember. It's been a lime time."

62.     Plaintiff further alleges that the trial was unfair in that it took over four years from the date of State Bar filing Notice of Disciplinary Charges to the Review Department asking plaintiff to file a Brief for review. A litigation, which consisted of a single act allegedly committed by plaintiff, took five and one half years to complete, violates plaintiff's right to a fair trial.

### E. ADEQUACY OF NOTICE:

63.     Plaintiff alleges that the State Bar violated plaintiff right to adequacy of notice of charges filed against him so that plaintiff has time to prepare for the defense. The Office of the Chief Trial Counsel of the State Bar filed a Notice of Disciplinary Charges (NDC) on about July 25, 2003.

64.     NDC mentioned that the clients gave $25,000 ONLY to plaintiff for investment purposes. However, during trial, prosecutor Murray had the witness Jagjit testify that he gave another $6,000 to plaintiff. This was a complete surprise to plaintiff who had no idea how that charge was admitted in to evidence. There was no proof of any

bank record, receipt etc. was offered by the prosecutor. The only proof was the testimony of Jagjit who stated that he gave a further $6,000 to plaintiff IN CASH for investment.

## SECOND CAUSE OF ACTION

### (Violation of Fourteenth Amendment to the United State Constitution – Due Process Rights of Property and Liberty)

65.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

66.    Plaintiff asserts that he has both property and liberty rights in his license to practice law in California, which he dutifully earned in 1979. On October 24, 2004, the State Bar Court judge, McElroy, took away this license by putting plaintiff on an inactive involuntary list thus suspending him from practice of law. Plaintiff declares that this suspension was illegal and that the trial judge, McElroy, had no authority or power to take away the property and liberty rights of plaintiff. The power to suspend an attorney's license has been vested in the Supreme Court of California and this suspension did not have any sanction or approval of the California Supreme Court. The trial judge, McElroy, quotes Business and Professions Code section 6007(c)(4) and rule 220(c) of the Rules of Procedure of the State Bar as her authority. Plaintiff believes that neither the California Legislature nor the Supreme Court has authorized a trial judge of the State Bar to suspend an attorney and take away his right to make a living.

67.    Plaintiff further asserts that the California Supreme Court erred in not granting a 'judicial hearing' and provided him with a written opinion by summarily disposing the case without a review and letting stand the Decision of a State Bar Court judge stand as the final decision. This violates plaintiff's due process rights.

68.    Plaintiff was served with a Notice of Disciplinary Charges (NDC) by the Office of the Chief Trial Counsel of the State Bar on July 25, 2003. Wherein the State Bar charged plaintiff for misappropriating only $25,000 of Jagjit and Baljit's money. At the trial, three years later, the Deputy Trial Counsel presented a letter into evidence written by the Director of Finance of AFL, which stated that, the Randhawa's deposited Ten Lakhs of Indian Rupees with the company for investment.

69.    As this letter would have established that the money was indeed received by AFL and not misappropriated by plaintiff, Deputy Trial Counsel, Tammy Albertsen-Murray, asserted that the letter was NOT written by AFL or its fake officers as AFL never existed but by plaintiff only.  The only proof offered to substantiate her theory was the testimony of Jagjit who merely stated that he never received that letter in the mail but instead was handed over by plaintiff personally.

### THIRD CAUSE OF ACTION

### (Violation of 42 U.S.C. § 1985(2) – Conspiracy to interfere with civil rights)

70.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

71.    Defendants Murray and Verstegen deliberately, wantonly and knowingly, conspired to destroy, spoliate and hide the exculpatory evidence from the trial judge in order to injure, harm and convict plaintiff of an offense which plaintiff did not commit.  A letter from the Chairman and Financial Director of AFL was sent to Verstegen at her Los Angeles State Bar Office address on or about September 17, 2003.  This letter came in an envelope that was enclosed in a Red and Yellow DHL Cover envelope bearing stamps and mailing information. (It is customary not only in international mails but in domestic Priority or Fedex mails to just enclose an envelope without stamps in the cover container which actual bears the stamps and mailing information).  As it was an international DHL delivery, the letter also included an Airway Bill that was to be signed by an employee of the State Bar at Verstegen's offices. In order to tell the judge during trial that the letter did NOT in fact arrived from India, both Verstegen and Murray conspired to destroy the DHL Red and Yellow Cover Letter bearing the stamps and address of Ms. Verstegen. At the trial Murray made Verstegen testify that the letter did NOT arrive from India as it did not have any stamps on it and implied that it was plaintiff who placed the envelope.  However, both Verstegen and Murray forgot that such letters ALWAYS were delivered via an Airway Bill.

71.    As DTC Murray introduced this letter and Verstegen's testimony at trial at the last minute without any warning or notice to plaintiff, it was absolutely difficult to refute this

testimony at point in time.  Plaintiff immediately contacted AFL in India and had them deliver

the DHL Airway Bill, which indicated that the letter was delivered at the Los Angeles offices of

Verstegen on September 17, 2003 and that someone duly signed it at the offices.  A copy of this

crucial evidence as Exhibit FFF was sent to the trial judge BEFORE her decision was to be

published.  The judge knowingly and deliberately ignored this evidence and took the stand that it

was inadmissible as it was submitted after the trial.  Instead, judge McElroy accused plaintiff of

fraudulently placing the said letter at the desk of Verstegen at her Los Angeles office.  As she

could not substantiate her assertion by any proof whatsoever, she simply speculated about

plaintiff committing a fraud and weaving a web of deception.  What is so unbelievable is the

point that the Supreme Court is absolutely silent no judge's action and findings on this crucial

and obvious piece of evidence.

72.    Plaintiff respectfully requests this Court to please rule on this malicious, blatantly

obvious bias and prejudice of judge McElroy who suspended plaintiff's license on October 24,

2007.

### FOURTH CAUSE OF ACTION

### (Violation of Fourteenth Amendment Equal Protection Clause)

73.    Plaintiff incorporates by reference the foregoing allegations as though fully set

forth herein.

74.    Plaintiff alleges that the State Bar Court proceedings violated plaintiff's right to

equal protection of the laws as guaranteed by the Constitution in that plaintiff was tried for an act

constituting *moral turpitude*.  Plaintiff was convicted of committing an act of moral turpitude by

a single referee of the State Bar Court who is not a judge of a Court of law.  Her decision was

allowed to stand as the final decision by the Supreme Court of California without a JUDICIAL

HEARING and a WRITTEN OPINION.  Plaintiff asserts that denying judicial hearing and a

written opinion under such circumstances violates plaintiff's equal protection rights.

# FITH CAUSE OF ACTION

## (Violation of 18 U.S.C. § 1621 - Perjury)

75.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

76.    Credibility of Plaintiff is the fundamental issue of this entire case. Both Baljit and Jagjit Randhawa have attacked plaintiff's credibility. In order to discredit Plaintiff, both Baljit and Jagjit have resorted to lies and false statements where they have clearly committed the acts of perjury. Plaintiff asserts, based on the testimonies given by both Baljit and Jagjit under the penalty of perjury and under the laws of the State of California that both DTC and the judge were FULLY aware of the perjured statements and no action was taken despite various requests made to the judge. Plaintiff, herein, respectfully submits the willful, intentional and deliberate acts of perjury committed by Baljit and Jagjit for evaluation by the Court to decide whether perjury committed in non-judicial, quasi-criminal, administrative settings, particularly during depositions can be considered a felony under the Penal Code section 118[3] in California.

### *Testimony of Baljit:*

Q.  Did you get a citation on February 22nd, 1996 from a police officer?

A.  Yes.

Q.  Do you remember what was that case about?

---

[3] 118. (a) Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury.

A.  ***I was driving the car*** (Emphasis added).  I had no license, but I had a license from India, so I don't speak much English on that time, so I couldn't explain to the officer that I had a license from India.  I don't have a license from here.

Q.  So this is your testimony that you were driving the car at that time this accident happened.

A.  Yes.

<div align="center">(T.T. III-60: 24-25, 61:1-9)</div>

77.    In her affidavit submitted under oath and under the penalty of perjury for the Temporary Restraining Order (TRO) in her Order to Show Cause in the Contra Costa Court, Case Number FL019677 dated <u>April 10, 1996</u>, (Emphasis added), Exhibit OO, she gave the testimony that she was NOT driving the car as she did not know how to drive the car.  (T.T. II-73: 8-25, 9:1-2)

> " 8.    On February 22, 1996, Respondent drove me to his brother's home to pick-up my social security card.  When I got into the car, I noticed that Respondent was drunk.  Respondent was driving very fast and was weaving between cars on the freeway.  I was very afraid and told Respondent to slow down and drive carefully.  Respondent then said, "I am going to kill you."  Respondent hit 2-3 cars and accelerated toward a commercial truck.  Respondent rammed my side of the car into the commercial truck.  Respondent then pulled the car to the side of the freeway and got out of the car to talk to the truck driver.  Respondent then drove away and let me on the side of the road.
>
> 9.    A passerby let me use his cellular phone and I called my brother-in-law and told him what happened.  The police

<div align="center">COMPLAINT FOR DAMAGES - 26</div>

arrived and questioned me and issued a citation.  I do not
know how to drive a car and have never driven a car. (See
Exhibit A)"

> Exhibit OO, Marriage of Randhawa
> Attachment to Application and
> Declaration for Order
> Page 3:1-17 Case No. FL019677, Filed
> April 10, 1996 in the San Francisco City
> and County and represented by an
> Attorney by the name of Judy B. Louie
> of the Nihonmachi Legal Outreach.

78.    It was an intentional and deliberate lie.  The sad part is that the judge
KNEW it to be false.  Baljit is trying to save her husband, Jagjit from the perjured
statement made earlier that the said accident was not HIS.  Jagjit's credibility would have
been devastated if it was proven that he lied under oath.  To protect him, she lied.  The
judge sided with Jagjit despite this admission.

79.    Moreover, DTC was absolutely aware of this fact, that Baljit was NOT the
driver of the car on February 22, 1996.  DTC had the Contra Costa Court papers of
Baljit's affidavit in the Order to Show Cause (Exhibit OO) in her possession.  DTC even
confirmed it during the trial as to when Baljit FIRST met with Plaintiff and when and on
what kind of case Plaintiff represented Baljit. (T.T. II73: 6-25)

*Testimony of Jagjit:*

80.    There are over fifty-three instances of false statements made by Jagjit
during the depositions and the trial.  If permitted and ordered by this Court, Plaintiff

would be honored to chronologically present them...However, the obvious lie relates to the above-mentioned vehicle code violation.

81.    Jagjit committed perjury when he testified under oath that he was not the driver of the car of the vehicle code violation, which occurred on February 22, 1996. It appears that because the citation was in the name of his wife, DTC must have told him to lie and state that it was not he who was driving but his wife. Apparently he forgot to tell DTC that this lie would not fly because, one, his newly arrived wife had never driven a car in her life and two, people in India drive on the left side of the road and the steering wheel of the cars is on the right side. Furthermore, over one billion people of India would be in awe if they were told that a young lady from India who had never driven a car in her life took her first drive on the freeways of California. (Here is an example of disadvantage the California attorneys have over the rest of Americans – the attorney cannot have a jury trial.)

### *Testimony of State Bar Investigator, Ms. Alice Verstegen*:

82.    Alice Verstegen took an oath during the trial before the State Bar Court judge to tell the truth. Plaintiff contends that an oath to tell the truth even before a non Article VI Section 1 judge qualifies as an oath administered before a competent tribunal and falls under 18 U.S.C. §1621 statute. Verstegen, deliberately, wantonly and knowingly made false and incorrect statements and hid the true facts. Plaintiff points out these false statements as follows:

Q. Okay. Now, that was a February 19, 2003 letter. On page 2 of the exhibit, there 's a signature. Would that be your signature?

A. Yes, it is.

Q. Kanwal Sain, that's K-A-N-W-A-L, S-A-I-N, who looks like the financial controller of Amerindia Foods.

A. MR. KHANNA: I'm sorry, just what number is that?

Q. MS. ALBERTSEN: 21

A.  Mr. KHANNA: Thanks

Q.  Do you recall drafting this letter to Mr. Sain?

A.  Yes, I do

Q.  Can you tell the Court why you drafted this letter to Mr. Sain?

A.  There was so much confusion as to who owned Amerindia Food.  So, what I did to
    try and get some clarification from the controllers of that corporation was to write to
    them in there to the different people involved that was on the letterhead.

Q.  Do you recall whether you received a response this February 19, 2003 letter from Mr.
    Sain

A.  *No, I did not* (Emphasis added)

(T.T. III-10: 4-25, III-11: 1-2)

83.      This statement is false.  Ms. Verstegen is a sixteen years veteran in the State Bar
investigator unit.  She is neither a novice nor a new comer in the field of direct and cross-
examination.  For her to make a false statement, it can be safely assumed that there were some
higher up who were controlling this litigation.

84.      Ms. Verstegen DID receive the letter from India and from AFL.  This letter, State
Bar Exhibit 27, was addressed to her and it was admitted into evidence.  Furthermore, she did go
through this letter. (T.T.III-54: 6-8). The letter in question, Exhibit 27 reads as follows:

[Letterhead]

Alice Verstegen
Attorney, Special Investigator
Office of the Chief Trial Counsel, Enforcement
The State Bar of California
1149 South Hill Street
Los Angeles, California 90015-2299
UNITED STATES OF AMERICA

**REFERNCE YOUR LATTER DATED 19/2/2003 AND ADDRESSED TO MR. KANWAL
SAIN, FINANCIAL CONTROLLER OF AMERINDIA FOODS LIMITED (AFL)**

85.    It could be said that she overlooked this 'block capital bold' reference. Furthermore, the letter was duly signed by Mr. Kanwal Sain. However, when this statement is compared to the other vital statements, it absolutely confirms that Ms. Verstegen committed perjury under oath.

86.    When asked later if she had received this letter in the form of a fax also or not, she replied that she did not. Whereas the fax was indeed sent to the State Bar offices from India. Plaintiff cannot offer any evidence at the moment because he does not have the discovery orders to search State Bar fax journal for those dates. What confirms that Ms. Verstegen committed perjury is the fact that she took the position that the letter from India suddenly and mysteriously appeared at her desk and the DHL red and yellow container was missing, suppressed or destroyed.

<div align="center">

**SIXTH CAUSE OF ACTION**

**(VIOLATION OF SIXTH AMENDMENT – RIGHT TO COUNSEL)**

</div>

87.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

88.    Plaintiff alleges that there is a considerable confusion whether an accused attorney has the right to a counsel in the proceedings before the hearing department or not. The Review Department cases suggest that an attorney does NOT have any constitutional rights to counsel or effective assistance from counsel in disciplinary hearing. More confusion arises about the California Supreme Court's holdings in some cases. Plaintiff asserts that his rights to counsel as protected by the Sixth Amendment to the Constitution were violated in these proceedings before judge McElroy. Plaintiff was tried with a charge of 'moral turpitude'. Plaintiff should have been given the opportunity by the judge to retain a lawyer particularly when plaintiff suffered a heart problem and

could not continue.  No reasonable opportunity was afforded to plaintiff in these

proceedings. Plaintiff made an urgent appeal to the judge during trial for the need of a

lawyer. This appeal did not ask for the State Bar Court to appoint counsel.  Plaintiff was

himself going to pay. This request was denied.  The following is the appeal by plaintiff to

the judge and her answer:

> MR. KHANNA:    Your Honor, can I ask for a continuance because I do not
>
> have (testimony missing) I feel here very strongly that I do not have the
>
> ability here to really question and I'm taking the time of this Court and I
>
> (testimony    missing)
>
> THE COURT:    No, I think I'll – I'll give you five minutes to compose
>
> yourself and think of the questions.
>
> MR. KHANNA:    I need to get a lawyer.  I just need to get a lawyer.
>
> THE COURT:    At this point.  It's  (testimony missing)
>
> MR. KHANNA:    This is very crucial (testimony missing) a very crucial matter.
>
> False statements have been filed with the State Bar, and I need somebody t  o kind
>
> of help me, and I'm asking that I need to get (testimony missing)
>
> THE COURT:    I am not going to give you a continuance.
>
> MR. KHANNA:    Okay, all right your Honor.
>
> THE COURT:    You had two lawyers in this case.  They represented you ably,
>
> and for some reason, they're no longer representing you, and we need to proceed.
>
> MR. KHANNA:    Yes (testimony missing)
>
> <u>T.T. II-54: 5-24</u>

     86.    Plaintiff feels that the way and in the tone the hearing department judge

denied this request was very inhumane and also cruel in nature given the circumstances.

Right during the stressful questioning of the main witness, Baljit, Plaintiff suffered an

attack of Tachycardia where his heartbeat shot up to 200 to 250; he became disoriented,

dizzy and almost collapsed. Plaintiff immediately took his medicine and requested the

need for a counsel. He asked just for ONE-day continuance. This is what happened at the

hearing:

> MR. KHANNA:  I am tired, your Honor.  I just can't do  (testimony missing)
>
> its 4:30 and I'm (testimony missing)
>
> THE COURT:  No, I understand that, but you need to - - (testimony missing) if
>
> you're going to ask her questions - - (testimony missing)
>
> MR. KHANNA:  I am very sick·and I'm not feeling well, your Honor, and I
>
> can get you a doctor's certificate, if that's needed.
>
> THE COURT:  I understand that, but the witness is here and she - (testimony
>
> missing)
>
> MR. KHANNA:  I just am not in a position, your Honor. I'm sick.
>
> THE COURT:  Do you have questions to ask her?
>
> MR. KHANNA:  Yes, a lot.  A lot of questions to ask her.
>
> THE COURT:  Well, you need to ask her at least questions till 5:00
>
> MR. KHANNA: I can't do it right now in half an hour.
>
> *THE COURT: No one is saying that you have to complete it in half an hour,*
>
> *but what we are saying is that you have to begin to ask her questions.*
>
> MR. KHANNA:  Your Honor, I'm requesting very humbly that I'm tired.  I am
>
> not well.

THE COURT: I understand that. I'm asking – – (testimony missing)

MR. KHANNA: I have a heart condition and I don't think I can carry on. I need  – – (testimony missing) I need help to do it tomorrow morning.

THE COURT: Well, what we – what do you mean?

MR. KHANNA; I have to cross-examine her tomorrow.

*THE COURT: Right, and what I'm suggesting is that you cross-examine*

*her until 5:00. Ask her questions until 5:00, and then we will take a break.*

MR. KHANNA; I want to - - (testimony missing)

Your Honor. I'm just not well and I'm being forced to do that. This is just - - (testimony missing) anyway, I'll do whatever you say.

THE COURT: Okay, let's proceed. At least, get some questions out, because she cannot keep coming back as a witness.

<u>T.T. II-95: 3-25,96:1-15</u>

89.    Plaintiff submits his treating physician, Dr. John Edlin's, one of the Bay Areas' top Cardiovascular surgeon, letter testifying that the situation which occurred during the trial is very likely to happen given the medical condition of Plaintiff. The letter is attached as Exhibit GGG.

## DEMAND FOR A JURY TRIAL

90.    Plaintiff respectfully demands a jury trial for all issues.

## PRAYER FOR INJECTIVE AND DECLARATORY RELIEF

91.     Plaintiff requests this Court to issue an Order directing the California Supreme Court to reinstate plaintiff as an active and honorable member of the State Bar of California till this case is decided.

92.     Plaintiff asserts that there is nothing in the trial transcripts, which shows that:

    a.  Except this single controversial incident that is to be litigated, there is no proof offered by the prosecutor that plaintiff has caused or is causing substantial harm to the attorney's clients or the public.

    b.  There is a reasonable likelihood that the harm will reoccur or continue. This incident occurred in 1996 and plaintiff severed the relations with these clients in 1997.  Since 1997 to the date of trial August 17, 2004, plaintiff has represented over 200 clients and there has been no complaint whatsoever.  In fact and it is open and proven record that ALL these clients were extremely satisfied

    c.  The judge failed to prove or give any example whatsoever that the balance of interest, as between the attorney on the one hand and the attorney's clients and the public on the other hand, favored involuntary inactive enrollment.

93.     Plaintiff requests this Court to issue an Order directing State Bar of California not to destroy logs of its incoming mail registry from the period of August 11, 2003 to October 11, 2003.

94.    Plaintiff requests this Court to issue an Order directing Sate Bar of California not to destroy logs of its incoming fax registry from the period of August 11, 2003 to October 11, 2003.

## PRAYER FOR COMPENSATORY DAMAGES

95.    Plaintiff prays for compensatory damages approximately in the amount of Two Million U.S. Dollars ($2,000,000) whish shall be proven at the time of trial/

## PRAYER FOR PUNITIVE DAMAGES

96.    Plaintiff prays for punitive damages against all defendants for deliberately conspiring to frame plaintiff for the single act of using the investment money for his personal use – which is now clear that he did not.  Plaintiff alleges that the State Bar prosecutor along with Ms. Verstegen, the investigator, deliberately, wantonly, knowingly and voluntarily conspired to fabricate, destroy and spoliate the crucial exonerating and material evidence.  Plaintiff further alleges that the judge deliberately and knowingly destroyed and erased one hour forty minutes of exculpatory testimony of the main witness from the recording machine.  Her silence in the decision is a strong indication of her act.  Plaintiff alleges that the judge did go through the entire transcript recorded on the CD before issuing her scathing and biased opinion.  Plaintiff further alleges that the judge conducted a bizarre, outré and Kafkaesque trial by not allowing plaintiff to cross examine witnesses, by not allowing plaintiff to present his character witnesses, by not allowing plaintiff to seek the help of a lawyer when plaintiff fell ill during the trial.  Plaintiff alleges that these acts of the judge and the prosecutor are sufficient to warrant punitive damages.  Plaintiff further alleges that the judge abused her discretion knowingly when she tarred and feathered plaintiff with such devastating language such as, " This disciplinary case involves a seasoned attorney who had created a web of deception to seduce his clients to invest $31,000 in a

sham corporation and who insists on these same fraudulent and contrived misrepresentations before this Court. His acts of moral turpitude and dishonesty shock the conscience of the legal profession, pose a danger to the public, and degrade the highest possible standards for attorneys." (Decision –opening Paragraph). Plaintiff alleges that the judge, who was so full of hate and prejudice, made these false yet powerful accusation deliberately, wantonly and menacingly in order to make a sweeping annihilation of plaintiff's career, right to make a living and reputation. This case, at the present moment, with newly discovered evidence proves beyond any shadow of doubt the purposeful prejudice of the judge and the State Bar against plaintiff. Plaintiff requests an award of 4 times the compensatory damages totaling about $8,000,000.00 (Eight Million U. S. Dollars) as punitive damages.

97.    Plaintiff is seventy years old. He is an immigrant from India who has worked extremely hard in this country. He has raised a wonderful family and has a fabulous reputation in the community as a kind and caring person. He has been practicing International Project Finance for the past twenty-five years and has advised reputable law firms like Gibson, Dunn & Crutcher; White & Case; Gray Cary and major India companies. Because this husband and wife team was from India and from Punjab, plaintiff undertook representation when no other attorney was there to help them. They could not pay legal fees and spoke Punjabi which plaintiff knew. Husband had three DUIs and used to beat up his new arrived wife from India. Wife had her own problems of shoplifting and TROs. Plaintiff provided excellent legal services and was paid only $2,100 for five different cases and over $15,000 is still due. Suddenly, around September 1996, these clients came into some money and deposited $16,000 in one of plaintiff's account for onward transmission into an Indian company which plaintiff was representing. This was done WITHOUT plaintiff's knowledge. Plaintiff duly sent that money to AFL, which the judge ruled was not sent. The trial records clearly show that

prosecutor absolutely failed to prove her charges. However, the judge has decided otherwise and the Supreme Court has denied review. Plaintiff respectfully requests this Court to please not allow State Bar Disciplinary authorities to fabricate evidence and destroy the life of a law-abiding innocent citizen whose only brushes with the law are a couple of speeding tickets in his entire forty years in the States. Plaintiff's suffering and pain inflicted by the State Bar is unparalleled in the history of State Bar disciplinary cases in all the fifty states and other territories of the United States. There is no yardstick to measure these damages. Four times the compensatory damages would at least provide some lessons to the State Bar Disciplinary authorities to obey the laws, morals and ethics and may deter them from tarnishing the name of such a prestigious body of hard working attorneys of this state.

98.    With respect to all Claims for Relief enumerated herein, as against all named defendants, reasonable attorneys' fees, court costs, expenses and disbursements.

99.    And all such other relief as this Court shall deem just and proper.

Respectfully submitted.

Dated this 15th day of May, 2007

PADAM KUMAR KHANNA

2600 Tenth Street, Suite 407
Berkeley, CA. 94710

Tel: 1-510-549-2786
Fax:1-510-549-2832
EMail: pkhanna@pacbell.net

ATTACHMENTS AND REFERENCES TO ABBREVIATIOS

ATTACHMENT ONE:      CRIMINAL COMPLAINT FILED IN THE COURT OF SH. ACCM, ROHINI
                     DISTRICT COURT, DELHI ON NOVEMBER 12, 2006 BY AMERINDIA
                     FOODS LIMITED (AFL), NEW DELHI

ATTACHMENT TWO:      COPIES OF THE DOCUMENTS FILED AS ANNEXURES BY AFL IN
                     SUPPORT OF ITS APPLICATION

ATTACHMENT THREE:    A LEGAL NOTICE FROM MR. R. S. MAHLA, ADVOCATE FOR AFL IN
                     INDIA

EXHIBITS;            NUMBERED EXHIBITS BELONG TO THE STATE BAR
                     & LETTERED EXHIBIT BELONG TO PLAINTIFF

T.T.                 TRIAL TRANSCIPT – STATE BAR COURT CASE NO. 02-O-11383-PEM

T.T. I               TRIAL TRANCRIPT VOLUME I

T.T. II              TRIAL TRANSCRIPT VOLUME II

T.T. III             TRIAL TRANSCRIPT VOLUME III

# ATTACHMENT ONE

## GENERAL AUTHENTICATION CERTIFICATION

| | | |
|---|---|---|
| **REPUBLIC OF INDIA** | ) | |
| **CITY OF NEW DELHI** | ) | SS: |
| **EMBASSY OF THE UNITED** | ) | |
| **STATES OF AMERICA** | ) | |

I certify that the official named below, whose true signature and official seal are, respectively, subscribed and affixed to this document, was, on this day, empowered to action the official capacity designated in the document, to which faith and credit are due.

*Sanjeev Manchanda*

NAME OF INDIVIDUAL

SIGNATURE OF CONSULAR OFFICER

Patrick McNeil
Consul
U. S. Embassy
New Delhi, India
COMMISSION EXPIRES : INDEFINITE

NAME/TITLE OF THE OFFICER

– 8 FEB 2007

DATE



IN THE COURT OF SH. ACMM, ROHINI DISTRICT, COURT DELHI

COMPLAINANT NUMBER _____ OF 2006

IN THE MATTER OF : -

M/S Amerindia Foods Limited
14E/CC Harinagar
New Delhi 110064

...COMPLAINANT

VERSUS

Sh. Jagjit Singh Randhawa
395 Sparrow Drive
Hercules, California
United States of America

Smt. Baljit Singh Randhawa
395 Sparrow Drive
Hercules, California
United State of America

...ACCUSED PERSONS

COMPLAINT U/S 156 (3) CrP.C READ WITH 420/120B/471/191 OF IPC ON
BEHALF OF COMPLAINANT.

COMPLAINANT FILED UNDER IPC SECTIONS 191 THROUGH 209
INCLUSIVE FOR FILING FALSE EVIDENCE AND COMMITTING PERJURY
UNDER OATH; IPC SECTION 120B, CRIMINAL CONSPIRACY READ WAITH
SS 471 AND 420, IPC FOR CONSPIRING WITH THE STATE BAR OF
CALIFORNIA, USA, PROSECUTOR TO USE FORGED DOCUMENTS AND IPC
SECTIONS 206 TO 211, INCLUSIVE, ABUSE OF PROCESS.

**VIJAY DATTA**
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Rampura, Delhi-110035

(संजीव मनचन्दा)
(SANJEEV MANCHANDA)
अनुभाग अधिकारी (कौ०अ०)
Section Officer (C.I.)
सीपीवी प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

The Signature / Seal of Magistrate / Executive Magistrate / Manager attested

2017

दिनांक 27 FEB 2007

की संख्या
प्रस्तुत करने की तारीख
तैयार हो गई
जी गई और
प्रतिलिपि
लिखित है
... यह स्टाम्प और फीस की पंजी में निर्धारित है
... और ... व्यय
व्यय
वसूली
देने या भेजने की तारीख

दिनांक

— 2—

1.  Complainant Company, Amerindia Foods Limited, hereinafter referred to as AFL, is a duly registered Indian Corporation in the State of Andhra Pradesh with offices at New Delhi and Nasik, Maharashtra. It was incorporated on 30th October, 1992 (8th Kartikika 1914saka), under the Indian Company Act 1956 pursuant to Section 149 (3). Its corporate number is 01-14948. The Certificate of Incorporation is attached herewith as ANNEXTURE 1.

2.  AFL commenced its agriculture based business on 3rd March, 1994. The Certificate of Commencement of Business is attached as ANNEXTURE 2. Mr. Kanwal Sain is the Chairman and Managing Director of the company and is fully conversant with the facts and is authorised by the Resolution dated November 4, 2006, unanimously passed by the Board of Directors, to sign, verify and institute the present suit. The said Resolution is attached herewith as ANNEXTURE 3.

3.  Accused Number One, Jagjit Singh Randhawa, hereinafter referred to as 'Randhawa', is a United States citizen and a person of Indian origin who has conducted business with AFL since November 20, 1996 and is a duly registered shareholder of AFL holding Share Certificate Number 8, issued on 13th of November, 2003 against the payment of Rupees 5,00,000 duly received by AFL on 30th December, 1996. The Share Certificate is attached herewith as ANNEXTURE 4. The receipt of Rs. 5,00,000 for the account of Shri Jagjit Singh Randhawa deposited in the Union Bank of India, Nasik is attached herewith as ANNEXTURE 5 and it bears the Union Bank of India deposit receipt number 001108 and the account number of AFL.

4.  Accused Number Two, Baljit Singh Randhawa, who is also a United States citizen and a person of Indian origin, is the wife of Defendant Number One. Defendant Number Two claims that the

2



VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Rampura, Delhi-110035



सं० .....२०१३६.... दिनांक......**27.FEB2007**
No. ................................ Date ......................
अनिवासी विवा मजिस्ट्रेट / राज डिविजनल
मजिस्ट्रेट / कार्यकारी मजिस्ट्रेट / विवाह
रजिस्ट्रार / नाग रजिस्ट्रार के हस्ता क्षर
सत्या.पित किये जाते हैं।
The Signature of SHRI/SDM/(Executive)
Magistrate / Registrar of Marriage /
.................... attested

(संजीव मनचन्दा)
(SANJEEV MANCHANDA)
अनुभाग अधिकारी, (कोंसाई०)
Section Officer (O.I)
वीपीवी प्रभाग/CPV Division
विदेश मन्त्रालय, नई दिल्ली
Min. of External Affairs, New Delhi