ANNEXURE No. 4

Certificate No. 8

# SHARE CERTIFICATE

## AMERINDIA FOODS LIMITED

(Incorporated under the Indian Companies Act, 1956)
Authorised Capital Rs. 10,000,000/-
Divided into 1,000,000 Shares of Rs 10/- each

No. of Shares ......50,000......

Share Ledger Folio ....3y....

INDIA

### This is to Certify that Jagjit Singh Pandhaur

is the Registered holder of 50,000 Shares
numbered from ......71...... to 50,070...... both inclusive in the above named
Company subject to the provisions of the Memorandum and Articles of
Association thereof & upon which calls have been made as per endorsement
on reverse.

Given under the common Seal of the said company this 13th day of Nov 2003

Of Rupees 10/- each

For Amerindia Foods Limited

Authorised Signatory

Director

Managing Director

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden
Old Middle School Complex
Ram Pura, Delhi-110035

COPY TO COPY
Examiner
Date.........





**21 FEB 2007**

सं० ......(2905)...... दिनांक ...........
No. .................... Date ....................

राज्य स____ सचिव / अपर सचिव / उप
सचिव ____ सचिव / अनुभाग
अधि____
This ____ किये जाते हैं ।
S ____ ____nal
Secre____ ____dof
Officer of State Government Attested

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी०आई०)
Section Officer (O.I.)
सीपीवी प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi



001108

यूनियन बैंक ऑफ इंडिया
UNION BANK OF INDIA
नासिक शहर–422001 (महाराष्ट्र)
Nasik City–422001 (Maharashtra)

53 238

No. 5

30 – 12 – 1996

Pay to INTERINDIA FOODS LTD या धारक को or Bearer

रुपये Rupees Five Lacs only

रु.Rs. 5,00,000

अदा करें

N.R.E
बचत बैंक खाता नं. S.B. A/C No. 12459

FOR THE A/c OF
SHRI JAGJIT SINGH RANDHAWA
USA

ATTN. SHRI S. BHATIA
D.F

ANNEXTURE No. 5

COPY TO COPY
Examiner
Date

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex
Ram Pura, Delhi-110035.

सं० 24050  दिनांक 21 FEB 2007
No.



(...cutive)



(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी०पी०वी०)
Section Officer (C.V.)
सी०पी०वी० प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Mins. of External Affairs, New Delhi

ANNEXURE No. 6 _ 22

Dec 17 03 04:38p    Bryant H Byrnes                5107632406

TAKE HIS PASSPORT & ALL THE PAPERS
WHICH HE HAS FILED WITH THE U.S. EMBASSY

GIVE HIM ONLY Rs. 10,000.

← CHITER SAIN KHANNA, ADVOCATE
QU-39 PITAMPURA        SUPREME COURT
NEW DELHI            OF INDIA
TEL. 513-3530

IN REFERENCE TO:

TELEPHONE CONVERSATION
RE: IMMIGRATION - (GC. STATUS)
OF RACHHPAL SINGH
S/O BALWINDER SINGH

TUESDAY, SEPT. 17th, 1996.

MEET MR. KHANNA AT THE
HILTON HOTEL, LOBBY
AT 10:00 A.M.

HILTON HOTEL IS
AT BARAKHAMBA ROAD
IN NEW DELHI.
911 / 332.0101
- GO TO THE LOBBY MANAGER OF THE
HOTEL & ASK FOR MR. KHANNA

Dec. 19 2003 10:14AM P3        FAX NO. : 415/255/5AT        FROM :

ANNEXTURE No. 6

COPY TO COPY
Date............    Examiner

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035.



21 December, 1

Shri Jagjit S
2023 Key Boul
El Cerrito, C
U.S.A. 94530

Referenc

2 1 FEB 2007

(शेखर यादव/SHEKHAR YADAV)
CPV Division
नई दिल्ली
Personal Affairs, New Delhi

**AMERINDIA FOODS LIMITED**
231 JAINA TOWERS
VIKASPURI, NEW DELHI 110 018

_— 23 —_

OFFICE:
...AIN STREET, SUITE 439
...TY, CA. 94710
...001-549-1855

Telephone: 5546451
Fax:        5546452



21 December, 1996

Shri Jagjit Singh Randhawa
2023 Key Boulevard Street
El Cerrito, California
U.S.A. 94530

    Reference Number: Corp.3/USA/34

Respected Shri Randhawa Ji:

    Today we have received an amount of Five Lakhs and Fifty Two Thousand Rupees towards your investment in our company through Mr. Padam Khanna, our lawyer in the USA. We thank you very much for this investment and hereby inform you that we have already dispatched company material and our proposed construction schedule of our plant at Nasik.

    On Fourth of January in the coming New Year, we are holding a Corporate meeting here at our offices in New Delhi. At that time we will issue all the stocks and shares to all the shareholders and elect the Board of Directors. Please confirm your mailing address.

    Once again, we thank you for your investment

Very truly yours,

Suresh Bhatia
Director of Finance

cc. Mr. Chiter Sain Khanna
    Chairman

EXHIBIT 6

ANNEXTURE No. **7**

VIJAY DATTA
Sub Divisional ...
Rajouri ...
Old Middle Sc...
Ram Pura, Delhi...

0020



*India Office:*
203 Trinity Point
Chheda Centre
Prem, Maharashtra State, India 4221402

*India Plant:*
Dindori, Nasik, India

Mr. Jagjit Singh
Village Ramdas (Kothe
Tehsil Ajnala



No. 59008 दिनांक 12 1 FEB 2007

शेखर यादव/SHEKHAR TADAV
अनुभाग अधिकारी (सं.मा.)
Section Officer (O.I.)
ओ.आई./CPV Division
विदेश मंत्रालय, नई दिल्ली
Min...ternal Affairs, New Delhi

ANNEXURE No. 8

**AMERINDIA FOODS LIMITED**
2600 Tenth Street
BERKELEY, CALIFORNIA 94710

Telephone: (510) 549-2786
Facsimile: (510) 549-2832

*Head Office:*
*Morning Front*
*Off. Canal*
*Roque, Maharashtra State, India 422 002.*

*India Plant:*
*Dunbore, Nasik, India.*

July 7, 1997

Mr. Jagjit Singh
Village Ramdass (Kothe)
Tehsil Ajnala
Amritsar, INDIA

Dear Mr. Rachhpal Singh:

  This is to inform you that finally we have been able to secure the permission from the central government for shipping machinery from the United States. We expect to receive the final permission from the Reserve Bank of India very soon. As soon as we have RBI permission we will start shipping the machinery to Nasik. Immediately thereafter you and Mr. Jagjit Singh will be asked to leave for Nasik. We will send you Rs. 5,000 each for the month of August, 1997 along with moving expenses to Nasik. As soon as our machinery and financing is in place, we will raise your salary considerably and invite you and Mr. Jagjit Singh to the United States for training.

       Very truly yours,

       Arthur Berg

AB/ms

EXHIBIT 6  0050

ANNEXURE No. 8

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden.
Old Middle School 600....9X,
Ram Pura, Delhi-110035.





2 1 FEB 2007

No. 21017

शेखर यादव/SHEKHAR YADAV
अनुभाग अधिकारी (ओ.एल.)
Section Officer (O.L.)
सी.पी.वी. प्रभाग CPV Division
विदेश मंत्रालय, नई दिल्ली
Ministry of External Affairs, New Delhi

TL:510-549-2832          Oct  1 97   15:41 No.001 P.01

ANNEXTURE No... **9**

# AMERINDIA FOODS LIMITED
202, Turning Point, Canada Center
NASHIK, MAHARSHTRA

Head Office:
xxxx Tenth Street
Berkeley, California 94710

India Plant:
Dindori, Nasik, India

Telephone: (0253) 577-136
Facsimile: (0253) 313-733

19th September, 1997

Mr. Jagjit Singh Randhawa
Avis Rent A Car System, Inc.
Oxford & Hearst Street
Berkeley, California 94704
<u>UNITED STATES OF AMERICA</u>

## RE: ISSUANCE OF CLASS 'A' PREFERRED STOCK

Dear Mr. Randhawa:

We are pleased to inform you that our registration formalities with the Indian government have been completed. We are now in the process of issuing the stock certificate to our preferred investors. Class 'A' Preferred Stock has been valued at the corporate books at Rs. 50 per share. As you total investment is Rs.10,00,000, you are entitled to a stock certificate worth 20 lakhs shares.

Our financing is near completion and we will begin constructing our plant in the month of January, 1998.

Please keep us informed of any change in your address.

Sincerely,

Virender Kumar
Secretary-Corporate Affairs

## ANNEXTURE No... **9**

### EXHIBIT 4

COPY TO COPY

Date..............  Examiner

**VIJAY DATTA**
Sub Division of xxx
Rajaori Garden
Old Middle Sel xxx
Ram Pura, Delhi xxx

0051



February 19, 2003

PERSONAL AND CO

Kanwal Sain, Financial
Amerindia Foods, Limi
202 Turning Point
Canada Center
Nashik 422-002 M.S.
India



21 FEB 2007

(Executive)

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (जी० आई०)
Section Officer (O.I.)
सी०पी०वी० प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

**THE STATE BAR**
**OF CALIFORNIA**

OFFICE OF THE CHIEF TRIAL COUNSEL
ENFORCEMENT

1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

TELEPHONE: (213) 765-1000
TDD: (213) 765-1566
FAX: (213) 765-1318

DIRECT DIAL: (213) 765-1171

February 19, 2003

**PERSONAL AND CONFIDENTIAL**

Kanwal Sain, Financial Controller
Amerindia Foods, Limited
202 Turning Point
Canada Center
Nashik 422-002 M.S.
India

In Re:  Case Number:   02-O-11383
        Respondent:    Padam Kumar Khanna

        Your Reference No.:   IN/IN/AM-06

Dear Mr. Sain:

This office is investigating a complaint filed against the California attorney, named above, regarding monies Jaggit and Baljit Randhawa paid to the attorney in the amount of $25,000.00. These funds were paid to Mr. Khanna in the belief that these funds were being invested in Amerindia Foods, Ltd., otherwise known as Khanna Foods, USA.

On November 18, 1996, Jaggit and Baljit Randhawa deposited a total of $16,000.00 in an account in the name of Khanna Foods, USA as an investment. However, they never received an accounting from either the attorney, Khanna Foods, USA or Amerindia Foods, Ltd.

Jaggit and Baljit Randhawa state that they requested a refund of their money, however, they were informed that the monies could not be withdrawn from the account, that the account was closed in 1999 by the attorney and allegedly the funds were turned over to Amerindia Foods, Ltd. and they would have to get the funds from Amerindia. Mr. Khanna states that he requested Amerindia to refund the monies to the Randhawas. However, they never received any portion of these funds.

The bank these funds were placed into was Bank of America, account number 05559-07175, in the name of Khanna Foods, USA. $9,000.00 was deposited on November 18, 1996 and $7,000.00 on November 19, 1996.

ANNEXTURE No.... **10 (1)**

*EXHIBIT 'B'* 0037

COPY TO COPY

Date:

Examiner

**VIJAY DATTA**
Sub Divisional Magistrate
Old Mid
Ram



Sain, Financial
January 19, 2003
Page 2

I would appreciate any assi...
Amerindia Foods, Ltd. eve...
Khanna account.

Mr. Khanna contends that ...
account to be used strictly t...
legal representative of Amer...

Please provide me with doc...
January 1, 1996 through De...

Please provide a response t...
expeditiously as possible.

Thank you for your courte...

21 FEB 2007

सं० 29043 दिनांक ...
No.
...

...cutive)

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (डी०आई०)
Section Officer (D.I.)
सी.पी.वी. प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

AR YADAV
(D.I.)
Division
नई दिल्ली
...irs, New Delhi

TO.(2)

_____ain, Financial Controller
_____ 19, 2003
____ 2

I would appreciate any assistance you can give me in tracking these funds to establish whether
Amerindia Foods, Ltd. ever received these funds and whether Mr. Khanna was authorized to open the
Khanna account.

Mr. Khanna contends that Amerindia Foods, Ltd. authorized him to open the Khanna Foods, USA
account to be used strictly to pay for expenses and other related expenses incurred by Mr. Khanna as the
legal representative of Amerindia Foods, Ltd. in the United States.

Please provide me with documentation that Amerindia Foods, Ltd. did exist during the period from
January 1, 1996 through December 31, 1999.

Please provide a response to this letter as soon as possible so that we can resolve this investigation as
expeditiously as possible.

Thank you for your courtesy and cooperation in this matter.

Very truly yours,

Alice Verstegen
Senior Investigator

AV/nb

h:\work\verstegen\02o11383\orsain\nb

10.(2)

0038

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035.

21/2/07



सं॰ अ॰ २४०४४    दिनांक
No.    Date    21 FEB 2007

(खेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी॰पी॰वी॰)
Section Officer (C.P.V.)
सी॰पी॰वी॰ CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

ANNEXURE No....II.(1)

**CHITER S. KHANNA**
ADVOCATE
SUPREME COURT OF INDIA
QU - 39B, PITAMPURA
NEW DELHI

TEL: 3534-9057

Email:chiterkhanna@yahoo.com

12 September, 2003

Alice Verstegen
Attorney, Special Investigator
Office of The Chief Trial Counsel, Enforcement
The State bar of California
1149 South Hill Street
Los Angeles, California 90015-2299
UNITED STATES OF AMERICA

REFERENCE YOUR LETTER DATED 19/2/2003 AND ADDRESSED TO MR.
KANWAL SAIN, FINANCIAL CONTROLLER OF AMERINDIA FOODS LIMITED
(AFL)

Dear Madam Alice Verstegen:

This reply is to your letter dated 19/2/2003, addressed to
Shree Kanwal Sain, Financial Controller of the above
referenced company which has been forwarded to me for reply.
AFL has been inoperative since 1999. So sorry for the delay.
I am still the Chairman and therefore the proper authority to
reply to your enquiries. Mr. Kanwal Sain also co-signs this
letter.

Mr. Padam Khanna and his family in India owned a large farm
where it produced high quality tomatoes and other vegetables
and had the latest technology of crop husbandry and seed
planting along with the hybrid tomato seeds. Mr. Padam Khanna
and AFL entered into a contract in August 1996 Technology
Transfer Contract with AFL wherein Mr. Padam Khanna was to
invest the farm and provide technical know-how in exchange
for equity shares of AFL.

Under the strict Foreign Exchange Regulation Act, 1973 as
amended, this collaboration had to be approved by the Reserve
Bank of India as remittances and dealings in foreign exchange
were involved.

*EXHIBIT C*

ANNEXURE No....II.(1)

**VIJAY DATTA**
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-1, Delhi



No....

Mr. Pad
where
Dolla
Cali
This accoun
for remitta

In January
the Rese
lumpsum an
USA. Tho
records o
probabl
you are
providing
for remit
referenc
306/96/9
Foods, U
Califor

In Nove



सं० No. २१.७.८.८  दिनांक Date 21 FEB 2007

(Executive)

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी०पा०)
Section Officer (CPV)
सीपीवी प्रभाग CPV Division
विदेश मंत्रालय, नई दिल्ली
Mia. of External Affairs, New Delhi

No... 11.(2)                                              -29-

Mr. Padam Khanna was asked to set up an account in America
where he could receive the Royalty Payment of 4% in U.S.
Dollars.  Mr. Padam Khanna opened an account in Berkeley
California U.S.A. in Bank of America, East Shore Branch.
This account number 121000358-05559-07175 was provided to us
for remittances of foreign exchange from India.

In January 22, 1997, we finally received the permission from
the Reserve Bank of India for remittances in U.S. Dollars in
lumpsum and the regular Royalty Payments for Khanna Foods,
USA.  Though, we are not required to furnish any corporate
records to you without the Indian Court's orders which
probably will take you over five years to find out whether
you are entitled to the records or not, I am, willingly,
providing a copy of the Reserve Bank of India's permission
for remittance of foreign exchange to Khanna Foods, USA. The
reference to that letter is EC.CO.FITT.401 /12.51.00/A-
306/96/97. We duly registered the said bank account of Khanna
Foods, USA, Bank of America,  East Shore Branch, Berkeley,
California, USA with the Reserve Bank of India.

In November, 1996, if my memory serves me well, I received an
urgent telephone call from M. Padam Khanna, who informed me
that one of his clients, who also comes from a farming family
in Punjab, had deposited $16,000 U.S. Dollars in Khanna
Foods, USA for investment in AFL. He was very upset. His
client did it without his permission. Mr. Padam Khanna asked
me for help.  As a member in good standing of the Supreme
Court of India, I advised him that it was highly improper and
would violate various Foreign Exchange Regulation Act and
Corporation Code statutes of India.  One possibility was that
he could just return those $16,000 to his client as he had
complete control over the account.  However, as per our
Technology Transfer Agreement, any dollar funds in Khanna
Foods Account, deposited in the name of AFL, would constitute
Foreign Exchange remittances under the Foreign Exchange
Regulation Act, 1973 (FERA) as amended.  That would
constitute a violation. Second, the Board of AFL could create
legal problems for Mr. Padam Khanna for not seeking advice
from AFL and returning the funds deposited for AFL.  I,
further, advised him that  AFL was in the final stages of
approval for the Royalty Transfer from the Reserve Bank of
India and that we did not want to jeopardize our chances.
Hence the safest and the correct step would be to remit the
funds to AFL and then we would immediately refund those to
his client as unsolicited funds for investment.

It must be pointed out that under the Indian Corporation
Code, no company can receive unsolicited funds or deposits in
its account.  Any request for shares of an Indian company

ANNEXTURE No... 11.(2)                                    2

COPY TO COPY

Examiner

els

VIJAY DATTA
Sub Divisional Magistrate
Rajouri ~___an,
Old Middle School Complex,
Ram Pura, Delhi-110035:

must
Dire
acce
formal pro
company. Un
Allotment
consider
this case
of 4 Janua
and the fu of

This was
received (e
(enclosed he
$16,000 with
Mr. Randhawa
Mr. Padam Kh
Foods accoun

The name of t
Randhawa.' W



सं० 2900M2 दिनांक
No. ........................ Date ........................

21 FEB 2007

(शेखर ताबर/SHEKHAR TABAR)
अनुभाग अधिकारी (सी०आई०)
Section Officer (C.I.)
सी०पी०वी० प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

No. 11 (3)                                    -30-

must be proscribed through an application to the Board of Directors wherein the Board has the authority to either accept or reject the application. We have a systematic and formal procedure for investment for shares in an Indian company. There is a Register of Shares Application & Allotment which has 22 columns. A proper application with considerable details is to be filled up. None was done in this case. Our records also show that in our Board meeting of 4 January, 1997, the Randhawa matter was duly discussed and the full refund was approved.

This was a very sound advice. On January 29, 1997, we received the final Permission from the Reserve Bank of India (enclosed herewith). Mr. Padam Khanna immediately deposited $16,000 with AFL in equivalent Indian ~~Rupees in the name of~~ Mr. Randhawa. This fact was duly acknowledged all around and Mr. Padam Khanna was now free to use those $16,000 in Khanna Foods account any way he wanted.

The name of Mr. Padam Khanna's client was Mr. Jagjit Singh Randhawa. We have no knowledge or record of Baljit Randhawa. Mr. Jagjit Randhawa never mentioned Baljit Randhawa during our various communications. This investment was received without any application and without any solicitation by any member of ~~the Board or by any~~ officer of the company. Mr. Padam Khanna could not either solicit or request Mr. Randhawa to invest in AFL. He was neither a director nor an officer of AFL.

Mr. Randhawa's application for investment was rejected by the Board and the funds so deposited, Rs. 5,52,000 or $16,000 were earmarked for refund.

Apparently, in my personal opinion and the opinion of the members of the Board, Mr. Randhawa had indeed invested in AFL only on the pretext of getting his brother-in-law and cousin into the United States. Without going into the details, I wish to explain that people from the area where Mr. Randhawa comes ~~from, have adopted~~ unique, novel ~~and desperate measures~~ to get to the United States. I have been personally approached by Mr. Randhawa's brother-in-law and cousin regarding help for ~~getting visas to the United~~ States. When they sent me their passports, I made enquiries. During the course of my enquiries I found out that I could not get the proper information and that their statements were contradictory. I returned their passports and declined to undertake their cause.

No. 11 (3)                                                    3

COPY TO COPY

VIJAY DATTA
Sub Divisional Magistrate
Rajout Ganj,
Old Mini ... 10 Complex,
Ram Pura, ......... 85.



We have
refund
sub-sect
Regula
noti
264/
grants Perm
unsolicitec
AEL was
Mr. Randa

In the fac
remember
wherein
his inve
invest a
requested t
shares whic
can decide
applicati
completed a
irregularit
entries wer
issued Clas

**21 FEB 2007**

सं० 2904)  दिनांक.........................
No.
....................
.......नवल
....ह

(alive)
(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (ओ०आई०)
Section Officer (O.I.)
सीoपीoवीo प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

II (4)    _31_

have made every possible effort from 1997 to 1999 to refund the funds to Mr. Randhawa. This has been done as per sub-section (1) of section 9 of the Foreign Exchange Regulation Act, 1973 (46 of 1973) and in supersession of the notification of the Reserve Bank of India No. F.E.R.A. 264/73-R.B. dated 4th October, 1973, wherein the Reserve Bank grants permission to Indian corporate bodies for refunds of unsolicited funds if made in hard currency. In other words, AFL was legally and financially able to refund the money to Mr. Randhawa

In the first week of February, 1997, Mr. Kanwal Sain remembers his conversation with Mr. Jagjit Singh Randhawa wherein Mr. Randhawa replied to Mr. Sain's letter regarding his investment. Mr. Randhawa insisted that he be allowed to invest and that the money not be refunded. Mr. Randhawa requested that he be sent an application for allotment of shares which he would fill out properly and then the Board can decide whether to accept his application or not. An application was sent to Mr. Randhawa. We never received the completed application. However, we acknowledge certain irregularities in our finance department wherein certain entries were made which showed that Randhawa was to be issued Class A Preferred Stock for a pledged investment. This information was later corrected and Mr. Randhawa was duly notified that his investment would be refunded and no stocks would be issued. That letter was mailed to Mr. Randhawa on 18 October, 1997 at his work place address.

Ostensibly, Mr. Randhawa, had other ideas. Mr. Randhawa had insisted that he be given shares and not the money and that the investment would facilitate the visits of his brother-in-law and cousin to the United States of America. AFL and myself have not discussed Mr. Randhawa's AFL investment with Mr. Padam Khanna since our initial discussion. The talks about Mr. Randhawa have resumed between AFL and Mr. Padam Khanna only during the past two months

The management of AFL had made every possible effort to refund the money, minus nominal charges. It must be pointed out that Mr. Randhawa was in constant touch with the AFL management till late 1997. I have been given to understand that Mr. Randhawa severed his relationship with AFL and never gave us his new address. Since our last communication of 18 October,1997, we have not heard from Mr. Randhawa and hence we have been unable to refund the said unsolicited investment which was kept in protected escrow account.

ANNEXTURE No. II (4)

4

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035



2 1 FEB 2007

SHEKHAR YADAV
Attestation Officer (O.I.)
CPV Division
Min. of External Affairs, New Delhi

No. 11 (5)

_ 32

We ceased our operations in 1999.  We are in the process of liquidation.

I do hope I have answered all your questions. Mr. Randhawa is neither a share holder nor an Indian citizen. Therefore, he can not require AFL to answer any of his questions.  However, we are giving all this information to facilitate your investigation.

We are also very concerned about Mr. Randhawa's statements regarding AFL.

If there is anything else you need to know, please do not hesitate to contact me. We wish to be advised about the developments in this case.

Read, approved, attested &                    Very truly yours,
Signed

Kanwal Sain                                    Chiter S. Khanna
Former,Controller Finance    AFL             Chairman, AFL

No. 11 (5)

5

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035.



दिनांक 21 FEB 2007

(Executive)

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी.पा.वी.)
Section Officer (O.I.)
सीपीवी प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi



ANNEXTURE No. 12

EXHIBIT D



सं. 29988 दिनांक 2 1 FEB 2007

(Executive)

Marriage

(शेखर यादव/SHEKHAR YADAV
संपुलक अधिकारी (कार्य बल.)
Section Officer (O I.)
सी पी वी प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

-34

**PUBLIC MATTER**

**FILED**

OCT 21 2004

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

STATE BAR COURT

HEARING DEPARTMENT – SAN FRANCISCO

In the Matter of

PADAM KUMAR KHANNA,

Member No. 85229,

A Member of the State Bar.

Case No. 02-O-11383-PEM

**DECISION AND ORDER OF INVOLUNTARY INACTIVE ENROLLMENT**

## I. INTRODUCTION

This disciplinary case involves a seasoned attorney who had created a web of deceptions to seduce his unsophisticated clients to invest $31,000 in a sham corporation and who insists on these same fraudulent and contrived misrepresentations before this Court. His acts of moral turpitude and dishonesty shock the conscience of the legal profession, pose a danger to the public, and degrade the highest possible professional standards for attorneys.

Respondent **PADAM KUMAR KHANNA** is charged with multiple acts of misconduct in one client matter. The charged misconduct includes (1) failing to comply with certain prophylactic requirements regarding an adverse interest; (2) misappropriating client's investment funds; (3) failing to return client files; (4) failing to render an accounting; (5) misrepresenting to the State Bar regarding the disposition of client funds; (6) misrepresenting to the State Bar about the client files; and (7) failing to cooperate in the State Bar investigation.

This Court finds, by clear and convincing evidence, that Respondent is culpable of all but one of the charged acts of misconduct. Based upon the egregious nature and extent of culpability, as well as the applicable aggravating circumstances, the Court recommends that Respondent be disbarred from the practice of law in California.

kwikcag®    022 604 822

ANNEXTURE No. 13(1)

COPY TO COPY

Date............    Examiner

dls 8es
21/7/07

**VIJAY DATTA**
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School
Ram Pura, Delhi-11





21 FEB 2007

24037

SHEKHAR TABANI
...V Division
..., नई दिल्ली
...a, New Delhi

## II. PERTINENT PROCEDURAL HISTORY

The Office of the Chief Trial Counsel of the State Bar of California (State Bar) initiated this proceeding by filing a seven-count Notice of Disciplinary Charges (NDC) on June 25, 2003. On August 4, 2003, Respondent filed a response to the NDC.

At the August 2, 2004 pretrial conference, the parties stipulated to some of the facts underlying the State Bar's charges. These agreed-upon facts were memorialized in a Stipulation As to Facts on August 17, 2004.

A three-day trial was held August 17-19, 2004. The State Bar was represented in this proceeding by Deputy Trial Counsel Tammy Albertsen-Murray. Respondent represented himself.

At the close of the hearing, the parties agreed to submit closing trial briefs on September 1, 2004. The Court took this proceeding under submission on September 7, 2004, after the parties had filed closing trial briefs.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Jurisdiction

Respondent was admitted to the practice of law in California on May 15, 1979, and has been a member of the State Bar of California at all times since that date.

### B.    Findings of Fact

The following findings of fact are based on the parties' partial stipulation of facts and the evidence and testimony introduced at this proceeding. Other than Respondent, the witnesses who testified at trial were Jagjit Sing Randhawa, Baljit Randhawa, attorney Bryant H. Byrnes, and State Bar investigator Alice Verstegen. The Court finds Respondent's testimony to be self-serving and not credible. However, the Court finds the other witnesses to be credible.

#### 1.    *Representation of Baljit Randhawa*

Jagjit Sing Randhawa and Baljit Randhawa are Indian immigrants who speak very limited English. Jagjit has been a gas station attendant in Oakland since 1989 and had a second job at a car rental company in Berkeley until 2000. His wife, Baljit, has worked at a fast food restaurant for the past six years.

While working at the car rental company, Jagjit met Respondent, who was a frequent

-2-

ANNEXTURE No. 13 (2)

COPY TO COPY
Date................ Examiner

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110 035.

customer that

friend because

Before

matters.

In 19

matters: (1) V

There was no f

The Ra

Respondent $1,

not ask for a rec

1
2
3
4
5
6
7
8
9
10



सं. 2937(M) 2 1 FEB 2007

CPV Division

(Executive)

(शेखर यादव/SHEKHAR YADAV)

CPV Division

नई दिल्ली

Affairs, New Delhi

...mer there and speaks Jagjit's native language, Punjabi. Jagjit considered Respondent to be a friend because of their common culture and language.

Between 1996 and 1999, the Randhawas hired Respondent to represent them in several legal matters.

In 1996, Respondent provided legal services on behalf of and advice to Baljit in three matters: (1) Vehicle Code violations; (2) Temporary Restraining Order (TRO); and (3) shoplifting. There was no fee agreement.

The Randhawas testified that they paid Respondent the fees he had charged. Jagjit paid Respondent $1,000 for the Vehicle Code violations case and $500 for the shoplifting matter. He did not ask for a receipt. Respondent discussed the TRO matter with Baljit but did not charge any legal fees.

Therefore, the Randhawas did not owe Respondent any legal fees in those three matters.

a.    Respondent's Contentions

Respondent denies that he had ever received any compensation for his services in the Vehicle Code violations case or the TRO matter. Respondent testified that although he did not represent Baljit on the TRO matter, he did discuss the matter with her and had expected to be paid. But Respondent did not have a written fee agreement with the Randhawas and never asked for any fees.

Respondent further claims in a July 13, 2001, letter to the Randhawas' subsequent counsel, attorney Bryant H. Byrnes,[1] that the Randhawas owed him an additional $4,500 for his representation in the shoplifting matter. But Baljit did not plead guilty to shoplifting and was let off on a fine of $100. Moreover, Respondent testified he did not have a copy of any written fee agreement and that he does not remember whether he charged a flat fee.

Thus, Respondent's contention that the Randhawas still owe him legal fees in Baljit's three matters is without merit.

//

_____

[1] State Bar exhibit 9, p. 9.

-3-

No. 13(3)

COPY TO COPY

Date............   Examiner

c/s   8/a 26/2/07

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden
Old Middle School Complex
Ram Pura, Delhi-110035



2 1 FEB 2007

(बेकर यादव/SHEKHAR YADAV)
विदेश (ओ.आ.)
son Officer (O.I.)
संम CPV Division
विदेश मं. नई दिल्ली
a. Of External Affairs, New Delhi

2.  **Representation of Jagjit Randhawa**

Respondent represented Jagjit in two legal matters.

In or about 1996, Respondent represented Jagjit in one DUI case. Respondent charged him $2,500 which Jagjit paid. Again, there was no written fee agreement.

In 1997, Jagjit hired Respondent to retrieve some of his personal property from a friend's house. Jagjit paid Respondent $700 to handle the case, as charged by Respondent. The Randhawas paid Respondent in full.

a.  <u>Respondent's Contentions</u>

Respondent claims that he charged Jagjit $3,000 for the DUI matter and that he received only $500. As a result, Respondent argues that Jagjit still owes him the balance of $2,500.

Respondent also contends that he charged the Randhawas $3,500 for the personal property case but received only $500. Respondent admits that while he thinks he gave Baljita a fee agreement in this matter, he does not have a copy even though it is his policy to keep a copy of his fee agreements.

Respondent's contention that the Randhawas still owe him legal fees in Jagjit's two matters is rejected.

3.  **The Randhawas' Investment in Amerindia Foods Limited**

Amerindia Foods Limited (AFL) is a food company incorporated in 1992 that is supposedly located in India. AFL's primary business purpose was to manufacture mango juice and manage a large tomato farm in India. According to Respondent, he was one of AFL's principal founders. Other founders included his family and relatives. Respondent was AFL's President of the North American branch and legal counsel in the United States. Respondent's brother, Chiter S. Khanna, was AFL's chairman. In 1996, when his brother had a heart attack, Respondent was sometimes referred to as the chairman of AFL. Respondent testified that between 1995 and 2003, the company tried to acquire machinery but was unsuccessful.

In June 1995, Respondent opened a checking account at Bank of America in the name of Khanna Foods, USA, account number 05559-07175 (Khanna Foods account). According to Respondent, Khanna Foods, USA was not a company – it was his own business name. Respondent

-4-

ANNEXTURE No. 13 (4)



VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden
Old Middle School Complex,
Ram Pura, Delhi-110035.



21 FEB 2002

No. _____  Date _____

(SHEKHAR TAYAL)
CPV Division
External Affairs, New Delhi

admitted that he was the sole proprietor of Khanna Foods, USA. He set up the account to receive

royalty payments from AFL for technology that he and his mother had developed with respect to

3   hybrid tomato seeds and to pay any incidental expenses that Respondent as legal counsel for AFL

4   incurred in the United States.

5   　　　　In 1996, while representing the Randhawas, Respondent frequently discussed with Jagjit

6   about AFL, its lucrative potentials, and the window period that the Randhawas could also partake

7   in this business venture. Respondent enticed the Randhawas to invest in AFL. After viewing the

8   company brochure and placing their trust on Respondent as a friend and attorney, the Randhawas

9   became convinced of AFL's profitability and hurriedly gave Respondent $25,000 for investment in

10  AFL within the deadline before Respondent left for India in November 1996. In return, the

11  Randhawas were to receive certain shares of stock in AFL.

12  　　　　Respondent provided the Randhawas with deposit slips to his personal bank account and

13  Khanna Foods account. Respondent instructed them that each deposit should be less than $10,000

14  to avoid the scrutiny of tax officials. The deposit made in Respondent's personal bank account was

15  for investment and not for payment of legal fees.

16  　　　　In accordance with Respondent's instructions, the Randhawas invested $25,000 in AFL by

17  making three deposits in Respondent's bank accounts at Bank of America as follows:

| Date of Deposit | Amount | Account No. |
|---|---|---|
| 11/18/96 | $ 9,000 | 05557-07176 (Respondent's personal account) |
| 11/18/96 | $ 9,000 | 05559-07175 (Khanna Foods account) |
| 11/19/96 | $ 7,000 | 05559-07175 (Khanna Foods account) |
| *Total* | *$25,000* | |

23  Respondent then left for India. On November 25, 1996, Respondent issued a check made payable

24  to himself from the Khanna Foods account in the amount of $4,000 for his Indian trip. (State Bar

25  exhibit 6, p. 47.)

26  　　　　While Respondent was in India, he called the Randhawas to tell them that they would have

27  //

28  //

-5-

ANNEXTURE No. 13(5)

COPY TO COPY

Date........................  Examiner

VIJAY DATTA
Sub Divisional Magistrate
for Rajouri Garden
Old Middle School Complex,
Ram Pura, Delhi-110035.

2 1 FEB 2007

No. 2484

SHEKHAR YADAV
अनुभाग अधिकारी (सी॰पा॰व॰)
Section Officer (C.P.V.)
CPV Division
विदेश मंत्रालय, नई दिल्ली
Ministry of External Affairs, New Delhi

1   to pay an additional $5,000 to $6,000 in cash in order to have an investment of ten lakhs[1] of Indian

2   Rupees. When Respondent returned from India, the Randhawas paid Respondent the additional

3   $6,000 in cash as requested. They had borrowed the money from Jagjit's father.

4      Between December 1996 and September 1997, AFL sent three letters to Jagjit, confirming

5   the receipt of his investment funds and promising the imminent issuance of stock certificates worth

6   20 lakhs shares.[3]

7      Despite Respondent's and AFL's repeated promises and Jagjit's constant inquiries regarding

8   AFL stock, to date, the Randhawas have not received a single stock certificate or any evidence of

9   their investment.

10      Contrary to Respondent's assertion that he set up the Khanna Foods account to receive

11   royalty payments from AFL and to pay any incidental expenses that Respondent as legal counsel for

12   AFL incurred, Respondent used the account to pay Respondent's personal bills and purchases. In

13   December 1996, he paid $1,827 for a computer, $1,028.38 for another computer and $200 with a

14   notation "Happy Holiday," and $100 to Household Credit Services, Inc. In January 1997, he paid

15   $330.97 to PacBell and $20 for a parking citation.

16      In 2001, after it became clear to the Randhawas that they were never going to receive a single

17   stock certificate or any evidence of their investment, the Randhawas hired attorney Bryant H. Byrnes

18   to assist them in recovering and/or obtaining an accounting of their investment funds. On June 29,

19   2001, Attorney Byrnes wrote to Respondent, asking for an accounting of the investment funds and

20   legal fees that the Randhawas had paid.[4]

21      On July 13, 2001, Respondent listed the Randhawas matters and stated that he had received

22   $2,100 in legal fees from the clients but that they still owed him about $19,000.[5] However, he did

23   not provide an accounting of the fees or the investment funds. Respondent further wrote:

24

25   [1]A lakh is a unit in Indian currency.

26   [3]State Bar exhibit 28, pp. 3, 4 and 6.

27   [4]State Bar exhibit 9, pp. 8-12.

28   [5]State Bar exhibit 9, p. 8.

-6-

ANNEXTURE No. 13(6)

COPY TO COPY
Examiner
Date

c/s
VIJAY DATTA
Sub Divisional Magistrate
Ram Pura, Delhi-110036.
Old Middle School Complex,



In other word
Randhawas un
depicted by 2001.

On July 18,
allow him an oppon.
that these were clos
not be able to do any

2 1 FEB 2007

No. ........................  Date ..........................

........ (Executive)

SHEKHAR YADAV
Section Officer (C.I.)
CPV Division
Min. of External Affairs, New Delhi

> "Since June 1999, when I disassociated from Mr. Randhawa, he has
> repeatedly threatened and harassed me about his claimed investment
> in the Indian project. I have repeatedly told him to please show the
> receipts of the money which he claims he sent to India or deposited
> in my account for payment of fees."

In other word, Respondent was denying he had ever received the investment funds from the

Randhawas unless they had proof. Meanwhile, the $16,000 in the Khanna Foods account was

depleted by 2001.

On July 18, 2001, attorney Byrnes again wrote to Respondent requesting that Respondent

allow him an opportunity to see six Randhawas client files.[6] On August 7, 2001, Respondent replied

that these were closed files, he would have to locate them, and due to the press of business he would

not be able to do anything about the files until the end of August. On September 18, 2001, attorney

Byrnes again requested that Respondent make available to him the Randhawas' files.[7] On September

21, 2001, Respondent replied:

> "I am extremely busy till the 15th of October, 2001. However, I can
> certainly send the copies of all the files ... which I have been able to
> locate. Those certainly belong to him and he has an absolute right to
> those files. I will charge you the going rate for copying and my
> time."[8]

Although Respondent replied, his answers were nonresponsive. Respondent did not return

the files or provide an accounting. In December 2001, attorney Byrnes assisted the Randhawas in

filing a complaint with the State Bar. When the State Bar wrote to Respondent in January 2002

about the return of the client files, he replied:

> "[T]his is the first time I have been requested to do so. Neither the
> Randhawas nor their attorney Mr. Byrnes had asked for the files to be
> sent."[9]

In the April 2002 response, Respondent wrote: "I did not know who to send the files to."

Respondent finally returned the files to attorney Byrnes in April 2002.

---

[6] State Bar exhibit 9, p. 13.

[7] State Bar exhibit 9, p. 15.

[8] State Bar exhibit 9, p. 17.

[9] State Bar exhibit 11.

-7-

ANNEXTURE No. 13(7)

COPY TO COPY

Examiner

Date...........................

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Com...
Ram Pura, Delhi-110



No. ........    दिनांक 2 1 FEB 2007
                Date

The ..................... D.M. (Executive)
Magistrate / Registrar of marriage /
Marriage Officer Attested

(शेखर यादव) SHEKHAR YADAV
अनुभाग अधिकारी (सी.पी.वी.)
Section Officer (C.P.V.)
सी.पी.वी. प्रभाग CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

a.  Respondent's Contentions

Respondent denies that he had ever given the bank deposit slips to the Randhawas or instructed them to make such deposits.  He argues that those bank deposit slips must have been stolen from his office because he had no idea how the Randhawas obtained access to those deposit slips.

In a January 30, 2002 letter[10] to State Bar Complaint Analyst, Rebecca Foley, Respondent wrote:

"The Randhawas never paid me $25,000 for a business investment.  As Randhawas were my clients, they were strictly prohibited to invest money in any of my personal investments."

Respondent stated that on November 18, 1996, Jagjit called him after he deposited $9,000 in Respondent's personal bank account as partial payment for his legal fees and $9,000 in the Khanna Foods account and threatened that he was going to deposit another $16,000 into the Khanna Foods account in the next few days.  Respondent recalled being very upset that Jagjit deposited $9,000 for investment in the Khanna Foods account.  He also blamed the Randhawas for being "out of control and uncooperative during their status as [his] clients."  He "opted to withdraw as their counsel but stayed on when they pleaded total ruin because of language and cultural barriers."  He contended that the Randhawas still owed him more than $19,000 in legal fees.

He further alleged in his January 2002 letter that once he sent the money to AFL, it was AFL's responsibility to return the $16,000 to the Randhawas and that he had "nothing to do with [Jagjit's] investment."[11]  He also wrote: "Because of not being able to exercise any control over Randhawas I closed both account sometimes in 1999."[12]

Respondent claimed that he told Jagjit that investing in AFL was absolutely forbidden

---

[10]State Bar exhibit 11.

[11]In Respondent's January 30, 2002 letter to the State Bar, Respondent stated, "Since 1999, Mr. Randhawa has been enquiring about his investment in AFL.  I have repeatedly told him that I have nothing to do with his investment and that he should contact AFL directly." (State Bar exhibit 11.)

[12]State Bar exhibit 11.

-8-

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035.

2 1 FEB 2007

(जवर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी. पी. वी.)
Section Officer (C.P.V.)
सी.पी.वी. प्रभाग CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

that on November 18, 1996, he sent Jagjit a letter to that effect.[13]  In the November letter, Respondent warned Jagjit that he could not invest in any of Respondent's personal projects including the AFL.  He admonished Jagjit not to invest any money in AFL.  He also told Jagjit that he was sending Jagjit's investment funds to India and would advise AFL not to allow Jagjit to invest and

5    to return the money.  But the Randhawas testified that they never saw that letter.

6         In an April 11, 2002 follow-up letter to the State Bar,[14] Respondent purported to be

7    intrigued by Jagjit's knowledge of his personal and AFL accounts at Bank of America.  He also

8    claimed that since Jagjit, on his own initiative, deposited the funds for investment, his fiduciary duty

9    as the attorney for AFL was to forward the money to AFL (which was their notice of the investment)

10   and request that AFL then return the money to the Randhawas.

11        At trial, Respondent testified that when he learned that the Randhawas had deposited

12   $16,000 into his Khanna Foods account, he asked his mother in India, who was a shareholder in

13   royalties to AFL, to give $16,000 to AFL.  Respondent reckoned that once his mother transferred

14   $16,000 to AFL, the $16,000 in his Khanna Foods accounts was then his personal money.  He further

15   testified that the $9,000 deposited in his personal account was for outstanding legal fees that the

16   Randhawas still owed.

17        The Court finds Respondent's contentions absolutely unbelievable and unreasonable

18   and rejects his fabricated stories.  In particular, Respondent was at a loss to explain where his mother

19   obtained the $16,000 to give to AFL in India.  Respondent told the Randhawas to pursue the refund

20   of their investment funds from AFL directly and not from him because he could not touch the funds

21   in the Khanna Foods account.  Yet, he considered the $16,000 in the account as his personal money.

22        More important, the Court does not believe that the entity of AFL even existed.

23   Respondent has produced no independent reliable evidence, other than photocopies of uncertified

24   documents and letters from alleged officers of the company.

25        Assuming that AFL was incorporated in 1992 and the Khanna Foods account was

26

27   [13]State Bar exhibit 28, p. 2.

28   [14]State Bar exhibit 13.

-9-

ANNEXTURE No. 13 (9)

COPY TO COPY
Date                    Examiner

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035.



No. ........    Date ........  21 FEB 2007

This is a ............... (Executive)
/ ............ Marriage /

(SHEKHAR TABAD)
Section Officer (CPV)
CPV Division
Min. of External Affairs, New Delhi

...ed in 1995 for the purpose of AFL doing business in United States, between the years 1996 and 1999, other than the Randhawas' $16,000 deposit in November 1996 and a $100 deposit in January 1997, the account had no other deposits during those three years. The balance ranged between $22.41 in September 1996 and ($59.44) in January 1997, excluding the Randhawas' deposit.[15] By

5 May 1999, the balance was zero. Such a business account is clearly suspect. Respondent self-

6 righteously claimed that he had to close the bank accounts because the clients were out of control

7 when in fact, there were no other substantial transactions except for the $25,000 in November 1996.

8          Moreover, there is no evidence that the alleged letters from AFL were mailed from

9 India. The December 21, 1996, letter[16] from the Director of Finance of AFL, informing the

10 Randhawas that AFL received their investment of five Lakhs and 52,000 Rupees and that stocks and

11 shares would be issued in January 1997, was personally delivered to the Randhawas by Respondent.

12 Similarly, the September 19, 1997, letter,[17] informing the Randhawas that AFL was in the process

13 of issuing the class A preferred stock certificate worth 20 lakhs shares to the Randhawas, was also

14 personally delivered to the Randhawas by Respondent.

15          In February 2003, the State Bar investigator Alice Verstegen wrote letters to the

16 alleged officers of AFL in India – Financial Controller, the Secretary-Corporate Affairs and the Vice-

17 President of Human Resources – regarding the Randhawas' investment in AFL. She never received

18 replies from these individuals.[18] Instead, the State Bar received a letter from Chiter S. Khanna,

19 Respondent's brother and purportedly the chairman of AFL, dated September 12, 2003.[19] The letter

20 coincidentally corroborates Respondent's side of the story. But the suspicious letter was delivered

21 to the State Bar in an envelope without any postage markings and Verstegen was never able to track

22 down its origin of mailing. Respondent blamed the missing original envelope from India on the

23

24 [15]State Bar exhibit 6.

25 [16]State Bar exhibit 28, p. 3.

26 [17]State Bar exhibit 28, p. 6.

27 [18]State Bar exhibit 21.

28 [19]State Bar exhibit 27.

-10-

ANNEXTURE No 13(10)

COPY TO COPY
Examiner

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden
Old Middle School Complex
Ram Pura, Delhi-110035.

No. ....... दिनांक 2 1 FEB 2007

(Executive)
Title ............. O A/C (Executive)
Mag ......... / of Marriage /
Mag. ......... sworced

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी.पा.टी.)
Section Officer (C.)
सीपीवी प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

State Bar's destruction of evidence. Absent any evidence of tampering, the Court believes that Respondent somehow had the letter delivered to the State Bar and not necessarily from India.

Chiter Khanna's letter contradicted the other alleged letters from AFL. He wrote that AFL would immediately refund the money to the Randhawas as unsolicited funds for investment. In fact, he stated that "we have made every possible effort from 1997 to 1999 to refund the funds to Mr. Randhawa." While he indicated that the investment was prohibited and that its financial department made an error regarding the issuance of the stock, there is no evidence of the alleged October 18, 1997 follow-up letter correcting its error. He further claimed that AFL ceased operations in 1999 and was in the process of liquidation, some five years later. In sum, the letter conveniently supported Respondent's arguments without any credible evidence.

Finally, Respondent is supposedly the legal counsel for AFL, yet he could not produce any certified copies of AFL's articles of incorporation. In fact, he could not produce any certified copies of documents proving AFL's legal existence. Respondent may have had originally intended AFL to be a legitimate business. Yet, it never got off the ground. AFL became a sham corporation, unbeknownst to the Randhawas. But Respondent knew. Nevertheless, Respondent maintains that the current status of AFL is good in 2004 even though AFL's chairman stated that they were in the process of liquidation in 2003.

C.    **Conclusions of Law**

1.    *Count One: Avoiding Interests Adverse to a Client (Rules Prof. Conduct, Rule 3-300)*[20]

Rule 3-300 provides that an attorney must not enter into a business transaction with a client or knowingly acquire an interest adverse to a client unless the transaction or acquisition is fair and reasonable to the client, is fully disclosed to the client, the client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to do so, and the client thereafter consents in writing to the transaction or acquisition.

The purpose of this rule is to "recognize the very high level of trust a client reposes in his

---

[20] References to rules are to the current Rules of Professional Conduct

-11-

ANNEXTURE No. 13 (11)



No. ............ दिनांक 21 FEB 2007
Date

.............(Executive)
............ (............ )

(............ SHEKHAR YADAV)
.................. (............ )
Section Officer (............ )
CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi