PADAM KUMAR KHANNA
2600 Tenth Street
Berkeley, CA. 94710

Tel: 1-510-524-6181
Fax: 1-510-524-6765

EMail: pkhanna@pacbell.net
*Pro Se*



UNITED STATES DISTRCIT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PADAM KUMAR KHANNA,<br><br>          Plaintiff,<br><br>     vs.<br><br>JAGJIT SINGH RANDHAWA and<br>BALJIT RANDHAWA, DOES I<br>THORUGH X,<br><br>          Defendants. | Case No: C-07-5136 CW<br><br><br><br><br>**REQUEST FOR JURY TRIAL** |

**FIRST AMENDED COMPLAINT FOR MONEY DAMAGES FOR VIOLATION OF CIVIL RIGHTS, FIFTH, AND FOUTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION,42 U.S.C. § 1983, CONSPIRACY, 42 U.S.C. § 1985(2)(3), EQUAL PROTECTION UNDER 42 U.S.C. §1981 (a) (c), PERJURY, 18 U.S.C. § 1621 AND CIVIL CONSPIRACY.**



Plaintiff complains of Defendants named above and alleges herein as follows:

## INTRODUCTION

1.      Plaintiff, very sincerely apologizes to Hon'ble Judge Wilken for seeking recusal of Magistrate Judge Chen in his Objections to Report and Recommendations re plaintiff's Motion for Default Judgment. It was simply an act of frustration as to how could Judge Chen deny the Default Judgment when defendants have so blatantly, deliberately and intentionally defied all three Court orders and requests to make an appearance or at least file some form of answer.

2.      Plaintiff in his First Amended Complaint states that he has both property and liberty rights in his license to practice law in California, which he dutifully earned in 1979. During the period of November 21, 2001 and July 25, 2003, defendants combined, conspired, confederated together, collaborated and agreed with the State Bar investigator, Verstegen (Verstegen), State Bar Deputy Trial Counsel, Tammy Andersen -Murray (Murray) and others, known and unknown, to deprive plaintiff his license by committing wrongful, illegal and tortious overt acts of Fraud and Deceit, Misrepresentation, violation of Fourteenth Amendment, Due Process (both substantive and procedural), Equal Protection and interference with a fair and lawful trial and Perjury. This conspiracy between the

State Bar officers and defendants was brought into being during State Bar's investigation of the charges against plaintiff.

3.    After conspiring to such illegal and wrongful acts, defendants agreed with Ms. Murray and Ms. Verstegen, during the investigative stage, to file Notice of Disciplinary Charges (akin to probable cause) against plaintiff.  This conspiracy and agreement was achieved by defendants in full collaboration with State Bar officials under the color of California State laws and Rules of Procedure and Practice of the State Bar of California.

## BACKGROUND

4.    After three days of trial at the State Bar Court, judge McElroy found Appellant guilty of using $31,000 of his client's money for personal purposes whereas the money was meant for investment in an Indian company, Amerindia Foods Limited (AFL).  Appellant vigorously denied this accusation because AFL in India had in fact received the funds and had sent the letter duly acknowledging the receipt to the State Bar investigator.  Investigator testified at the trial that the said letter was NOT received by the State Bar mail room but was found by the

investigator at her office desk.[1] It was the last day of the trial when the investigator testified about this unknown new development.[2]

5.    The judge implied that it was Appellant who got undetected into the offices of the investigator at the State Bar offices in Los Angeles, found the investigator's desk, placed the said letter and disappeared.  The judge wrote in her decision that "Absent any evidence of tampering, the Court believes that Respondent somehow had the letter delivered to the State Bar and not necessarily from India." Decision of State Bar Court judge, McElroy, October 20, 2004, page 11, lines 1-2.

6.    Despite relentless efforts by Appellant to obtain duly certified, attested and authenticated copies of the transaction which occurred ten years ago in India and proof that the letter was indeed sent by AFL, Appellant was unable to provide the proof as required in time.  There were enormous difficulties.  First

---

[1] The DHL Container envelope, Red and Yellow cover containing the envelope without stamps was apparently destroyed by the investigator and the deputy trial counsel.  It must be pointed out that when the investigator testified on the last day that there was no DHL cover letter, Appellant immediately contacted AFL in India and luckily was able to get an Airway Bill during the next thirty days, a copy of which he enclosed in his Closing Argument and sent it to the State Bar Court judge McElroy.  The judge refused to admit the evidence.  In Footnote 30 at page 20 of the decision, she wrote "Respondent's exhibit FFF attached to his Closing Arguments is not admitted into evidence as it was introduced after the trial."

[2] Appellant has been unable to find a SINGLE case in the American jurisprudence where an administrative  judge (in both published and unpublished opinions) has taken away the liberty and property of an accused person with such blatant and unproven speculation.

AFL was on shaky grounds financially. Second, as the deposit of moneys was made about nine years ago and the concerned management officers had left, it was difficult to get their affidavits and records. Third, the transaction and the records were all in India. Fourth, in order to satisfy the requirement of admissibility of foreign documents in the United States courts, particularly from a country which is not a member of the Hague Convention, AFL had to assemble certifiable documents which were then to be vetted by an officer of the Ministry of External Affairs and then taken to the United States Embassy for notarization. This process took AFL in India an enormously long time despite all out efforts by Appellant to urge AFL to get the records. Appellant had exercised due diligence to obtain all these records. These were very old records. Most of the officers who had contacts with this case, who had talked to defendant Jagjit Singh Randhawa (Jagjit), and had issued a valid stock certificate to Jagjit and had received money and made deposits with the bank were gone. It was very hard to track them. It would have been almost impossible to obtain these old records had Appellant's brother not been the managing director and chairman of the company. This Court MUST look at the NEW EVIDENCE supplied in the form of Attestations and Exhibits attached to the complaint filed in the Indian criminal court.

7.    On October 20, 2004, judge McElroy issued a decision suspending Appellant's license pursuant to California Business and Professions Code section

6007(c)(4) and rule 220(c) of the Rules of Procedure of the State Bar, by placing him on an involuntary inactive enrollment effective within three days of the service of the order. This involuntary inactive enrollment actually suspended Appellant from practicing law without the Supreme Court order. In the decision, she recommended disbarment.

8.      As the entire procedure before the State Bar Court had already taken almost three years since the filing of the complaint by the client, Appellant exercised his option of bypassing the review by the Review Department of the State Bar and proceeded directly to the Supreme Court of California. Appellant filed his Petition for Writ of Review with the Supreme Court on April 10, 2006. On June 21, 2006, the Supreme Court summarily denied the review and issued an order for disbarment.

9.      After a final order of disbarment, Appellant did not and does not have any recourse to make any Rehearing Motion or to litigate the issues of violations of Constitutional Rights, all Federal questions, to the Supreme Court of California. There is no such remedy available in the attorney discipline process in California. The only avenue open is a Writ of Certiorari to the U.S. Supreme Court and even that remedy is not DIRECTLY available when there is a later discovery of tampering with witnesses and fabricating evidence.

10.    It was absolutely impossible to obtain the admissible evidence from India in time for the writ to be filed in the Supreme Court. Furthermore, Appellant was totally unaware as to what evidence AFL would be able to find as AFL was struggling financially and the transaction had taken place eight years ago and most of the management staff involved at that time had left. AFL in India was very upset for being ridiculed, abused, put to shame and disparaged after it received a copy of the Decision in the Matter of Padam Khanna rendered by judge McElroy of the State Bar Court. After the decision became a final judgment by the order of the Supreme Court of California, AFL lawyers in India diligently started to assemble all the necessary exculpatory documents in order. The summary denial of the review by the Supreme Court was a very heavy blow to AFL. By denial of the review, the Supreme Court of California implied that AFL was indeed a sham corporation; that AFL was a non-existing entity and that its officers in India were liars. As is quite apparent from the records of the trial, NO EVIDENCE, NO DOCUMENTS, NO PROOF WHATSOEVER WAS EVER PRESENTED BY THE DEPUTY TRIAL COUNSEL OR OFFERED BY THE PRESIDING JUDGE McELROY TO REFUTE THE EXISTENCE OF AFL IN INDIA. The judge just took a blind shot and declared AFL as a sham and non-existent corporation. The judge relied solely on the testimony of Jagjit.

11.    In November of 2006, AFL was able to gather the most important documents, notarized affidavits, bank deposit receipt of December 1996 showing receipt of money in the name of Jagjit Singh Randhawa[3] all corporate legitimacy documents acceptable under the Companies Act and the Corporation Code of India and filed a Criminal Complaint under the Indian Penal Code against Jagjit Singh Randhawa for falsifying records and false perjured statements against AFL. This suit is still pending. In the meantime AFL has also instigated a civil suit for damages in India against the client.

12.    This NEW EVIDENCE totally exonerates Appellant. There was simply no way, given the circumstances, that Appellant would have been able to procure this new evidence during the trial. It was discovered long after the trial and it was no fault of Appellant. Appellant is certain that the Supreme Court would have exonerated Appellant had this new evidence been available to the California Supreme Court.

13.    Immediately after AFL filed its Criminal Complaint in the Indian Courts, Appellant obtained the certified copies of the complaint and the entire exhibits attached therein. These documents fully satisfy the admissibility requirements of foreign documents in the U.S. Courts. See, *Societe National*

---

[3] These duly attested, authenticated exhibits have been attached to the complaint with the District Court.

*Industrielle Aerospatiale v. U.S. District Court,* 107 S. Ct. 2542 & N. 28 (1987).

*Grand Jury Proceedings: The Bank of Nova Scotia II, In re ,* 740 F.2d 817 (11th

Cir. 1984), *cert. den.,* 469 U.S. 1106 (1985); 105 S. Ct. 778 (1985); *United States*

*v. Bank of Nova Scotia I,* 691 F.2d 1384 (11th Cir. 1982), cert. denied, 103 S. Ct.

3086 (1983); *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468 (9th

Cir. 1992)*; In re Perrier Bottled Water Litigation,* 138 F.R.D. 348 (D. Conn.

1991); *Reinsurance Co. v. Administratia Asigurarilor de Stat,* 902 F.2d 1275 (7th

Cir. 1990*); In Re Grand Jury Proceedings Yanagihara,* 709 F. Supp. 192 (C.D. Cal

1989); *United States v. Rubin,* 836 F.2d 1096 (8th Cir. 1988); *Hudson v. Hermann*

*Pfanter GmbH & Co.,* 117 F.R.D. 33 (N.D.N.Y. 1987); *United States v. Davis,* 767

F.2d 1025 (2d Cir. 1985)*; Graco, Inc. v. Kremlin, Inc., 101 F.R.D. 503 (N.D. Ill.*

*1984); Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 42

(D.D.C. 1984); *United States v. Toyota Motor v. Pan American World Airways,*

103 F.R.D. 42 (D.D.C. 1984); *United States v. Toyota Motor Corp.,* 569 F. Supp.

1158 (C.D. Cal. 1983); *Hong Kong and Singapore Bank Corp. v. Commissioner,*

85 T.C. No. 41 (Nov. 5, 1985); *United States v. First National Bank of Chicago,*

699 F.2d 341 (7th Cir. 1983); *United States v. Vetco,* 691 F.2d 1281 (9th Cir.) *cert.*

*denied,* 454 U.S. 1098 (1981); *SEC v. Banca della Svizzera Italiana,* 92 F.R.D. 111

(S.D.N.Y. 1981*); In re Uranium Antitrust Litigation,* 480 F. Supp. 1138 (N.D. Ill.

1979); *In re Westinghouse Elec. Corp. Uranium,* 563 F.2d 992 (10th Cir. 1977);

*Federal Maritime Commission v. DeSmedt, 366 F. 2d 464 (2d Cir.), cert. denied,*
385 U.S. 974 (1966); *Societe Internationale v. Rogers, 357 U.S. 197 (1958).*

14.     These documents prove that the defendants Jagjit and Baljit
Randhawa (Baljit), investigator Verstegen and deputy trial counsel, Murray,
conspired during the investigative stages of the disciplinary charges against
Appellant to destroy exculpatory evidence and suborn complainant witnesses to
commit perjury. Ms. Murray and Ms. Verstegen conspired to suppress State Bar
offices mail room records about the letter from India and the fax transmission also
from India during the investigative stages and prior to filing the Notice of
Disciplinary Charges (akin to establishing probable cause in attorney disciplinary
matters.

15.     An authenticated copy of the criminal complaint filed by Amerindia
Foods Limited (AFL) in an Indian Criminal Court against Jagjit Singh Randhawa
and his wife Baljit Randhawa and duly attested by the Consul of the United States
Embassy in the Republic of India on February 8, 2007 attached herewith reveals
the following:

- That AFL is indeed a legitimate Indian Corporation duly existing and
  registered in the State of Andhra Pradesh, India and contrary to judge
  McElroy's finding, AFL is not a sham and non-existing company.

- That Jagjit Randhawa violated Indian Penal Code, Section 191 when he made untrue and fabricating statements under oath in a judicial setting that he (Jagjit) did not have any contacts with AFL as AFL presented substantial evidence to the Court about his contacts both documentary and direct.

- That Jagjit did receive corresspondence from AFL wherein he was in touch with AFL and its officers and according to AFL's records submitted with the said complaint reveal that he was sent at least five letters and an envelope containing the stock certificate.

- That Jagjit's remittance of funds for investment, wired through Mr. Padam Khanna, his attorney in California, was duly acknowledged by AFL and his testimony that Mr. Padam Khanna misappropriated those funds for his own personal use was incorrect and fraudulent. Appropriate bank records with the dates of remittances and acknowledment in the corporate books of AFL were produced and attached with the complaint by AFL.

- That  Jagjit committed an act of perjury when he stated to the Court during the trial of Mr. Padam Khanna, his attorney, that he did NOT receive a Stock Certificate acknowleding his investment.  AFL's

records showed that on November 11, 2003 a Stock Certificate of face value Rs. 10/- each and bearing 50,000 shares was duly issued against his payment of Rs. 5,00,000 paid by Draft Order No. 001108 dated December 30, 1996 issued by Union bank of India.

- That Jagjit committed various acts of perjury when he testified under oath that he did not receive the three letters admitted in evidence by prosecutor Murray in Padam Khanna's case before the State Bar. The three letters in question were indeed written by the officers of AFL and duly addressed to Jagjit at his given address.

16.    Plaintiff also encloses a recently issued letter, dated February 15, 2007 by one Mr. R. S. Mahla, Advocate Delhi High Court, India, who represents AFL in India. The letter is addressed to Mr. Jagjit Singh Randhawa and Mrs. Baljit Randhawa. It serves as a Legal Notice about a civil suit to be filed. Indian laws require that a Legal Notice apprising the defendants of the allegations of the lawsuit must first be sent to defendant prior to filing a civil lawsuit for damages. This letter again proves that AFL, a legitimate Indian corporation, did in fact receive the funds for investment from plaintiff which were duly recorded in the name of Jagjit Singh and a stock certificate was indeed issued by AFL and delivered to Jagjit. Plaintiff requests permission from this Court to file a certfied,

attested and authenticated copy of the Civil Complaint, being filed in India, as and when available.

## JURISDICTION

17.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 (Federal Question) and 42 U.S.C. § 1983.

## VENUE

18.     Venue is proper in the Northern District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a). Venue is also proper and appropriate as both the defendants reside in this district, and a substantial amount of acts and omissions giving rise to this lawsuit occurred in this district.

## PARTIES

19.     Plaintiff is a resident of Berkeley, California and was engaged in the practice of law from 1979 through October 24, 2004 with offices at 2600 Tenth Street, Berkeley, California. He was a member of the State Bar of California and except this single incident did not have any disciplinary charges against him.

20.     Defendant Mr. Jagjit Singh Randhawa (Jagjit) is the resident of Hercules, California who was represented by plaintiff in two drunk driving charges.

23.     Defendant Mrs. Baljit Randhawa (Baljit) is the wife of Jagjit and a resident of Hercules, California who was represented by plaintiff in one criminal charge of theft and two civil matters.

24.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does I through X and therefore sues these defendants by such fictitious names.  Plaintiff will amend his complaint to allege their true names and capacities when ascertained.

## FIRST CAUSE OF ACTION

## (Violation of Fifth Amendment – A Fair Trial)

### *ERADICATION OF DEFENDANT (JAGJIT'S) TESTIMONY:*

25.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

26.    Plaintiff alleges that after the three days trial when plaintiff received the recorded CDs of the proceedings of the trial, plaintiff discovered a gap of over one hour and forty minutes in the cross-examination of the main witness, Jagjit, where plaintiff believes that there were definite instances of Jagjit making false, misleading and perjured statements.

27.    Upon the discovery of this eradication of Jagjit's testimony, plaintiff filed for a New Trial with the State Bar. The Review Department of the State Bar rejected plaintiff's motion, overruled an important California Appellate Case, *Weinstein V. e. f. Hutton & Co. (1990) 220 Cal.App. 3d 364*, and ordered a limited two hours of Jagjit's testimony to be retaken. A very limited trial was conducted for a few hours before judge McElroy a year later of the original trial. At this trial, defendant Jagit just pleaded two sentences over and over again: "I don't remember. It's been a long time." The CD of this limited trial proves that about over 70% percent of the questions propounded contain the answer, "I don't remember. It's been a long time."

28.    It was vociferously obvious through out the trial that Jagjit was lying
and not telling the truth and yet the trial judge, McElroy, declared his testimony to
be credible.  The trial record is full of inconsistent and untrue statements of Jagjit.

## SECOND CAUSE OF ACTION
### (Violation of Fourteenth Amendment to the United State Constitution – Due Process Rights of Property and Liberty)

29.    Plaintiff incorporates by reference the foregoing allegations as though
fully set forth herein.

30.    Plaintiff asserts that he has both property and liberty rights in his
license to practice law in California, which he dutifully earned in 1979.
Defendants, in collaboration with the State Bar prosecutors and investigators,
combined in a conspiratorial and illegal manners as stated in detail *infra* to deprive
plaintiff his right to practice law thus violating his due process rights.

## THIRD CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1985(2) – Conspiracy to interfere with civil rights)

31.    Plaintiff incorporates by reference the foregoing allegations as though
fully set forth herein.

32.    Defendants deliberately, wantonly and knowingly, conspired with
Murray, Verstegen and other to destroy, spoliate and hide the exculpatory evidence
from the trial judge in order to injure, harm and convict plaintiff of an offense
which plaintiff did not commit.  By destroying the evidence, defendants committed
illegal acts and partnered with the State Bar prosecutors to obstruct justice.

33.    A letter from the Chairman and Financial Director of AFL was sent to Verstegen at her Los Angeles State Bar Office address on or about September 17, 2003.  This letter came in an envelope that was enclosed in a Red and Yellow DHL Cover envelope bearing stamps and mailing information. (It is customary not only in international mails but in domestic Priority or Fedex mails to just enclose an envelope without stamps in the cover container which actual bears the stamps and mailing information).  As it was an international DHL delivery, the letter also included an Airway Bill that was to be signed by an employee of the State Bar at Verstegen's offices. In order to tell the judge during trial that the letter did NOT in fact arrived from India, both Verstegen and Murray conspired to destroy the DHL Red and Yellow Cover Letter bearing the stamps and address of Ms. Verstegen. At the trial Murray made Verstegen testify that the letter did NOT arrive from India as it did not have any stamps on it and implied that it was plaintiff who placed the envelope.  As defendants, Jagjit and Baljit testified at the trial that AFL did not exist, the trial judge found their testimony, which did not have any proof, to be credible and decided that it was plaintiff who somehow or the other placed the said letter at the desk of verstegen.

## FOURTH CAUSE OF ACTION
### (Violation of Fourteenth Amendment Equal Protection Clause)

34.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

35.    Plaintiff alleges that the State Bar Court proceedings violated plaintiff's right to equal protection of the laws as guaranteed by the Constitution in that plaintiff was blatantly discriminated because of his race and national origin. Had plaintiff belonged to a white race and his name was not a foreign sounding name, he would certainly have been treated differently.  He would have been given

the assistance of counsel which he demanded during the trial as he suffered a severe aterial fibrillation of the heart during the trial  He would have been treated differently when he requested the time to call his character witnesses.  He would have been treated differently when he demanded a new trial because of an hour and forty minutes erasure or the malfunction of the trial transcript had he been a white American. In the entire history of State Bar of California there has not been a single case where an attorney has been disbarred because of this single act, even for the sake of arguments, if it was true.  No white male attorney in the history of State Bar Disciplinary Proceedings has been given such harsh and cruel punishment which has been handed out to plaintiff.

36.    This blatant discrimination was an absolute direct result of the testimonies of Jagjit and Baljit which have been given an absolute creditworthiness.  Plaintiff respectfully pleads to this honorable court that he should be allowed to present these facts to a jury.

## FIFTH CAUSE OF ACTION

## (Violation of 18 U.S.C. § 1621 - Perjury)

37.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

38.    Credibility of Plaintiff is the fundamental issue of this entire case. Both Baljit and Jagjit Randhawa have attacked plaintiff's credibility.  In order to discredit Plaintiff, both Baljit and Jagjit have resorted to lies and false statements where they have clearly committed the acts of perjury.  Plaintiff asserts, based on the testimonies given by both Baljit and Jagjit under the penalty of perjury and under the laws of the State of California that both DTC and the judge were FULLY aware of the perjured statements and no action was taken despite various requests made to the judge.  Plaintiff, herein, respectfully submits the willful, intentional and deliberate acts of perjury committed by Baljit and Jagjit for evaluation by the

Court to decide whether perjury committed in non-judicial, quasi-criminal, administrative settings, particularly during depositions can be considered a felony under the Penal Code section 118[4] in California.

### *Testimony of Baljit*:

Q. Did you get a citation on February 22nd, 1996 from a police officer?

A. Yes.

Q. Do you remember what was that case about?

A. *I was driving the car* (Emphasis added). I had no license, but I had a license from India, so I don't speak much English on that time, so I couldn't explain to the officer that I had a license from India. I don't have a license from here.

Q. So this is your testimony that you were driving the car at that time this accident happened.

A. Yes.

(T.T. III-60: 24-25, 61:1-9)

39.    In her affidavit submitted under oath and under the penalty of perjury for the Temporary Restraining Order (TRO) in her Order to Show Cause in the Contra Costa Court, Case Number FL019677 dated <u>April 10, 1996</u>, (Emphasis

---

[4]  118. (a) Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury.

added), Exhibit OO, she gave the testimony that she was NOT driving the car as she did not know how to drive the car.  (T.T. II-73: 8-25, 9:1-2)

> " 8.    On February 22, 1996, Respondent drove me to his brother's home to pick-up my social security card.  When I got into the car, I noticed that Respondent was drunk. Respondent was driving very fast and was weaving between cars on the freeway.  I was very afraid and told Respondent to slow down and drive carefully. Respondent then said, "I am going to kill you." Respondent hit 2-3 cars and accelerated toward a commercial truck.  Respondent rammed my side of the car into the commercial truck.  Respondent then pulled the car to the side of the freeway and got out of the car to talk to the truck driver.  Respondent then drove away and let me on the side of the road.

> 9.    A passerby let me use his cellular phone and I called my brother-in-law and told him what happened. The police arrived and questioned me and issued a citation.  I do not know how to drive a car and have never driven a car. (See Exhibit A)"

> > Exhibit OO, Marriage of Randhawa
> >
> > Attachment to Application and
> >
> > Declaration for Order
> >
> > Page 3:1-17 Case No. FL019677,
> >
> > Filed April 10, 1996 in the San
> >
> > Francisco City and County and

represented by an Attorney by the
name of Judy B. Louie of the
Nihonmachi Legal Outreach.

40.    Baljit was trying to save her husband, Jagjit from the perjured
statement made earlier that the said accident was not HIS. Jagjit's credibility
would have been devastated if it was proven that he lied under oath. To protect
him, she lied. The judge sided with Jagjit despite this admission.

41.    Moreover, DTC was absolutely aware of this fact, that Baljit was
NOT the driver of the car on February 22, 1996. DTC had the Contra Costa Court
papers of Baljit's affidavit in the Order to Show Cause (Exhibit OO) in her
possession. DTC even confirmed it during the trial as to when Baljit FIRST met
with Plaintiff and when and on what kind of case Plaintiff represented Baljit. (T.T.
II73: 6-25)

### *Testimony of Jagjit:*

42.    There are over twenty-three instances of false statements made by
Jagjit during the depositions and the trial. If permitted and ordered by this Court,
Plaintiff would be honored to chronologically present them.

43.    Jagjit committed perjury when he testified under oath that he was not
the driver of the car of the vehicle code violation, which occurred on February 22,
1996. It appears that because the citation was in the name of his wife, DTC must
have told him to lie and state that it was not he who was driving but his wife.
Apparently he forgot to tell DTC that this lie would not fly because, one, his newly
arrived wife had never driven a car in her life and two, people in India drive on the
left side of the road and the steering wheel of the cars is on the right side.
Furthermore, over one billion people of India would be in awe if they were told

that a young lady from India who had never driven a car in her life took her first drive on the freeways of California. (Here is an example of disadvantage the California attorneys have over the rest of Americans – the attorney cannot have a jury trial.)

### SIXTH CAUSE OF ACTION
### CIVIL CONSPIRACY

44.     Defendants Jagjit and Baljit and others known and unknown, including the State Bar Enforcement Division and Office of Trial Counsel of the State Bar, unlawfully, intentionally and willfully did combine, conspire, confederate and agree together to commit fraud and deceit, misrepresentation, violate plaintiff's due process and equal protection rights and other civil rights.

45.     **Object of the conspiracy**: The object of the conspiracy was fraudulent.

46.     **A.  Fraud and Deceit:**

47.     Plaintiff was served with a Notice of Disciplinary Charges (NDC) by the Office of the Chief Trial Counsel of the State Bar on July 25, 2003. Wherein the State Bar charged plaintiff for misappropriating $25,000 of Jagjit and Baljit's money.

48.     At the trial, however, Jagjit testified falsely that he gave an additional $6,000 to plaintiff for investment in AFL.  He presented no evidence, no bank record, no receipt, no witness, no documents to support this charge.  He simply stated that he gave $6,000 in cash.

49.     When the Office of the Chief Trial Counsel of the State Bar filed a Notice of Disciplinary Charges (NDC) on about July 25, 2003, the  NDC

mentioned that the clients gave $25,000 ONLY to plaintiff for investment purposes. There was no mention of this extra $6,000 given to plaintiff. No amendment was ever filed by the State Bar to amend its charge of $25,000 and no notice, whatsoever, was given to plaintiff. As this new charge was levied by Jagjit during the trial only, plaintiff could not adequately prepare a defense. Jagjit knew that this statement was fraudulent and deceitful.

50.    Furthermore, defendant Jagjit intentionally and willfully committed the following fraud and deceit: These wrongful and illegal acts relate to the following material evidence introduced during the trial:

51.    **Letter One**: This was written by the Secretary Corporate Affairs of AFL which stated that the Randhawa's deposited Ten Lakhs of Indian Rupees with the company for investment.

52.    As this letter would have established that the money was indeed received by AFL and not misappropriated by plaintiff, Deputy Trial Counsel, Tammy Albertsen-Murray, after obtaining approval from defendants that the defendants would lie and back Murray in her presentation to the State Bar judge, asserted that the letter was NOT written by AFL or its fake officers as AFL never existed. The only proof offered to substantiate her theory was the testimony of Jagjit who stated that he never received that letter in the mail but instead was handed over by plaintiff personally.

53.    The new evidence clearly establishes that both defendants and Murray et al conspired to do this illegal and wrongful tortuous act, willfully and intentionally. The purported letter was indeed written by the Director of Finance of AFL and that AFL was not a sham or non-existent company in India but a legitimate and legally incorporated company.

54.    **Letter Two**: This letter was written by the Director of Finance of AFL which stated that an amount of Indian Rupees Five Lakhs and Fifty Two Thousand was duly received and acknowledged by the company.

55.    Murray, in her arguments and presentation to the State Bar judge asserted that this letter also was not written by AFL or its Director of Finance. She declared that this letter was fake and that there was no such Director of Finance and that the Director of Finance was fake and that AFL was non-existent. The only proof offered by Murray was the testimony of Jagjit who collaborated with Murray and stated that he never received this letter from AFL.

55.    The new evidence clearly establishes that both defendants and Murray et al conspired to do this illegal and wrongful tortuous act, willfully and intentionally. The purported letter was indeed written by the Director of Finance of AFL and that AFL was not a sham or non-existent company in India but a legitimate and legally incorporated company.

56.    **Letter Three:** This was written by an officer of AFL and was addressed to Jagjit's brother-in- law who bears the same name. At the trial Jagjit testified that his brother-in-law did receive the letter but was actually written by plaintiff and not by the officer of AFL. No other proof was offered and the judge relied solely on the testimony of Jagjit and considered the testimony credible.

57.    The new evidence, however, clearly establishes that both defendants and Murray et al conspired to do this illegal and wrongful tortuous act, willfully and intentionally. The purported letter was indeed written by the Director of Finance of AFL and that AFL was not a sham or non-existent company in India but a legitimate and legally incorporated company.

58. **B. Intentional Misrepresentation:**

59.    On or about November , 2001, Defendants filed a complaint with the State Bar of California wherein Jagjit falsely and fraudulently represented to State Bar Office of the Chief Trial Counsel as follows:

  a.   **"January to February 1996** – Mr. Khanna (Plaintiff) defended Jagjit Randhawa against DUI charges, case 23152(A). There was no written retainer agreement that we recall and Mr. Khanna has not given us the files in spite of repeated requests." <u>Exhibit 9, page 3, para 1</u>

.60.    At the trial, however, Jagjit stated that this statement though signed under the penalty of perjury was false. (T.T. I-176: 22-24, I-177: 1-3) and that it was not he who was driving but it was his wife. (T.T. I-177: 16-25 also T.T. I-181: 21-24).  The Deputy Trial Counsel (DTC) shifted the blame to Mr. Byrnes, their new attorney, for filing a false statement (T.T. I-174: 5-11).  There was no doubt, whatsoever, that Jagjit knew his statement was false and was introduced to defraud and deceive plaintiff.

  b.  **"March to July 1996** – Mr. Khanna assisted Baljit Randhawa in getting a Temporary Restraining Order against Jagjit Randhawa. Matters resolved parties reconciled. There was no written retainer

agreement that we recall and Mr. Khanna has not given us the files in spite of repeated requests." <u>Exhibit 9, page 3, para 3.</u>

63.    During the trial both Baljit and Jagjit testified that this statement was also false. (T.T. I). Baljit forcefully stated that Plaintiff was NOT her attorney in this matter and that she met Plaintiff after this "husband and wife fight". (T.T.)

64.    Following are other specific intentional misrepresentation of Jagjit: Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury.

- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury.
- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury.
- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury.
- Jagjit stated in his complaint to the State Bar that it was he who was driving the car on February? 1996 when he met with the accident.  At the trial he stated that it was not him but his

wife who incidentally had never driven a car in her entire life, as she took off on California Freeways in an unknown car after her arrival in the country for the first time.

- Jagjit stated in his complaint under the penalty of perjury that he and his wife paid only $2,100 as fee for the five cases in cash and <u>checks</u>). However during trial, he changed his story and said that he never issued a check because he could not produce any cancelled checks but paid ALL fees in cash. Of course, he never had any receipt because he claimed plaintiff did not give him any receipts. (T.T.)

- Though the trial judge has broad discretion in not treating combined THREE drunk driving charges, committed within seven years as here, as felony, plaintiff alleges that trial judge, McElroy, abused her discretion in declaring the testimony of Jagjit as credible. Plaintiff further alleges that the entire testimony of jagjit, taken as whole, and coupled with three drunk driving was not credible.

- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury.

- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury.

- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar and signed under the penalty of perjury.

- Jagjit admitted in open court under cross-examination that he made a false statement in his complaint to the State Bar under the penalty of perjury.

- Jagjit stated in his complaint under the penalty of perjury that he and his wife paid only $2,100 as fee for the five cases in cash and <u>checks</u>. However during trial, he changed his story and said that he never issued a check because he could not produce any cancelled checks but paid ALL fees in cash. Of course, he never had any receipt because he claimed plaintiff did not give him any receipts. (T.T.) Although the trial judge has broad discretion in not treating combined THREE drunk driving charges, committed within seven years as here, as felony, plaintiff alleges that trial judge, McElroy, abused her discretion in declaring the testimony of Jagjit as credible. Plaintiff further alleges that the entire testimony of Jagjit, taken as whole, and coupled with three drunk driving was not credible.

## SEVENTH CAUSE OF ACTION
### Violation of Equal Rights under the law
### 42 U.S.C. § 1981 (a) and (c)

65.    Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

66.    Plaintiff is a non-white citizen of the United States and belongs to the minority category of East Indian heritage.  Plaintiff believes and on that belief alleges herein that he was blatantly discriminated by the predominantly white majority of the State Bar of California.  This discrimination and the resultant injury caused, were brought about by the conspiracy hatched between defendants and Ms. Tammy Albertsen-Murray, the Deputy Trial Counsel and State Bar investigator, Verstegen  of the State Bar who are both white citizens.  The elements of this conspiracy have all been well-defined, outlined and described in the preceding paragraphs of this complaint.  Furthermore, plaintiff believes and therefore alleges that white lawyers in the State Bar of California are given preferential treatments and punishments for similar charges (statistic prove this fact which will be supplied to thios court and the jury) and plaintiff believes that defendants were the direct contributors to this discrimination and impairment by the State Bar. Plaintiff can prove this allegation before any jury.

## DEMAND FOR A JURY TRIAL

67.    Plaintiff respectfully demands a jury trial for all issues.

## PRAYER FOR COMPENSATORY DAMAGES

68.     Plaintiff prays for compensatory damages approximately in the amount of five hundred thousand ($500,000), a loss of making a living for the past six years, which shall be proven at the time of trial.

## PRAYER FOR PUNITIVE DAMAGES

69.     Plaintiff prays for punitive damages against all defendants for deliberately conspiring to frame plaintiff for the single act of using the investment money for his personal use – which is now clear that he did not. Plaintiff alleges that Jagjit and Baljit in agreement with the State Bar prosecutor along with Ms. Verstegen, the investigator, deliberately, wantonly, knowingly and voluntarily conspired to fabricate, destroy and spoliate the crucial exonerating and material evidence. This case, at the present moment, with newly discovered evidence proves beyond any shadow of doubt that plaintiff is totally innocent. Plaintiff requests a reasonable award as punitive damages for intentional and wanton desire to cause both mental, physical and financial injury to plaintiff.

70.     Plaintiff is seventy one years old. He is an immigrant from India who has worked extremely hard in this country. He has raised a wonderful family and has a fabulous reputation in the community as a kind and caring person. He has been practicing International Project Finance for the past twenty-five years and has advised reputable law firms like Gibson, Dunn & Crutcher; White & Case; Akin Gump & Strauss; Gray Cary and

major India companies. Because this husband and wife team was from India and from Punjab, plaintiff undertook representation when no other attorney was there to help them. They could not pay legal fees and spoke Punjabi which plaintiff knew. Husband had three DUIs and used to beat up his new arrived wife from India. Wife had her own problems of shoplifting and TROs. Plaintiff provided excellent legal services and was paid only $2,100 for five different cases and over $15,000 is still due. Suddenly, around September 1996, these clients came into some money and deposited $16,000 in one of plaintiff's account for onward transmission into an Indian company which plaintiff was representing. This was done WITHOUT plaintiff's knowledge. Plaintiff duly sent that money to AFL, which the judge ruled was not sent. The trial records clearly show that prosecutor absolutely failed to prove her charges. However, the judge has decided otherwise and the Supreme Court has denied review. Plaintiff respectfully requests this Court to please not allow State Bar Disciplinary authorities to fabricate evidence and destroy the life of a law-abiding innocent citizen whose only brush with the law is a speeding ticket in his entire forty years in the States. Plaintiff's suffering and pain inflicted by the State Bar are unparalleled in the history of State Bar disciplinary cases in all the fifty states and other territories of the

United States.  There is no yardstick to measure these damages.  Plaintiff wishes to erase this horrible stigma of being branded as a 'dishonest man.'

71.     With respect to all Claims for Relief enumerated herein, as against all named defendants, reasonable attorneys' fees, court costs, expenses and disbursements.

72.     And all such other relief as this Court shall deem just and proper.

Respectfully submitted.
Dated this 29th day of January, 2008

PADAM KUMAR KHANNA,
*Pro Se*
2600  Tenth Street, #407
Berkeley, California 94710

Tel: 1-510-549-2786
Fax:1-510-549-2832

E-Mail: pkhanna@pacbell.net

## VERIFICATION

I, PADAM KUMAR KHANNA, declare as follows:

I am the plaintiff in this action.  I have reviewed the attached


" Complaint for money damages against Jagjit Singh Randhawa, Baljit Randhawa and Does I
through X"

I, declare under the penalty of perjury and under the laws of the State of California that
the foregoing is true and correct.

Executed at Berkeley, California on January 29, 2008


Padam K. Khanna