

जं. No. ____ दिनांक 21.FEB.2007
No. ____ Date ____

The Signature of ____ (Executive)
____ of marriage )

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी.पा.वी.)
Section Officer (CPV)
सी.पी.वी. प्रभाग CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

...ed in 1995 for the purpose of AFL doing business in United States, between the years 1996 and
..., other than the Randhawas' $16,000 deposit in November 1996 and a $100 deposit in ...
1997, the account had no other deposits during those three years.  The balance ranged between
$22.41 in September 1996 and ($59.44) in January 1997, excluding the Randhawas' deposit.[15]  By
May 1999, the balance was zero.  Such a business account is clearly suspect.  Respondent self-
righteously claimed that he had to close the bank accounts because the clients were out of control
when in fact, there were no other substantial transactions except for the $25,000 in November 1996.

Moreover, there is no evidence that the alleged letters from AFL were mailed from
India.  The December 21, 1996, letter[16] from the Director of Finance of AFL, informing the
Randhawas that AFL received their investment of five Lakhs and 52,000 Rupees and that stocks and
shares would be issued in January 1997, was personally delivered to the Randhawas by Respondent.
Similarly, the September 19, 1997, letter,[17] informing the Randhawas that AFL was in the process
of issuing the class A preferred stock certificate worth 20 lakhs shares to the Randhawas, was also
personally delivered to the Randhawas by Respondent.

In February 2003, the State Bar investigator Alice Verstegen wrote letters to the
alleged officers of AFL in India – Financial Controller, the Secretary-Corporate Affairs and the Vice-
President of Human Resources – regarding the Randhawas' investment in AFL.  She never received
replies from these individuals.[18]  Instead, the State Bar received a letter from Chiter S. Khanna,
Respondent's brother and purportedly the chairman of AFL, dated September 12, 2003.[19]  The letter
coincidentally corroborates Respondent's side of the story.  But the suspicious letter was delivered
to the State Bar in an envelope without any postage markings and Verstegen was never able to track
down its origin of mailing.  Respondent blamed the missing original envelope from India on the

---

[15]State Bar exhibit 6.

[16]State Bar exhibit 28, p. 3.

[17]State Bar exhibit 28, p. 6.

[18]State Bar exhibit 21.

[19]State Bar exhibit 27.

-10-

ANNEXTURE No 13 (10)

COPY TO COPY

VIJAY DATTA
Sub Divisional Magistrate
Old Middle School Complex,
Ram Pura, Delhi-110038,



सं० . २१०२१   दिनांक 2.1 FEB 2007
No. ........

To,

(बेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी.-पा.प्र.)
Section Officer (C.L.)
सीपीवी प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

State Bar's destruction of evidence. Absent any evidence of tampering, the Court believes that Respondent somehow had the letter delivered to the State Bar and not necessarily from India.

Chiter Khanna's letter contradicted the other alleged letters from AFL. He wrote that AFL would immediately refund the money to the Randhawas as unsolicited funds for investment. In fact, he stated that "we have made every possible effort from 1997 to 1999 to refund the funds to Mr. Randhawa." While he indicated that the investment was prohibited and that its financial department made an error regarding the issuance of the stock, there is no evidence of the alleged October 18, 1997 follow-up letter correcting its error. He further claimed that AFL ceased operations in 1999 and was in the process of liquidation, some five years later. In sum, the letter conveniently supported Respondent's arguments without any credible evidence.

Finally, Respondent is supposedly the legal counsel for AFL, yet he could not produce any certified copies of AFL's articles of incorporation. In fact, he could not produce any certified copies of documents proving AFL's legal existence. Respondent may have had originally intended AFL to be a legitimate business. Yet, it never got off the ground. AFL became a sham corporation, unbeknownst to the Randhawas. But Respondent knew. Nevertheless, Respondent maintains that the current status of AFL is good in 2004 even though AFL's chairman stated that they were in the process of liquidation in 2003.

C.    Conclusions of Law

    *1.    Count One: Avoiding Interests Adverse to a Client (Rules Prof. Conduct, Rule 3-300)*[20]

Rule 3-300 provides that an attorney must not enter into a business transaction with a client or knowingly acquire an interest adverse to a client unless the transaction or acquisition is fair and reasonable to the client, is fully disclosed to the client, the client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to do so, and the client thereafter consents in writing to the transaction or acquisition.

The purpose of this rule is to "recognize the very high level of trust a client reposes in his

---

[20] References to rules are to the current Rules of Professional Conduct . . .

-11-

ANNEXTURE No. 13 (11)



सं०
No. ۹0۹۹    दिनांक 2 1 FEB 2007
                Date

(SHEKHAR YADAV)
Section Officer (P.I.)
CPV Division
Min. of External Affairs, New Delhi

and to ensure that that trust is not misplaced. [Citations.] Sadly, this case stands with too others as an example of an attorney's preference of his personal interests in manifest disregard of the interests of his client." (*In the Matter of Kittrell* (Review Dept. 2003) 4 Cal. State Bar Ct. Rptr. 615, 623.)

6    Respondent argues that he should not be responsible for a client's investment just because
7    he "also happens to be a stockholder in that company." (Respondent's Closing Arguments, 17:21-
24.) Such a cavalier attitude undermines the purpose of rule 3-300.

8    Respondent clearly failed to demonstrate that the dealings with the Randhawas were fair and
9    reasonable. (*Hunniecutt v. State Bar* (1988) 44 Cal.3d 362, 372-373.)

10    Respondent clearly and convincingly violated rule 3-300 by failing to comply with its
11    prophylactic requirements. Respondent knew that the terms of the business transaction were unfair
12    and unreasonable to the Randhawas in that they did not receive any evidence of their investment,
13    such as a stock certificate or promissory note. In fact, the Randhawas were never given any interest
14    in AFL. Also, the Randhawas' investment was not secured. Further, the transaction and its terms
15    were never fully disclosed and transmitted in writing to the Randhawas in a manner that should
16    reasonably have been understood by them. Moreover, the Randhawas were never advised in writing
17    that they should seek the advice of an independent lawyer of their choice nor were they given a
18    reasonable opportunity to seek the advice of an independent lawyer of their choice. Finally,
19    Respondent did not obtain written consent from the Randhawas to the terms of the transaction.
20    Thus, Respondent violated rule 3-300.

21    2.    *Count Two: Misappropriation (Bus. & Prof. Code, § 6106)*

22    Business and Professions Code section 6106[21] provides that the member's commission of an
23    act involving moral turpitude, dishonesty or corruption constitutes grounds for suspension or
24    disbarment.

25    The State Bar charges that Respondent, after receiving the Randhawas' $25,000 investment
26    funds, misappropriated those funds, thus committing acts of moral turpitude and dishonesty.

27    _____

28    [21]References to sections are to sections of the Business and Professions Code.

-12-



ANNEXURE No. 13 (12)

COPY TO COPY

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035



21 FEB 2007

सं. ........ दिनांक
No.

SHEKHAR YADAV
(Executive)
CPV Division
Ministry of External Affairs, New Delhi

Respondent argues that he never asked the Randhawas to invest in AFL and that they invested in AFL against his specific instructions not to do so. He further professes not to have any idea of how the Randhawas got access to his deposit slips. He also alleges that the deposit slips were stolen from his office while the Randhawas testified that he gave them specific depositing instructions. Once the Randhawas deposited the money into his personal account and the Khanna Foods account, Respondent then claims that the $9,000 in his personal account was for legals fees that the Randhawas still owed him despite the fact that there were no outstanding fees. He asserts that the $16,000 in the Khanna Foods account belonged to AFL and was nonrefundable to his clients. He further tells a convoluted story of how his mother gave another $16,000 to AFL so that the $16,000 remaining in the Khanna Foods account could be his personal money. As discussed earlier, the Court finds Respondent's story unbelievable and rejects each of his fabrications."

In fact, Respondent engaged in a scheme to defraud the Randhawas out of their money by luring them to invest in a nonexistent company and then spent their money on his personal expenses. The promised stock certificates never materialized. Therefore, by misappropriating $31,000 advanced by the Randhawas, Respondent committed acts of moral turpitude and dishonesty in wilful violation of section 6106.

3.    *Count Three: Failure to Return Client Files (Rules Prof. Conduct, Rule 3-700(D)(1)*

Respondent is charged with a violation of rule 3-700(D)(1), which provides that a member whose employment has terminated must promptly release all papers and property to the client at the request of the client.

Respondent contends that in January 2002 he had not sent the files to attorney Byrnes because he did not know who to send the files to and was not sure if attorney Byrnes still represented the Randhawas.[22] In his April 2002 letter to the State Bar, Respondent indicated that he still did not know to whom to send the Randhawa files.[23] At trial he blamed attorney Byrnes for not calling him

---

[22] State Bar exhibit 11.

[23] State Bar exhibit 13, p. 2.

-13-

ANNEXTURE No. 13(13)

COPY TO COPY

Date



No. २९०६  Date २.१.FEB 2007

(शेखर ताबड़/SHEKHAR TABRU)
Section Officer (O.I.)
CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

... whether attorney Byrnes wanted to view the files and for not sending him a letter of authorization from the Randhawas. In other word, Respondent argues that he was in a fog as to what to do with the files.

Contrary to Respondent's assertion, attorney Byrnes' repeated requests for the client files in July and September 2001 constitute a sufficiently specific request under rule 3-700(D)(1). Respondent clearly was aware of the obligation because he replied to those letters, albeit nonresponsive, and admitted that Jagjit "has an absolute right to those files." After October 2001, when Respondent failed to make the files available or send them to attorney Byrnes in a timely manner, attorney Byrnes assisted the Randhawas in filing a complaint with the State Bar.

Finally, some ten months after the request, Respondent wrote to the State Bar and attorney Byrnes on April 25, 2002,[24] that he was going to send the files to attorney Byrnes. In attorney Byrnes' May 9, 2002 letter to the State Bar,[25] attorney Byrnes confirmed that he had received the Randhawa files from Respondent. Respondent's failure to comply with attorney Brynes' July 18, 2001 request for the Randhawas files until late April 2002 is clear and convincing evidence that Respondent is culpable of violating rule 3-700(D)(1). Respondent's defense of misunderstanding is not justified.

   4.   *Count Four: Failure to Render Accounts (Rule 4-100(B)(3))*

Respondent is charged with a violation of rule 4-100(B)(3), which provides that a member must maintain complete records of all funds, securities and properties of a client coming into the possession of the member or law firm and render appropriate accounts to the client regarding them.

The Court finds, by clear and convincing evidence, that Respondent is culpable of violating rule 4-100(B)(3). In response to attorney Brynes' request for an accounting of the investment funds and legal fees, Respondent's July 13, 2001 letter did not contain a breakdown of the legal fees that he had been paid. Instead, he simply listed the alleged total amount of legal fees received from his clients and the total amount of outstanding fees in each matter. Moreover, Respondent attempted

[24] State Bar exhibits 14 and 15.

[25] State Bar exhibit 16.

-14-

ANNEXTURE No. 13 (14)

TO COPY

Date................ Examiner

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035.



**21 FEB 2007**

सं./No. .............. दिनांक/Date ..............

................................................../....................

................................................../....................

(SHEKHAR TABHANE)
CPV Division
विदेश मंत्रालय, नई दिल्ली
External Affairs, New Delhi

[...] Randhawas had ever made an investment in AFL. In fact, in that letter, [Respondent]
[...] that the Randhawas show him the receipts of money they had sent to India for investment
in AFL.

The Supreme Court noted the duty of an attorney to keep proper accounting books and client
transactions records so that the attorney could produce them and show fair dealing if the attorney's
actions were called into question. "The failure to keep proper books ... is in itself a suspicious
circumstance." (*Clark v. State Bar* (1952) 39 Cal.2d 161, 174.)

To date, the Randhawas have not received an accounting of the $31,000 they had invested
in AFL or their legal fees. Respondent's failure to render an accounting of the monies received from
the Randhawas constitutes a wilful failure to render an appropriate account of client funds within
the meaning of rule 4-100(B)(3). (See *In the Matter of Fonte* (Review Dept. 1994) 2 Cal. State Bar
Ct. Rptr. 752, 758.)

5.   *Count Five:  Misrepresentations to the State Bar Regarding Client Funds (Bus.
& Prof. Code, § 6106)*

The State Bar charges that Respondent violated section 6106 by misrepresenting to and
misleading the State Bar regarding the disposition of the funds the Randhawas had given him in his
letters to the State Bar on January 30 and April 11, 2002.

In the January letter, Respondent stated that he "only had authority from AFL to use [the
Khanna Foods] account for payment of AFL incurred usual incidental expenses in the United States."
In the April letter, Respondent again claimed that the account "was strictly for expenses and other
related expenses incurred by [Respondent] as [AFL's] legal representative in the United States." In
fact, Respondent used the account to pay Respondent's personal bills and purchases, such as
computers and a parking citation.

Respondent also denied that he was responsible for the Randhawas' investment in AFL. He
wrote in the April letter to the State Bar, "Mr. Randhawas deposited the funds for investment
purposes and on his own initiative and volition. I never told him to do so."[26] Respondent further

---

[26]State Bar exhibit 13.

-15-

ANNEXTURE No. 13 (15)

COPY TO COPY

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035.



that the Randhawas had deposited the funds in Respondent's bank accounts without ...........to do so.  "[T]hey were strictly prohibited to invest money in any of my personal investments."[27]  He claimed that he had no knowledge of how the Randhawas knew about his

6  accounts when in fact, he gave them the deposit slips and instructed them to deposit installments of less than $10,000 each time.  He told the State Bar that he would advise AFL not to allow the

6  Randhawas to invest and to return the money.  But AFL supposedly acknowledged receipt of the
7  funds, thanked the clients, and assured them the stock certificates were forthcoming.
8      Finally, he asserted that he had nothing to do with the investment funds and that the clients
9  had to seek a refund from AFL directly.  He feigned how upset he was upon finding out about the
10  investment.  Yet, he treated the $16,000 as his own personal funds and the $9,000 as payment for
11  legal fees.
12      Therefore, Respondent clearly committed acts of moral turpitude by making these false,
13  contradictory and misleading statements regarding the client funds to the State Bar in wilful violation
14  of section 6106.
15      **6.**    *Count Six: Misrepresentations to the State Bar Regarding Client Files (Bus. &*
16          *Prof. Code, § 6106)*
17      Respondent is charged with violating section 6106 by making numerous misrepresentations
18  and misleading statements to the State Bar regarding the Randhawas' files. In his January 2002 letter
19  to the State Bar, Respondent claimed that it was the "first time" he had heard the clients demanded
20  their files.  In fact, attorney Byrnes had been requesting them since July 2001.  Respondent also
21  asserted that he had offered attorney Byrnes "to see them at the time suitable to both of them."  On
22  the contrary, he told attorney Byrnes that he could send the copies of all the files and that he would
23  charge him the going rate for copying and Respondent's time for copying. He also claimed that he
24  told attorney Byrnes that he could see the files anytime after October 15, 2001 but that he had not
25  heard from attorney Byrnes.
26      Arguably, because Respondent wrote "can certainly send" and not "will certainly send," it
27
28  [27]State Bar exhibit 11.

-16-

ANNEXTURE No. 13 (16)



VIJAY DATTA
Sub Divisional Magistrate
..........
Old Mission School Complex
Ram Pura, ..........



No. 2903 दिनांक 27 FEB 2007

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (मो॰ स॰ प्र॰)
Section Officer (O.L.)
सी॰पी॰वी॰ प्रभाग, नई दिल्ली
CPV Division
विदेश मंत्रालय, नई दिल्ली
Ministry of External Affairs, New Delhi

...indicate that Respondent was going to forward the files to attorney Byrnes, it never directly told attorney Byrnes that the files were available for his review after October 2001. After waiting five months without any success, attorney Byrnes reasonably decided that rather than wasting time in a battle with Respondent to retrieve the files, he and his clients would seek the State Bar's assistance. Even that took an additional five months since Respondent

6    continued to deny his unwillingness to release the files to his clients and blamed attorney Byrnes for
7    the inexcusable miscommunication. In his April 25, 2002 letter to the State Bar, Respondent insisted
8    that "[a]t no point in time anyone asked [him] to either forward or send the files to Mr. Byrnes."[28]
9        The Court finds his contentions groundless. He had clearly and convincingly violated section
10    6106 by misrepresenting to and misleading the State Bar that he had offered attorney Byrnes an
11    opportunity to review the client files but attorney Byrnes had chosen to ignore the opportunity. In
12    fact, it was Respondent who did not promptly release the files as requested.
13        7.    *Count 7: Failure to Cooperate With the State Bar (Section 6068(i))*
14        Section 6068(i) provides that an attorney must cooperate and participate in any disciplinary
15    investigation or proceeding pending against the attorney,
16        The State Bar alleges that Respondent failed to cooperate in a disciplinary investigation by
17    making false and misleading statements to the State Bar.
18        Because Respondent responded to the State Bar's letters, albeit untruthfully, he did not
19    substantively violate the statute requiring him to cooperate with the State Bar's investigation of his
20    misconduct. His misrepresentations to the State Bar have already been found in violation of section
21    6106. Therefore, Respondent did not violate section 6068(i).
22
23        **IV.    LEVEL OF DISCIPLINE**
23    A.    **Factors in Mitigation**
24
25        Respondent bears the burden of proving mitigating circumstances by clear and convincing
26    evidence. (Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct, std.
27
28    [28] State Bar exhibit 14.

-17-

ANNEXTURE No. 13 (17)

COPY TO COPY

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Compound,
Ram Pura, Delhi-110035.



1.2(e).)[39] There is no compelling mitigating evidence.

Although Respondent has no record of prior discipline in his 17 years of practice when the misconduct began in 1996, his lack of record is not considered as mitigation because his present misconduct is deemed very serious. (Std. 1.2(e)(i).)

The Court offered Respondent adequate opportunity to introduce mitigating factors, but he declined. Although he listed at least 13 potential character witnesses and stated that more than 100 clients who were "ready, willing and able" to testify about his character, none testified on his behalf.

**B.    Factors in Aggravation**

There are many aggravating factors in this case. (Std. 1.2(b).)

Respondent committed multiple acts of wrongdoing in abusing his position of trust for personal gain. (Std. 1.2(b)(ii).) He improperly solicited the Randhawas for investment, engaged in a scheme to defraud the clients, misappropriated about $31,000 from the Randhawas to his own use and benefit, failed to promptly return client files, failed to provide them with an accounting, and failed to avoid adverse interests.

Respondent's misconduct was clearly surrounded by bad faith, dishonesty and overreaching by misrepresenting to the clients that AFL was a profitable business venture and lured them to invest. They believed him because they considered him a friend, a fellow countryman who spoke their language. When Respondent telephoned them from India, they believed that the investment was sound and a profit would be made. Based on the trust and confidence that the Randhawas held for Respondent as their attorney and friend, they were willing to borrow money from Jagjit's father to satisfy Respondent's request for the final investment. But after they invested, he told them that he could not refund the monies because of his fiduciary duty owed to AFL and that they had to recover the funds from AFL directly. Then he converted the funds to his own use. At trial, Respondent attempted to slander the Randhawas' character, insisted that their investment was forbidden and denied ever persuading them to invest. He claimed the $16,000 became his own personal funds because his mother in India paid AFL the $16,000. (Std. 1.2(b)(iii).)

_____

[39] All further references to standards are to this source.

-18-

ANNEXTURE No. 13 (18)

COPY TO COPY
Examiner
Date...........

VIJAY DATTA
Sub Divisional Magistrate
Paload Garden
Old Middle School Complex
Ram Pura, Delhi-110035



21 FEB 2007

(शेखर यादव/SHEKHAR YADAV)
GPV Division
Ministry of External Affairs, New Delhi

Furthermore, Respondent failed to provide any fee agreement to the Randhawas, even though its fees exceeded $1,000. (Bus. & Prof. Code, § 6148.) This uncharged misconduct is considered as further aggravation. (Std. 1.2(b)(iii).)

Respondent's misappropriation of $31,000 caused the Randhawas substantial harm. (Std. 1.2(b)(iv).) The clients hold working class jobs with limited financial means. Despite their many requests for a refund or an accounting of their investment, Respondent has not returned the money to the Randhawas.

Respondent demonstrated indifference toward rectification of or atonement for the consequences of his misconduct. (Std. 1.2(b)(v).) He refuses to admit to any wrongdoing, despite the clear and convincing evidence, and has never reimbursed any of the funds misappropriated from the clients. Instead, he insists that the Randhawas were to blame for their financial loss and that Respondent was the victim of the Randhawas' dishonesty.

Respondent displayed a lack of cooperation to the Randhawas. (Std. 1.2(b)(vi).) His lack of candor to the State Bar has already been found as a violation of section 6106. More significantly, Respondent's misrepresentations at trial and in his closing brief are further aggravating. "Under certain circumstances, false testimony before the State Bar may constitute an even greater offense than misappropriation of clients' funds." (*Doyle v. State Bar* (1982) 32 Cal.3d 12, 23.) Here, Respondent's testimony regarding the existence of AFL, his inability to refund the investment funds, the incredible letters and documents from alleged officers of AFL, the theft of the deposit slips, and so on, was deliberately false. His lack of candor is a strong aggravating circumstance.

## V. DISCUSSION

The purpose of State Bar disciplinary proceedings is not to punish the attorney, but to protect the public, to preserve public confidence in the profession and to maintain the highest possible professional standards for attorneys. (*Chadwick v. State Bar* (1989) 49 Cal.3d 103, 111; *Cooper v. State Bar* (1987) 43 Cal.3d 1016, 1025; Std. 1.3.)

This case involves misappropriation of about $31,000, fraud, failure to release client files, failure to render accounts, failure to avoid adverse interests, and repeated misrepresentations to the State Bar. The standards for Respondent's misconduct provide a broad range of sanctions ranging

-19-

ANNEXURE No. 13.(14)

COPY TO COPY

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden
Old Middle School Complex,
Ram Pura, Delhi-110035.



No. ...2920... दिनांक 27 FEB 2007
Date

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (कानूनी)
Section Officer (Legal)
सी पी वी प्रभाग CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

1  from reproval to disbarment, depending upon the gravity of the offenses and the harm to the client.

2  (Stds. 1.6, 2.2(a), 2.3, 2.8, and 2.10.)  The standards, however, are only guidelines and do not

3  mandate the discipline to be imposed.  (*In the Matter of Moriarty* (Review Dept. 1990) 1 Cal. State

4  Bar Ct. Rptr. 245, 250-251.)  "[E]ach case must be resolved on its own particular facts and not by

5  application of rigid standards."  (*Id.* at p. 251.)

6      Standard 2.2(a) provides that culpability of wilful misappropriation of entrusted funds shall

7  result in disbarment, unless the amount is insignificantly small or the most compelling mitigating

8  circumstances clearly predominate.  Here, Respondent's misappropriation of about $31,000 is

9  significant and there is no compelling mitigation.

10      Standard 2.3 provides that culpability of moral turpitude and intentional dishonesty toward

11  a court or a client shall result in actual suspension or disbarment.  As discussed above, Respondent's

12  misappropriation was an act of moral turpitude and his incredible justification for his action to the

13  Court is dishonest.

14      In his closing arguments,[20] Respondent maintains that he did no wrong.  Instead, he charges

15  that the State Bar and attorney Byrnes had filed a false and malicious complaint against him and

16  withheld and fabricated evidence.  Respondent attacks the integrity of the State Bar and attorney

17  Byrnes and attempts to vilify his clients' credibility and character with tangent reasoning and

18  unsubstantiated allegations (i.e. prosecutorial misconduct, evil plot, immigration fraud, terrorist

19  connection, and violent behavior.)  Respondent contends that it is the State Bar who "must be

20  properly punished for subjecting Respondent to such rigorous pressure and hardship for the past

21  three years.  OCTC must be made to answer for fabricating and suppressing the evidence and for

22  making its witnesses knowingly perjure themselves under the laws of the State of California."

23  (Respondent's Closing Arguments, 18:1-6.)

24      The State Bar, on the other hand, urges a minimum of two years actual suspension for

25  Respondent's misconduct of misappropriation and misrepresentations, particularly since Respondent

27

28  _____
      [20]Respondent's exhibit FFF attached to his Closing Arguments is not admitted into evidence as it was introduced after the trial.

-20-



No. ........
Date  2 1 FEB 2007

The Executive

(शेखर यादव/SHEKHAR YADAV)
अनु सचिव (सी.पी.वी.)
CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

—54—

ntage of immigrants clients who had extremely limited financial means, a significan[t]
[lan]guage barrier, and virtually no business and investment experience. The State Bar has cited
several cases in support of its disciplinary recommendation, including *In the Matter of Kittrell*
(Review Dept. 2003) 4 Cal. State Bar Ct. Rptr. 615, *Rose v. State Bar* (1989) 49 Cal.3d 646, *Beery*

5    *v. State Bar* (1987) 43 Cal.3d 802, and *In the Matter of Peavey* (Review Dept. 2002) 4 Cal. State Bar

6    Ct. Rptr. 483, and *In the Matter of Johnson* (Review Dept. 1995) 3 Cal. State Bar Ct. Rptr. 233.

7          The Court finds Respondent's arguments without merit and his conduct significantly

8    more outrageous than that of the attorneys in *Kittrell, Rose, Beery, Peavey or Johnson*. Moreover,

9    Respondent presented no mitigating evidence even though he had been in practice for 25 years.

10          In *Kittrell*, the attorney, who had been in practice for 24 years, was actually suspended for

11    three years for entering into a real estate transaction with an unsophisticated client who lost her life

12    savings of $61,000 in the transaction. The attorney concealed material facts and known risks from

13    his client about the investment. Instead, he told the client that it was a "can't lose" investment.

14          In the other cases cited by the State Bar, those attorneys were actually suspended for two

15    years for persuading vulnerable clients to invest in failed businesses without disclosing significant

16    risks and abused the trust placed in them by their clients.

17          Here, at the time Respondent seduced his clients to invest in a high risk business, Respondent

18    knew or should have known that the business was a sham. The company was alleged to be

19    incorporated in 1992; the Khanna Foods account was never adequately funded, other than with the

20    Randhawas' money; the company was supposed to be liquidated in 2002 some 11 years later

21    without ever having done any business; and at trial, Respondent testified that the current status of

22    AFL was good and that "in a year or two might be very good." Respondent's misrepresentations

23    continue.

24          To further aggravate his misconduct, he advances his fraudulent and contrived

25    misrepresentations before this Court by maligning the character and integrity of his clients, attorney

26    Brynes and Deputy Trial Counsel Albertsen-Murray, by producing uncertified documents and alleged

27    letters from AFL's officers, by asserting that the $25,000 is now his and by denying ever having

28    received the additional $6,000 from the Randhawas.

-21-

ANNEXTURE No. 13 (31)

COPY TO COPY

Date............ Examiner

c/s

VIJAY BATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Puraj, Delhi-110035.

No. 2909    Date 21 FEB 2007

OFFICER (CPV)

शेखर यादव /SHEKHAR YADAV
CPV Division
Min. of External Affairs, New Delhi

Respondent's misconduct reflects a blatant disregard of professional responsibilities. He
clearly has shown no insight into his wrongdoing. He had flagrantly breached his fiduciary duties
to the Randhawas and abused their trust as their attorney. When he told them that AFL was a
lucrative business venture and that he needed the funds before his trip to India, the Randhawas
believed him. Respondent exploited the Randhawas' trust, lack of business experience and high
hope for a profitable return of their investment. He has refused to accept responsibility for his
misconduct and has done nothing to rectify the harm he has caused.

It is settled that an attorney-client relationship is of the highest fiduciary character and always
requires utmost fidelity and fair dealing on the part of the attorney. (*Beery v. State Bar* (1987) 43
Cal.3d 802, 813.) The Supreme Court noted that "[t]he essence of a fiduciary or confidential
relationship is that the parties do not deal on equal terms, because the person in whom trust and
confidence is reposed and who accepts that trust and confidence is in a superior position to exert
unique influence over the dependent party." (*Id.*)

The misappropriation of client funds is a grievous breach of an attorney's ethical
responsibilities, violates basic notions of honesty and endangers public confidence in the legal
profession. In all but the most exceptional cases, it requires the imposition of the harshest discipline
– disbarment. (*Grim v. State Bar* (1991) 53 Cal.3d 21.) In *Kaplan v. State Bar* (1991) 52 Cal.3d
1067, the Supreme Court disbarred an attorney who intentionally misappropriated $29,000 from his
law firm. In *In the Matter of Spaith, supra,* 3 Cal. State Bar Ct. Rptr. 511, the attorney was disbarred
for misappropriating $40,000 from a client's personal injury settlement funds and misled the client
over a year as to the status of the money.

In a similar case, *In the Matter of Priamos* (Review Dept. 1998) 3 Cal. State Bar Ct. Rptr.
824, the attorney engaged in business transactions with a client and committed acts of moral
turpitude by his seven year self-dealing with over $500,000 of investment funds he was asked by his
client to handle, which included the attorney unilaterally paying himself nearly $450,000 in
management and legal fees. The attorney's failure to demonstrate an appreciation of misconduct or
learn from his extended period of overreaching of his vulnerable client was a significant aggravating
factor to disbar him.

-22-

ANNEXURE No. 13(22)

COPY TO COPY

Date...........

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden
Old Middle School Complex,
Ram Pura, Delhi-110035.



सं. / No. ......... दिनांक / Date ..... 2 1 FEB 2002

(Executive)

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी.पी.वी.)
Section Officer (O.I.)
सीपीवी प्रभाग/CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

1    In this case, it has been almost eight years since the Randhawas gave Respondent $31,000

2    for investment. Respondent unilaterally declares $9,000 as payment for outstanding legal fees and

3    $16,000 as his own funds and denies receipt of the remaining $6,000. He has no accounting to

4    evidence any outstanding legal fees owed by the Randhawas; no banking statements to support the

5    banking transactions among AFL, his mother and the Khanna Foods account; and no certified

6    documents of AFL as a legitimate corporation or a viable business entity. Like the attorney in

7    *Priamos*, Respondent has no insight into his misconduct.

8        Moral turpitude is defined as "an act of baseness, vileness or depravity in the private and

9    social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted

10   and customary rule of right and duty between man and man." (*In re Higbie* (1972) 6 Cal.3d 562,

11   569.) Respondent has clearly and wilfully committed multiple acts of moral turpitude.

12       In recommending discipline, the "paramount concern is protection of the public, the courts

13   and the integrity of the legal profession." (*Snyder v. State Bar* (1990) 49 Cal.3d 1302.) "It is clear

14   that disbarment is not reserved just for attorneys with prior disciplinary records. [Citations.] A most

15   significant factor . . . is respondent's complete lack of insight, recognition, or remorse for any of

16   his wrongdoing. To the present time, he accepts no responsibility for what happened and only seeks

17   to blame others." (*In the Matter of Wyshak* (Review Dept. 1999) 4 Cal. State Bar Ct. Rptr. 70, 83.)

18   An attorney's failure to accept responsibility for actions which are wrong or to understand their

19   wrongfulness is considered an aggravating factor. (*Carter v. State Bar* (1988) 44 Cal.3d 1091, 1100-

20   1101.)

21       In this matter, the aggravating circumstances are significant. Although the Court had

22   encouraged Respondent to provide mitigating evidence, he produced none. Respondent's refusal

23   to return funds to the Randhawas, significant client harm and continuous failure to comprehend basic

24   adherence to fiduciary duties owed to clients warrant the highest level of public protection. Instead

25   of recognizing his wrongdoing, Respondent went to great length during his testimony to deny his

26   misconduct and blamed his clients for giving him the money. He insists that he was the victim, not

27   his clients.

28       While the Randhawas may have had personal problems in the past, those issues are irrelevant

-23-

सं०. No. 301016    दिनांक 2 1.FEB 2007

(D.M.S./Executive)

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी०पी०)
Section Officer (C.P.)
सी०पी०वी० प्रभाग / CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

2   to Respondent's misappropriation of their $31,000 investment funds, failure to promptly return the

3   files, failure to render an accounting, failure to advise his clients regarding an adverse interest, failure

4   to provide the clients with a fee agreement for fees exceeding $1,000, and making repeated

5   misrepresentations to the State Bar. In other word, the clients' problems do not justify Respondent's

6   professional misconduct or preying upon their vulnerability as Indian immigrants.

7       Respondent's acts of dishonesty "manifest an abiding disregard of the fundamental rule of

8   ethics – that of common honesty – without which the profession is worse than valueless in the place

9   it holds in the administration of justice." (*Levin v. State Bar* (1989) 47 Cal.2d 1140, 1147.)

10      The Supreme Court has repeatedly noted "that deception of the State Bar may constitute an

11  even more serious offense than the conduct being investigated." (*Franklin v. State Bar* (1986) 41

12  Cal.3d 700, 712.) In *Olguin v. State Bar* (1980) 28 Cal.3d 195, the Supreme Court increased the

13  recommended attorney's discipline from 90 days to six months not only because of his dereliction

14  of duty to his client resulting in the action being dismissed but, particularly, also because of his

15  deceptive conduct on at least two occasions – lying to a State Bar investigator about that client

16  matter, fabricating documents for his defense, and continuing to assert their authenticity after

17  learning of their bogus nature.

18      Here, Respondent's misrepresentations to the State Bar investigator and before this Court are

19  more egregious than those of the attorney in *Olguin* and thus, merit a more severe degree of

20  discipline in light of his other offenses. (See *Worth v. State Bar* (1978) 22 Cal.3d 707, [disbarment

21  for an attorney who misappropriated client funds and presented false and fabricated testimony to the

22  State Bar – misrepresentations which he continued to make before the Supreme Court].)

23      After considering his reprehensible misconduct compounded by his presentation of false and

24  fabricated testimony and evidence, the Court concludes that an actual suspension of two or three

25  years is inadequate to protect the public, to preserve public confidence in the profession and to

26  maintain the highest possible professional standards for attorneys. The "public is therefore at great

27  risk unless Respondent is required to successfully complete a reinstatement proceeding before again

28  being allowed to practice law in this state." (*In the Matter of Priamos, supra*, 3 Cal. State Bar Ct.

Rptr. 824, 830.)

-24-

13(24)

COPY TO COPY

Date_____  Examiner

VIJAY DATTA
Sub Divisional Magistrate
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035.



No. ......... दिनांक 2 1 FEB 2007
                    Date

(शेखर यादव/SHEKHAR YADAV)
अनुभाग अधिकारी (सी.पा.वि.)
Section Officer (O.L.)
सी.पी.वी. प्रभाग, CPV Division
विदेश मंत्रालय, नई दिल्ली
Min. of External Affairs, New Delhi

Respondent "is not entitled to be recommended to the public as a person worthy of trust and

accordingly not entitled to continue to practice law." (*Resner v. State Bar* (1960) 53 Cal.2d 605,

615.) Therefore, based on the severity of the offenses, the serious aggravating circumstances and

the lack of mitigating factors, the Court recommends disbarment.

## VI. RECOMMENDED DISCIPLINE

This Court recommends that Respondent PADAM KUMAR KHANNA be disbarred from

the practice of law in the State of California and that his name be stricken from the rolls of attorneys

in this State.

It is also recommended that the Supreme Court order Respondent to comply with rule 955,

paragraphs (a) and (c), of the California Rules of Court, within 30 and 40 days, respectively, of the

effective date of its order imposing discipline in this matter.

## VII. COSTS

The Court recommends that costs be awarded to the State Bar pursuant to Business and

Professions Code section 6086.10 and payable in accordance with Business and Professions Code

section 6140.7.

## VIII. ORDER OF INVOLUNTARY INACTIVE ENROLLMENT

It is ordered that Respondent be transferred to involuntary inactive enrollment status pursuant

to Business and Professions Code section 6007(c)(4) and rule 220(c) of the Rules of Procedure of

the State Bar. The inactive enrollment shall become effective three calendar days after service of

this order.

Dated: October 20, 2004

_Pat McElroy_
**PAT McELROY**
Judge of the State Bar Court

-25-

ANNEXTURE No. 13 (25)

COPY TO COPY
Examiner
Date

VIJAY DATTA
Sub Divisional Magistrate,
Rajouri Garden,
Old Middle School Complex,
Ram Pura, Delhi-110035.







-59

# CERTIFICATE OF SERVICE

[Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of San Francisco, on October 21, 2004, I deposited a true copy of the following document(s):

**DECISION AND ORDER OF INVOLUNTARY INACTIVE ENROLLMENT**

in a sealed envelope for collection and mailing on that date as follows:

[X] by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at San Francisco, California, addressed as follows:

PADAM KUMAR KHANNA
KHANNA & NARAIN
2600 10TH ST
BERKELEY, CA 94710-2522

[X] by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

TAMMY ALBERTSEN-MURRAY, Enforcement, San Francisco

I hereby certify that the foregoing is true and correct. Executed in San Francisco, California, on October 21, 2004.

George Hue
Case Administrator
State Bar Court

13(26)

Certificate of Service.wpt

COPY TO COPY
Date........ Examiner

VIJAY D
Sub Divisional M
Rajouri Ga
Old Middle Scho
Ram Pura, D

33)

21 FEB 2002

(SHEKHAR YADAV)
Section Officer (CPV)
CPV Division
Min. of External Affairs, New Delhi

# R. S. MAHLA

*L.L.M.*

(Retired Judge / Metropolitan Magistrate)
Distt. & Session's Court Delhi
**ADVOCATE**
**DELHI HIGH COURT & SUPREME**

Chamber No. K-75,
Near Gate No. 2,
Tis Hazari Court, Delhi-54
Mobile : 9891052211

*Office-Cum-Resi.* :
128, Rajdhani Enclave,
Pitam Pura, Delhi-110034
Phone : 55398813
Mob.   : 9811329291

## Speed Post/A.D./UP.C

Ref. No. .........................

Dated .......................... **15.2.2007**

To

1. **Sh.Jagjit Singh Randhawa**
   **395, Sparrow Drive,**
   **Hercules, California,**
   **United States of America**

2. **Mrs.Baljit Singh Randhawa**
   **wife of Mr.Jagjit Singh Randhawa,**
   **395, Sparrow Drive,Hercules,**
   **California,United States of America.**

Dear Sir/Madam,

Under instructions from and on behalf of my clients M/s.Amerindia Foods Limited, 14-E/CC,Hari Nagar,New Delhi-110064, through its Director Sh.K.S.Khanna, I hereby serve you with the following legal notice:-

1. That my aforesaid client is a Registered Company, registered with Registrar of Companies, Andhra Pradesh,Hyderbad, India, vide Registeration Certificate dt.30th October,1992, under Indian Companies Act,1956.

2. That you both had purchased shares of my aforesaid client and my aforesaid client had issued you, addressee No.1,Share Certificate No.8, No. of shares 50000, vide Share Ledger Folio No.37 dated 13.11.2003, of face value of Rs.10/- each, distinctive No.71 to 50070, against payment of Rs.5,00,000/-(Rupees five lacs) paid by you addressee No.1, vide Pay Order No.001109 dt.30.12.1996, issued by Union Bank of India, Nasik City, Maharashtra, India. My aforesaid clients had accordingly acknowledged the receipt of said sum of Rs.5,00,000/-(Rupees five lacs)only, vide letter dt.21.12.1996 addressed to you addressee No.1,

3. That my aforesaid clients had also sent letter dt.7.7.1997 and 19.9.1997 to you addressee No.1, regarding affairs of my clients company,
   Sh.Padam Kumar Khanna,

4. That authorised representative of my aforesaid clients used to deal with you regarding your investment in the company of aforesaid clients. However, you have filed a false complaint against said Mr.Padam Kumar Khanna, with false allegations that he was not authorised representative of my clients, and/or my clients are not in existence, andMr.Padam Kumar Khanna has mis-appropriated said sum of Rs.5,00,000/-(25,000 JS $)instead of investing said sum in purchasing shares of my clients' company, with State Bar of California, investigated by Alice Verstegen, Attorney, Special Investigator, Office of The Chief Trial Counsel, Enforcement, 1149, South Hill Street, Los Angeles, California,USA. In response to queries put by Special Investigator, my client vide reply dt.12.9.2007

-: 2 :-

# R. S. MAHLA
### L.L.M.
*(Retired Judge / Metropolitan Magistrate)*
*Distt. & Session's Court Delhi*
**ADVOCATE**
**DELHI HIGH COURT & SUPREME**

Chamber No. K-75,
Near Gate No. 2,
Tis Hazari Court, Delhi-54
Mobile : 9891052211

*Office-Cum-Resi.*
128, Rajdhani Enclave,
Pitam Pura, Delhi-110034
Phone : 5 5 3 9 8 8 1 3
Mob. : 9811329291

Ref. No. ..........................                — 2—                Dated ..........................

to letter dt.19.2.2003 sent to Special Investigator, submitted
detailed particulars support with documents, regarding existance
of my clients as Registered Limited Company in India,
Sh.Padam Kumar Khanna as its Authorised Representative, and
your investment of 5,00,000/-(25,000 US $) for purchase of
50,000/ shares each having face value of Rs.10/-. However,
The State Bar of California, was pleased to impose a penalty
of US $ 31000 against Mr.Padam Kumar Khanna, and his licence
has also been cancelled.

5. You, knowing fully well that your said money was invested
in purchase of 50000 shares in the company of my aforesaid client,
you said money was duly acknowledged by my aforesaid client,
and progress of my aforesaid clients was also communicated to
you by my aforesaid clients from time to time,had initiated
malicious prosecution against Mr. Padam Kumar Khanna, authorised
representative of my aforesaid clients and due to which Mr.Padam
Kumar Khanna has lost his licence, and also suffered penalty
of US $ 31000 without any cause or reason on his part, but due
to malicious prosecution launched by you against him, with
false allegations, insunations, accusation, imputations.

6. Mr.Khanna has also claimed damages/compensation for suffering
said malicious prosecution launched by you, loss of his licence/
livelihood, loss of reputation, status, dignity, credibility,
business circle, clients etc.etc.

7. Due to your said malicious prosecution against Mr.Padam
Kumar Khanna, with allegations that my clients/company is not
in existance and/or is a fake/sham company, my client has also
suffered a lot, on account of its reputation, dignity, credibilit
-business, clients etc.etc.

8. You are responsible and liable for lowering down the
reputation, dignity, credibility, status, business dealings,
loss of clients, business future prospects, perspective and
prospective income, for your doing so, my client has suffered
a loss of at least Rs.25,00,000/-(Rupees twenty five lacs).

9. You are, therefore, legally liable to pay and my clients
are legally entitled to recover said sum of Rs.25,00,000/-(Rupees
twenty five lacs)for causing disrepute, lowering down its
reputation, status, dignity, credibility, loss of business,
clients, future business prospects, perspective and prospective
income.

You are,therefore, called upon to pay to my aforesaid
clients a sum of Rs.25,00,000/-(Rupees twenty five lacs)only,
as damages, for causing disrepute, lowering down its reputation,
dignity, credibility, loss of clientage, business prospects,

— 3—

# R. S. MAHLA
### L.L.M.
*(Retired Judge / Metropolitan Magistrate)*
*Distt. & Session's Court Delhi*
**ADVOCATE**
**DELHI HIGH COURT & SUPREME**

Chamber No. K-75,
Near Gate No. 2,
Tis Hazari Court, Delhi-54
Mobile : 9891052211

*Office-Cum-Resi. :*
128, Rajdhani Enclave,
Pitam Pura, Delhi-110034
Phone : 5 5 3 9 8 8 1 3
Mob.   : 9811329291

Ref. No. ...........................          **-3-**                          Dated ..........................

perspective, prospective income, by making false allegations, accusation, insunation, imputations, allegations that my clients are not in existance, and/or are fake/sham company, etc. within 15 days of receipt of this notice positively, in default on your part in this regard, my clients shall be constrained to proceed against you for recovery of said sum, with interest @ Rs.18% per annum, from date of receipt of this notice, till actualy date of payment of said sum to my aforesaid client, in appropriate court of competent jurisdiction, at your risk, as to costs and consequences you shall be exclusively liable, besides your prosecution for committing offences punishable under Indian Penal Code.

Please take and comply with this notice positively, lest face consequences.

Copy kept.

(R.S.MAHLA)
ADVOCATE

REFERENCE TO ABBREVIATIONS USED:

T.T. : refers to Trial Transcript

T.T. I, I and II:  refer to Trial Transcript volumes I, II and IIII