UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PADAM KUMAR KHANNA, | No. C-07-5136 CW (EMC) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| BALJIT RANDHAWA, *et al.*, | |
| Defendants. | **(Docket Nos. 18-19 )** |

_____/

Plaintiff Padam Kumar Khanna has moved for default judgment against Defendants Jagjit Singh Randhawa and Baljit Randhawa (husband and wife).  According to Mr. Khanna, between 2001 and 2003, the Randhawas conspired with State Bar of California employees to violate his civil rights, including his right to a fair trial, equal protection, and due process, for the purpose of depriving him of his attorney's license.  *See* Am. Compl. ¶¶ 2, 26-28, 30, 32-33, 35-36, 38, 44, 66.  In his motions for default judgment, Mr. Khanna requests $740,000 total in compensatory damages.[1]

Judge Wilken has referred the motions for default judgment to the undersigned for a report and recommendation.  Having considered Mr. Khanna's brief and supporting documents, as well as all other evidence of record, the Court hereby recommends that both motions be **DENIED**.

///

---

[1]   This is a figure higher than the damages requested in the First Amended Complaint ($500,000).  *See* Am. Compl. ¶ 68; *see also* Fed. R. Civ. P. 54(c) (noting that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

**United States District Court**
For the Northern District of California

# I.   FACTUAL & PROCEDURAL BACKGROUND

Initially, Mr. Khanna filed suit against the Randhawas, the California State Bar, and certain of its employees. *See Khanna v. State Bar of California*, No. 07-2587 EMC (Docket No. 1) (complaint). The undersigned, a magistrate judge, was the presiding judge in that case. The Randhawas never responded to the complaint, and so their default was entered on July 24, 2007. *See id.* (Docket No. 23) (clerk's notice). Thereafter, the undersigned issued an order which severed the claims against the Randhawas from the claims against the State Bar and its employees. *See id.* (Docket No. 31) (order). The claims against the Randhawas were thus given a new case number and the case -- *i.e.*, the instant action -- was assigned to Judge Wilken.

Mr. Khanna subsequently moved for default judgment in the instant case against both Randhawas. The undersigned recommended that the motions be denied. *See* Docket No. 6 (report and recommendation). Subsequently, Judge Wilken adopted the report and recommendation and denied the motions. *See* Docket No. 10 (order). In adopting the report and recommendation, Judge Wilken implicitly agreed that there was no private right of action as to the only claim asserted against the Randhawas -- *i.e.*, perjury. *See* 18 U.S.C. § 1621. Judge Wilken, however, gave Mr. Khanna an opportunity to file an amended complaint. Mr. Khanna did so. *See* Docket No. 11 (amended complaint).

In the amended complaint, Mr. Khanna alleges that he provided legal services to the Randhawas for a variety of criminal and civil matters and that, between 2001 and 2003, the Randhawas conspired with State Bar of California employees to violate his civil rights and deprive him of his attorney's license. *See* Am. Compl. ¶¶ 2, 20, 23. According to Mr. Khanna, the Randhawas contacted the State Bar to file a complaint against him. In their complaint, the Randhawas claimed that Mr. Khanna had induced them to invest $25,000 in Amerindia Foods Limited ("AFL"), a company located in India; that AFL was actually a fake company; and that Mr. Khanna misappropriated their investment money for his own personal expenses rather than a legitimate investment. *See* Am. Compl ¶¶ 2-4, 15, 47. Mr. Khanna claims that, after the State Bar investigated the matter (between November 21, 2001 and July 25, 2003), the Randhawas agreed to help the State Bar take away Mr. Khanna's attorney's license based on a false misappropriation

**United States District Court**
For the Northern District of California

1   charge. *See* Am. Compl. ¶¶ 2-3. The State Bar then filed a notice of disciplinary charges against

2   Mr. Khanna in State Bar Court. *See* Am. Compl. ¶ 3.

3         At the State Bar Court trial, the Randhawas allegedly lied to support the charge that Mr.

4   Khanna stole their money under the guise of an investment in a nonexistent Indian company. *See*

5   Am. Compl. ¶¶ 2-4, 32-33, 44-64. According to Mr. Khanna:

6   •     Mr. Randhawa testified falsely that the total amount Mr. Khanna stole from the couple

7         equaled $31,000. *See* Am. Compl. ¶ 48. The notice of disciplinary charges accused Mr.

8         Khanna of misappropriating $25,000 only. *See* Am. Compl. ¶ 47. The State Bar failed to

9         file an amended notice to reflect the larger sum of $31,000. *See* Am. Compl. ¶ 49. As a

10        result, Mr. Khanna did not have the opportunity to prepare an adequate defense. *Id.*

11  •     Mr. Randhawa testified falsely about communications from AFL in the attempt to establish

12        that AFL did not exist. For instance, Mr. Randhawa testified falsely that he received a letter

13        from AFL, dated September 19, 1997, not by regular mail but rather by personal delivery

14        from Mr. Khanna -- thus suggesting that the true author of the letter was Mr. Khanna and not

15        any representative of AFL.[2] In addition, Mr. Randhawa testified falsely that he never

16        received a second letter from AFL, dated December 21, 1996.[3] Finally, Mr. Randhawa

17        testified falsely that a third letter from AFL, dated July 7, 1997, was actually written by Mr.

18        Khanna and not the AFL officer Arthur Berg.[4] *See* Am. Compl. ¶¶ 50-57.

19  •     The Randhawas made false statements in their State Bar complaint misrepresenting details

20        about Mr. Khanna's assistance with a temporary restraining order matter and about the facts

21        underlying a motor vehicle incident. *See* Am. Compl. ¶¶ 59-64. They then lied under oath at

22        the State Bar Court trial about the accuracy and truth of their statements in the complaint.

23        *See* Am. Compl. ¶¶ 59-64.

24  ────────────────

25        [2] In this letter, AFL stated that Mr. Randhawa was entitled to a stock certificate. *See* Am.
    Compl., Ex. B-8.

26        [3] In this letter, AFL acknowledged receipt of the Randhawas' investment money. *See* Am.
27  Compl., Ex. B-7.

28        [4] This letter was actually addressed to Mr. Randhawa's brother-in-law and discussed AFL
    business. *See* Am. Compl., Ex. B-7.

United States District Court

For the Northern District of California

- Mr. Randhawa falsely represented in the State Bar complaint that he paid for Mr. Khanna's services by cash and checks. *See* Am. Compl. ¶¶ 59-63.

- State Bar employees destroyed a DHL envelope for a letter from AFL -- written by Mr. Khanna's brother, an AFL officer -- to State Bar investigator Alice Verstegen. The letter was written in response to Ms. Verstegen's inquiry about the Randhawas' investment in AFL; the DHL envelope demonstrated that the letter did in fact issue from AFL in India (*i.e.*, AFL was not a nonexistent company as the Randhawas and State Bar employees claimed). *See* Am. Compl. ¶¶ 32-33. After the DHL envelope was destroyed, the State Bar deputy trial counsel, Tammy Andersen-Murray, had Ms. Verstegen challenge the authenticity of the letter at the State Bar Court trial. *Id.* Ms. Verstegen testified that the letter arrived at the State Bar office without any postage marking or other indicator of its origins and that Mr. Khanna fabricated the letter and somehow had it placed on her desk. *See* Am. Compl. ¶¶ 4, 33. Mr. Randhawa corroborated Ms. Verstegen's testimony by testifying that AFL was a nonexistent corporation.[5] *See* Am. Compl. ¶¶ 4, 33.

The alleged conspiracy between the Randhawas and the State Bar officials resulted in Mr. Khanna's conviction and suspension from the practice of law. *See* Am. Compl. ¶¶ 7-8. The State Bar Court issued a decision on October 20, 2004, finding, *inter alia*, that Mr. Khanna defrauded the Randhawas by having them invest $31,000 in a nonexistent company called AFL and using their money to pay personal expenses. *See* Am. Compl., Ex. B-12, at 13. The State Bar Court judge recommended Mr. Khanna's disbarment. *See* Am. Compl. ¶ 7, Ex. B-12, at 25. The California Supreme Court summarily denied Mr. Khanna's petition for writ of review and issued an order for disbarment on June 21, 2006. *See* Am. Compl. ¶ 8.

Mr. Khanna served the amended complaint, which contained the above allegations, on the Randhawas on February 18, 2008. *See* Docket No. 12 (proofs of service). As before, the Randhawas failed to respond to the complaint. The Clerk of the Court entered default against the

---

[5] The State Bar Court judge refused to admit into evidence a photocopy of a DHL airway bill that, according to Mr. Khanna, would have proved that the AFL letter was in fact sent from India. Apparently, the judge refused to admit the evidence because Mr. Khanna proffered the document as an attachment to his closing brief after the State Bar Court trial. *See* Am. Compl. ¶ 4 & n. 1.

**United States District Court**
For the Northern District of California

1  Randhawas on March 20, 2008, *see* Docket No. 15 (clerk's notice), and Mr. Khanna then filed the

2  currently pending motions for default judgment.  Judge Wilken referred the motions to the

3  undersigned for a report and recommendation. *See* Docket No. 16 (order).

4        On July 2, 2008, this Court issued an order instructing Mr. Khanna to provide any and all

5  evidence in his possession, custody, or control to support his allegation that there was a conspiracy

6  between Randhawas and the State Bar employees. *See* Docket No. 20 (order).  In response, Mr.

7  Khanna filed a brief in which he stated that he did not have any supplemental evidence to provide

8  and that he had previously provided all evidence to support his allegation of conspiracy with the

9  amended complaint. *See* Docket No. 22 (Pl.'s Supp. Br.).

## II.  DISCUSSION

11  A.  Adequacy of Service of Process

12        When deciding a motion for default judgment, a court must first "assess the adequacy of the

13  service of process on the party against whom default is requested." *See Bd. of Trustees of the N.*

14  *Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2

15  (N.D. Cal. Jan. 2, 2001).  As the Randhawas are individuals, Federal Rule of Civil Procedure 4(e)

16  governs.  Under that rule, an individual may be served by "delivering a copy of the summons and of

17  the complaint to the individual personally" or by "leaving a copy of each at the individual's dwelling

18  or usual place of abode with someone of suitable age and discretion who resides there." *See* Fed. R.

19  Civ. P. 4(e)(2).

20        In the instant case, the proof of service for the summons and amended complaint indicate that

21  the process server served the Randhawas by leaving a copy of the amended complaint at a home in

22  Hercules, California, with a person who withheld her name.  The woman was described as a person

23  of Indian descent in her forties. *See* Docket No. 12 (proofs of service).  There is no evidence to

24  suggest that the address where the process server served the summons and amended complaint was

25  not the Randhawas' dwelling house or usual place of abode.  Nor is there any evidence to suggest

26  that the woman with whom the documents were left did not reside there.  The Court therefore

27  concludes that service of process was proper.

28  ///

United States District Court

For the Northern District of California

B.    Default Judgment and *Eitel* Factors

As noted above, the Randhawas' default was entered on March 20, 2008.  *See* Docket No. 15 (clerk's notice).  Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter judgment against a defendant against whom a default has been entered.  *See* Fed. R. Civ. P. 55(b)(2).  The determination to grant or deny a motion for default judgment is within the trial court's discretion.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Because default has already been entered in this case, the general rule is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  However, "Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment." *Id.* at 917.  "In order to do justice, a trial court has broad discretion to require that a plaintiff prove up even a purported prima facie case by requiring the plaintiff to establish the facts necessary to determine whether a valid claim exists that would support relief against the defaulting party." *In re McGee*, 359 B.R. 764, 773 (9th Cir. 2006); *see also* Fed. R. Civ. P. 55(b)(2) (providing that a court may conduct a hearing when it needs to, *e.g.*, "establish the truth of any allegation by evidence" or "investigate any other matter").

In the instant case, arguably, some of the *Eitel* factors listed above weigh in favor of a default judgment.  For example, Mr. Khanna would be prejudiced if default judgment were not granted because he would be denied the right to judicial resolution of his claims and would likely be without other recourse for recovery.  *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  It is also unlikely that the Randhawas' default is a result of excusable

1    neglect.  Mr. Khanna served both the original complaint as well as the amended complaint on the

2    Randhawas but they responded to neither.

3        However, other factors weigh against granting default judgment to Mr. Khanna.  In his

4    motion, Mr. Khanna is seeking $740,000 in compensatory damages, a sum which exceeds the

5    monetary damages requested in the complaint.  *See* Fed. R. Civ. P. 54(c) (noting that "[a] default

6    judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

7    Even if Mr. Khanna had limited his request for monetary relief to the amount stated in his complaint,

8    a default judgment would still be inappropriate because, as discussed below, the merits of Mr.

9    Khanna's substantive claims are weak and the perjury claim is legally insufficient.  *See Philip*

10   *Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (noting that the

11   second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may

12   recover").

13       1.    Substantive Merits of Conspiracy-Based Claims

14       In the amended complaint, Mr. Khanna asserts the following causes of action against the

15   Randhawas: (1) a violation of his right to a fair trial pursuant to the Fifth Amendment, *see* 42 U.S.C.

16   § 1983; (2) a violation of his procedural and substantive due process rights pursuant to the

17   Fourteenth Amendment, *see id.*; (3) a conspiracy to interfere with his civil rights in violation of 42

18   U.S.C. § 1985(2);[6] (4) a violation of his right to equal protection pursuant to the Fourteenth

19   Amendment, *see* 42 U.S.C. § 1983; (5) perjury in violation of 18 U.S.C. § 1621; (6) a violation of

20   his equal rights under the law, *see* 42 U.S.C. § 1981(a), (c); and (7) civil conspiracy.  *See* Am.

21   Compl. ¶¶ 2, 26-28, 30, 32-33, 35-36, 38, 44, 66.  With the exception of the perjury claim, which is

22   discussed in Part II.B.2, *infra*, all of the claims are based on a conspiracy, *i.e.*, a conspiracy between

23   the Randhawas and certain State Bar employees.

24       Some of the claims explicitly require a conspiracy -- *e.g.*, the claim for civil conspiracy and

25   the § 1985(2) claim.  *See* 42 U.S.C. § 1985(2) (providing for relief from a conspiracy to interfere

26

27   ──────────

28       [6]  Although the caption of the amended complaint refers to 42 U.S.C. § 1985(3), Mr. Khanna
discusses in the body of the pleading alleged conduct that relates to the obstruction of justice in the State
Bar Court trial, which is governed by § 1985(2).

1    with civil rights). Other claims implicitly require a conspiracy -- *i.e.*, the § 1983 claims. Under §

2    1983, a defendant can be held liable only when he or she is acting under color of state law. *See* 42

3    U.S.C. § 1983. Private actors, such as the Randhawas, typically cannot be held liable unless, *e.g.*,

4    they are engaged in joint action or a conspiracy with a state actor. *See Franklin v. Fox*, 312 F.3d

5    423, 441 (9th Cir. 2002) ("A private individual may be liable under § 1983 if she conspired or

6    entered joint action with a state actor."). Finally, with respect to the § 1981 claim, while there need

7    not be a conspiracy in order for a plaintiff to have a viable claim, Mr. Khanna's § 1981 claim *as pled*

8    alleges that there is a conspiracy between the Randhawas and the State Bar. *See* Am. Compl ¶ 66

9    ("This [§ 1981] discrimination and the resultant injury caused, were brought about by the conspiracy

10    hatched between defendants and Ms. Tammy Albertsen-Murray, the Deputy Trial Counsel and State

11    Bar investigator, Verstegen of the State Bar who are both white citizens.").

12       Because the majority of the claims all hinged on there being a conspiracy, the Court, as noted

13    above, asked Mr. Khanna to provide all evidence he had to establish that there was a conspiracy

14    between the Randhawas and the State Bar employees. *See* Docket No. 20 (order). And, as noted

15    above, in response to the Court's order, Mr. Khanna did not provide any new evidence to support his

16    allegation of conspiracy -- instead, he simply pointed to documents that he had previously filed with

17    the Court as attachments to his complaints. More specifically, Mr. Khanna claims that a photocopy

18    of an AFL stock certificate (dated November 13, 2003) and two AFL letters (dated September 19,

19    1997, and December 21, 1996) prove that the Randhawas engaged in a conspiracy to deprive him of

20    his civil rights and attorney's license. *See* Docket No. 22 (Pl.'s Supp. Br.); Am Compl., Ex. B;

21    Compl., Attach. 2.

22       Mr. Khanna also suggests that other exhibits attached to his complaints support his

23    allegations of conspiracy. These exhibits include:

24    •    A photocopy of a complaint against the Randhawas, filed by AFL in an Indian criminal court

25        (on November 12, 2006), which alleges that the Randhawas conspired with the State Bar of

26        California. *See* Am. Compl, Ex. A.

27    •    A photocopy of a letter (dated February 15, 2007), giving notice to the Randhawas that AFL

28        is filing a civil action against the Randhawas in an Indian civil court. *See* Am. Compl., Ex.

United States District Court

For the Northern District of California

B.

• Photocopies of a certificate of incorporation for AFL (dated October 30, 1992) and a certificate of commencement of business for AFL (dated October 30, 1992). *See* Compl., Attach. 2, Annex. Nos. 1-2.

• A photocopy of a bank deposit receipt for money paid to AFL (dated December 30, 1996) with the name of Jagjit Singh Randhawa written on it. *See* Compl., Attach. 2, Annex. No. 5. Mr. Khanna claims that the above evidence shows that AFL was a legitimate corporation and that the Randhawas invested in AFL. See Am. Compl. ¶¶ 6, 15.

None of the documents upon which Mr. Khanna relies are availing to his case. First, at least some of the documents are not admissible because there is insufficient evidence to demonstrate that they are authentic. Second, even if the Court accepted all of the documents as authentic, at most, the documents indicate that AFL is in fact an existing company and that the Randhawas lied in their State Bar complaint and at the State Bar Court trial; however, the documents do nothing to suggest that there was in fact a *conspiracy* between the Randhawas and the State Bar employees to harm Mr. Khanna.

a.    Authenticity

Federal Rules of Evidence 901 and 902 govern the authentication of documents. Under Rule 901(a), a document may be deemed authentic if there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Under Rule 902, certain documents are self-authenticating -- *i.e.*, "[e]xtrinsic evidence of authenticity . . . is not required." *See* Fed. R. Evid. 902.

I.    Indian Criminal Complaint

As noted above, one of the documents that Mr. Khanna has provided to support his conspiracy claims is the criminal complaint that AFL filed against the Randhawas in an Indian criminal court. In essence, the criminal complaint is a foreign public document. Under Rule 902(3), foreign public documents are -- under certain circumstances -- self-authenticating. The rule states that "[e]xtrinsic evidence of authenticity as a precedent to admissibility is not required" for

[a] document purporting to be executed or attested in an official

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.

*See* Fed. R. Evid. 902(3). The question in the instant case is whether the Indian criminal complaint qualifies as a self-authenticating foreign public document under Rule 902(3).

As noted above, foreign public documents are self-authenticating if they are "executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, *and* accompanied by a final certification." Fed. R. Evid. 902(3) (emphasis added); *see also United States v. Squillacote*, 221 F.3d 542, 562 (4th Cir. 2000) (stating that there are two requirements for authentication of a foreign document -- (1) that the *document* is what it purports to be and (2) that the *official* vouching for the document is who he or she purports to be). In *Squillacote*, the Fourth Circuit found that East German intelligence records were properly authenticated because both of these requirements had been met. First, there was a certification from the unified Federal Republic of Germany's counterespionage department director, who stated that his official position and area of expertise provided the basis for his authority to make the certification. *See id.* at 561. The director also stated that he had compared the documentary evidence introduced by the United States government to "'actual duplicates'" of the original records and certified that the documents were "'true and correct copies'" of "'genuine and authentic records'" of the East German records. *See id.* Second, there was a final certification from a German Embassy representative in Washington, D.C., who established that it was the German director's signature on the proffered certification and that the German director was authorized to attest to the authenticity of the East German intelligence records. *See id.* at 561, 563.

**United States District Court**
For the Northern District of California

1   In the instant case, it appears that Mr. Khanna made some attempt to comply with the

2   requirements of Rule 902(3).  Mr. Khanna has provided a photocopy of the Indian criminal

3   complaint.  After every page of the complaint there is a photocopy of a blank page bearing (1) the

4   image of a seal imprinting "Ministry of External Affairs" and (2) the image of a stamp imprinting

5   the name of Sanjeev Manchanda and indicating that Sanjeev Manchanda is a section officer in the

6   CPV Division of the Ministry of External Affairs in New Delhi, India.  Presumably, each of these

7   blank pages is the back page of the preceding printed page of the alleged criminal complaint.  The

8   alleged criminal complaint is accompanied by a document entitled "General Authentication

9   Certification."  The form certifies that Sanjeev Manchada was "empowered to action the official

10  capacity designated in the document, to which faith and credit are due" and is signed by Patrick

11  McNeil, apparently a consul with the U.S. Embassy in New Delhi, India.  *See* Am. Compl., Ex. A.

12          Although Mr. Khanna has made an attempt to comply with the requirements of Rule 902(3),

13  it is not clear that those requirements have in fact been met.  First, nothing in the certification or

14  documentation establish that Sanjeev Manchada and the Division of the Ministry of External Affairs

15  do in fact have the authority to attest to criminal complaints -- or even the authority to attest to

16  publicly filed documents generally.  This lack of specificity stands in contrast to the detailed

17  certification in *Squillacote*.  While there is a General Authentication Certification from Mr. McNeil,

18  it simply states that Sanjeev Manchada was "empowered to action the official capacity designated in

19  the document, to which faith and credit are due."  This somewhat cryptic and opaque language says

20  nothing and contrasts with the clear certification from the German Embassy representative in

21  *Squillacote*.  Mr. Khanna has thus failed to satisfy Rule 902(3).

22                          ii.    AFL Business Records

23          In addition to the criminal complaint, Mr. Khanna offers various AFL business records to

24  support his claim that there was a conspiracy -- *i.e.*, photocopies of a certificate of incorporation for

25  AFL (dated October 30, 1992); a certificate of commencement of business for AFL (dated October

26  30, 1992); a bank deposit receipt (dated December 30, 1996) with the name of Jagjit Singh

27  Randhawa written on it; a share certificate issued to Jagjit Singh Randhawa (dated November 13,

28  2003); a letter (dated February 15, 2007) giving notice that AFL is filing an action against the

**United States District Court**
For the Northern District of California

1  Randhawas in an Indian civil court; a second AFL letter (dated September 19, 1997) informing Mr.

2  Randhawa that he is entitled to a stock certificate); a third AFL letter (dated December 21, 1996)

3  acknowledging receipt of the Randhawas' investment money; and a fourth AFL letter (dated July 7,

4  1997) addressed to Mr. Randhawa's brother-in-law and discussing AFL business.  *See* Am. Compl.,

5  Ex. B.  Under Rule 902(12), certain foreign business records may also be considered self-

6  authenticating:

7          In a civil case, the original or a duplicate of a foreign record of
           regularly conducted activity that would be admissible under Rule
8          803(6) if accompanied by a written declaration by its custodian or
           other qualified person certifying that the record--
9
10                 (A) was made at or near the time of the occurrence of the matters
                   set forth by, or from information transmitted by, a person with
                   knowledge of those matters;
11
                   (B) was kept in the course of the regularly conducted activity; and
12
                   (C) was made by the regularly conducted activity as a regular
13                 practice.

14         The declaration must be signed in a manner that, if falsely made,
           would subject the maker to criminal penalty under the laws of the
15         country where the declaration is signed. . . .

16  Fed. R. Evid. 902(12).

17         The Court finds no foundation for the self-authentication of the AFL business records

18  submitted by Mr. Khanna.  There is clearly a lack of compliance with Rule 902(12).  The plain

19  language of the rule requires "a written declaration by its custodian or other qualified person"

20  certifying that the business records were made under the circumstances specified in the rule.  *See*

21  Fed. R. Evid. 902(12).  There is no written declaration from any AFL personnel to indicate that the

22  context under which these documents were created were trustworthy.

23         To the extent Mr. Khanna argues that the AFL business records should be considered self-

24  authenticating foreign public documents pursuant to Rule 902(3) (the AFL business records were

25  attached to the criminal complaint), those requirements, as discussed above, have not been satisfied

26  here.

27         As a final point, the Court notes that it has concerns about the authenticity of at least some of

28  the AFL business records simply based on their content alone.  *See* Rutter Group Prac. Guide: Fed.

1  Civ. Trials & Evid. ¶ 8:2730 (stating that Rule 902(12) requires that there is no lack of

2  trustworthiness in the source of information or the method or circumstances of preparation of the

3  record). Most notably, the stock certificate is dubiously dated November 13, 2003, seven years after

4  the Randhawas' alleged AFL investment and two years after the Randhawas filed a complaint with

5  the State Bar. *See* Compl., Attach. 2.

6           b.    Conspiracy

7           Even if the Court accepted Mr. Khanna's documents as authentic, Mr. Khanna's case would

8  fare no better. The criminal complaint, if authentic, establishes nothing. There is no evidence of an

9  adjudication leading to or resulting from the putative complaint. Nor is there any evidence as to

10  what the significance of a criminal complaint is -- *e.g.*, it appears it can be initiated by the mere

11  assertion of charges by a private party. The other documents, if authentic, at best indicate that AFL

12  is in fact an existing company and that the Randhawas may have thus lied in their State Bar

13  complaint and at the State Bar Court trial. Even if the Randhawas did in fact lie in their State Bar

14  complaint and State Bar testimony, that does not establish or even tend to establish a conspiracy

15  between the Randhawas and the State Bar employees. There is nothing to suggest that the

16  Randhawas lied pursuant to an agreement with the State Bar employees to harm Mr. Khanna.

17           Mr. Khanna might have a more plausible basis for alleging a conspiracy if there were, *e.g.*,

18  some evidence showing that the State Bar employees knew that the Randhawas had fabricated the

19  misappropriation charge but nevertheless proceeded with disciplinary proceedings. Such evidence

20  might at least suggest that there was an agreement between the State Bar employees and the

21  Randhawas. But Mr. Khanna has produced no such evidence. What is left is simply a conclusory

22  allegation of conspiracy. The allegation of conspiracy strains credulity. *Cf. Bell Atlantic Corp. v.*

23  *Twombly*, 127 S. Ct. 1955, 1965-66 (2007) ("[A] conclusory allegation of agreement at some

24  unidentified point does not supply facts adequate to show illegality. . . . The need at the pleading

25  stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the

26  threshold requirement . . . that the 'plain statement' possess enough heft to sho[w] that the pleader is

27  entitled to relief.'"). Accordingly, the Court concludes that each of Mr. Khanna's causes of action

28

**United States District Court**

For the Northern District of California

1  based on a conspiracy to violate his civil rights is without any factual support even though the Court

2  afforded Mr. Khanna ample opportunity to provide supporting evidence.

3        2.    <u>Sufficiency of the Perjury Claim</u>

4        Because Mr. Khanna has failed to provide evidence establishing, or even suggesting, that

5  there was a conspiracy between the Randhawas and the State Bar employees, default judgment for

6  all of the conspiracy-based claims should be denied. This leaves only the perjury claim against the

7  Randhawas. Here, Mr. Khanna claims that the Randhawas perjured themselves during his State Bar

8  Court trial and argues that he is entitled to relief pursuant to 18 U.S.C. § 1621. But, as this Court

9  has stated in its previous report and recommendation, there is no private right of action, express or

10  implied, for perjury. *See* Docket No. 6 (report and recommendation, at 6).

11        3.    <u>Summary</u>

12        In short, some *Eitel* factors may arguably weigh in favor of default judgment but the critical

13  factors -- *i.e.*, the second and third -- dictate the resolution of this case. Because there is no

14  indication that there was in fact any conspiracy between the Randhawas and the State Bar

15  employees, default judgment is not appropriate. The only nonconspiracy claim is the perjury claim,

16  which the presiding judge in this case has already rejected as not viable.

17        **III.**    **RECOMMENDATION**

18        For the foregoing reasons, the Court recommends that Mr. Khanna's motions for default

19  judgment be **DENIED** and that his claims against the Randhawas be **DISMISSED**.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    Within three days of receipt of this report and recommendation, Mr. Khanna shall serve a

2  copy of the report and recommendation on each Defendant and thereafter file a certificate of service

3  with the Court.

4    Any party may file objections to this report and recommendation with the district judge

5  within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b);

6  Civil L.R. 72-3.

7

8  Dated:  August 13, 2008

9                                                          _____
                                                           EDWARD M. CHEN
10                                                          United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California