

PADAM KUMAR KHANNA
2600 Tenth Street
Berkeley, CA. 94710

Tel: 1-510-524-6181
Fax: 1-510-524-6765

EMail: pkhanna@pacbell.net
*Pro Per*

FILED

AUG 2 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRCIT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

PADAM KUMAR KHANNA,

   Plaintiff,

  vs.

JAGJIT SINGH RANDHAWA , BALJIT
RANDHAWA AND DOES ONE TO TEN,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: C-07-5136 CW (EMC)

**OBJECTIONS TO REPORT AND
RECOMMENDATIONS OF
MAGISTRATE JUDGE EDWARD CHEN
RE PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT**

  Judge Chen has decided the merits of the case, without a hearing, without a trial, without a jury and without affording plaintiff an opportunity to cross examine and confront the witnesses and defendants.  He has recommended that the Motion for Default Judgment be denied and the case be dismissed for the following reasons:

  1. The documents submitted by Plaintiff are neither authentic nor admissible as they do not meet the requirements of Federal Rules of Evidence, Rule 902(3) and Rule 902(12).

2. The documents are suspect and dubious.

3. Even if the documents are authentic, they do not establish conspiracy between defendants and the State Bar prosecutors.

## LEGAL ARGUMENTS

1. <u>Authenticity of the documents submitted</u>:

Judge Chen has made a very serious mistake in applying the Federal Rule of Evidence, 902(3) to the documents attached to the Indian Criminal Complaint. As Judge Chen has stated Rule 902(3) requires that if

> [a] document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation.
> A final certification may be made by a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.
> Fed. R. Evid. 902(3).

Judge Chen concludes from the documents submitted that Sanjeev Manchanda, a Section Officer in the CPV (Consular-Passport-Visa) Division of the Ministry of External Affairs, Government of India is not the person authorized by the laws of India to make the execution or attestation. This is incorrect.

In the General Authentication Certificate, Mr. Patrick McNeil, a Consul in the American Embassy certifies that Sanjeev Manchanda is the person authorized to attest the documents submitted. Mr. McNeil affixes his signatures, stamp of the Consular Section of the American Embassy and imprints the Certificate with the official seal of the Government of the United

1  States and clearly points out that Sanjeev Manchanda was "empowered to action the official
2  capacity designated in the document, to which faith and credit are due'. This is not cryptic or
3  opaque language. This is the language used by the United States Embassy on all the documents
4  which are to be attested, notarized and authenticated. Mr. McNeil is the Consular Officer of the
5  American Embassy and he has the authority to certify the legitimacy and authenticity of the
6  documents and issue the final certificate – all in accordance with the Federal Rule of Evidence
7  902(3).

8      For the past two years, since India joined the "Hague Legalization Convection", each and
9  every document of Indian origin, submitted for attestation before the American courts, by any or
10 all American citizens, bears the exact and same procedure, language and certification.

11     In the United States State Department web site and under "Medical and Legal Assistance
12 to the American Citizens", the State Department issues the following information:

### Authentication of Indian Documents for Use in the
### United States

This page provides information on how to authenticate
an **Indian document** for use in the **United States**.

Documents issued in one country that need to be used in
another country must be "authenticated" or "legalized" before
they can be recognized as valid in the foreign country. This is a
process in which various seals are placed on the document.
Examples of such documents are court documents, birth, death
and marriages records, educational documents, incorporation
papers and other legal papers. Recently, India became a party to
the Hague Convention Abolishing the Requirement of
Legalization for Foreign Public Documents ("Hague
Legalization Convention"). Pursuant to the Hague Legalization
Convention, Indian documents can be authenticated/legalized
for use overseas by the issuance of an "apostille." (For more
information on this subject, please see
http://travel.state.gov/law/info/judicial/judicial_2545.html.)

The Attestations Office of the Ministry of External
Affairs, Consular-Passport-Visa (CPV) Division, in New Delhi
will be the central authority in India for issuing apostilles for
Indian public documents. However, the Government of India is

still determining the manner in which it will issue apostilles, and does not expect to begin doing so until some time in 2007. In the meantime, this sheet explains the process currently being used to authenticate/legalize Indian documents which will continue in the interim.

To legalize an Indian document, it must be presented to the following address in person:

Attestations Office
Ministry of External Affairs (CPV Division)
Patiala House, Tilak Marg (near India Gate)
New Delhi - 110 001
Tel. +91-11-2338-7931

The office's hours for dropping off documents are 9 a.m. - 1 p.m. and 2:30 p.m. - 3:30 p.m., Monday through Friday (excluding Indian public holidays). Documents generally are ready for pick-up within two hours. In some cases, a document issued by an Indian state government must be first authenticated by the Home Department or NRI Department of that particular state before it can be legalized by the Ministry of External Affairs. Inquiries on the names and locations of Indian state Home/NRI Department offices can be obtained by calling the Ministry of External Affairs at 2338-7931.

After the document is legalized by the MEA-CPV Attestations Office, it can be presented to the American Citizen Services Unit of the U.S. Embassy for authentication of the Attestation Officer's Signature. The cost of this service is $30 per document. After this final step, the document is legalized/authenticated for use in the United States.

See:
http://newdelhi.usembassy.gov/acsnotarialauth3.html

2. Suspect and dubious documents:

AFL Records:

Judge Chen questions the authenticity of the AFL Business Records also. In any country, be it the United States of America or India, any Government Official given the responsibility and task of authenticating Court or Business Records reviews very thoroughly the business records presented for attestations. The Indian Government, Ministry of External

Affairs, CPV Division undertakes the task of making sure that the Company Records were made at the time of occurrence of the matters set forth; were made by the officials of the company and were made by the regularly conducted activity as a regular practice.  Plaintiff would indeed prefer a jury trial where these witnesses can testify.  It is criminal to file fake and fabricated documents in any country.  How can a Section Officer of the Ministry of External Affairs certify and authenticate a SHARE CERTIFICATE[1] issued by a Company of India?  Furthermore, the Consular Officer of the American Embassy again checks, rechecks and personally verifies the authenticity of the documents submitted for Final Certification. This is on all fours with *United States v. Squillacote,* 221 F.3d 542,562 (4th Cir.2000).  The language used in the Final Certificate by the Consular Officer of the American Embassy supports and augments  the language used in *Squillacote.*

If this Court rules that the documents, both business and public, bearing seals and signatures of the Indian Court, Indian Government and United States Embassy and in complete accord with the 'Hague Legal Convention", are not authentic and therefore not admissible in the United States Courts of law, then an enormous international litigation will take place. This is the procedure which has been followed by the Indian Government and the United States since India joined Hague Legal Convention.  Court Documents, Incorporation of Indian Companies' papers, Birth and Death Certificates, School Records and other Legal papers issued after the Hague

---

[1] Judge Chen states that the share certificate is dubious as it is dated November 13, 2003, seven years after the Randhawas' alleged AFL investment and two years after the Randhawas filed a complaint with the State Bar. R & R page 13:3-5.  First, it is a properly authenticated, attested and duly notarized document. Second, the issue is NOT when it was issued, the issue is that it was issued nine months BEFORE the trial.  It is clear that Randhawas (defendants) made an agreement with the State Bar prosecutors to suppress the receipt of this share certificate which figured prominently in the State Bar Court's decision as having not been received by the defendants.

1  Legal Convention will all be subject to attack in the United State Courts and would create an

2  international crisis.

3

4      Hundreds of thousands of legal immigrants from India, since the adoption of Hague

5  Legalization Convention, have used the exact and same service.  Thousands of court papers,

6  divorce and marriage papers, incorporation papers used by American companies and businesses

7  and educational certificates and records for foreign students could face litigation.

8

9      3.    Sufficiency of the Pleading of Conspiracy:

10

11     Judge Chen contends that the Indian Criminal Complaint, if authentic, establishes

12  nothing. R & R, page 13:7-8.  It is unclear as to why a great emphasis is being placed on the

13  Indian Criminal Complaint filed by AFL.  As stated, *supra*, one who initiates criminal charges in

14  an Indian Criminal Court against anyone with false, suspect and dubious documents is himself

15  subject to severe penalties and criminal charges.  Anyway, the emphasis should be laid on the

16  accompanying documents which clearly advocate that there was a definite  agreement , and not a

17  tacit agreement but an independent agreement,  between the State Bar prosecutor, Tammy

18  Andersen-Murray and Alice Verstegen, State Bar investigator  and the defendants to suppress

19  and fabricate the letters from AFL, deny the receipt of the letters, deny the receipt of the share

20  certificate, deny any contact with AFL officers in India which are all illegal and overt acts to

21  deprive plaintiff his rightful right to practice law and make a living.   The First Amended

22  Complaint clearly points out that State Bar prosecutors after getting the assurances from

23  defendants to lie and commit perjury proceeded to use their agreement to lie during the trial to

24  achieve the misappropriation charges and meet their goal – a very well-defined allegation of

25  conspiracy. See Comp. page 21-27, paragraphs 44 through 64 inclusive - an eight page detail

with specific examples of cohesion, unity, agreement and understanding to suppress the crucial information and commit illegal and overt acts to subject plaintiff to deprivation of his due process right to license to practice law and make a living. It is clear that after an agreement was reached between the State Bar prosecutors and defendants to lie and suppress the evidence, the prosecutors used this agreement in the State Bar trial court and achieved their goal of having plaintiff be recommended for disbarment. The intent of the conspirators, defendants and the State Bar prosecutors  has been very clearly stated with specific examples, written and duly authenticated documents.  The conspirators, defendants and the State Bar officials, intentionally, deliberately and wantonly made false claim to deprive plaintiff his due process rights. They succeeded to bring about the disbarment of plaintiff by committing these fraudulent and deceitful overt cats. The intentional action of the conspirators in our case and as already *pled* is in full agreement with the recent decision of the Supreme Court in *Allison Engine Co. v. United States ex rel. Sanders and Thacker*, (June 9, 2008) No  07-214.[2] The State Bar prosecutors proceeded to file disciplinary charges ONLY after they obtained assurances from defendants that they would lie in the trial court which they did and Judge Chen agrees that the Randhawas (defendants) probably did lie. This clearly contradicts that there is no evidence to show any agreement between State Bar Prosecutors and defendants.

---

[2] The Supreme Court in a unanimous decision vacated a decision by the Sixth Circuit where the Court held that (1) a plaintiff asserting a claim that a defendant used a "a false record or statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. section 3729(a)(2), "must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim." Slip. Op. at 2; and (ii) a plaintiff asserting a claim that a defendant "conspired to defraud the Government by getting a false or fraudulent claim allowed or paid," 31 U.S.C. section 3729(a)(3).  As in our case, we have shown that the defendants lied and submitted doctored and manufactured documents with the consent and agreement of the State Bar prosecutors, with the intention of these false documents and perjured statements to be used at trial to get the State Bar Court trial judge to rule against plaintiff. This is exactly what the Supreme Court in *Allison Engine* stated – that a plaintiff must prove that the conspirators were intending the false statements to be used to get the Government to pay the claim" Slip. O: at 8.

Judge Chen cites *Belle Atlantic v. Twombly*, 127 S.Ct. 1955 as applicable to the pleadings in our case. The U.S. Supreme Court overturned *Conley v. Gibson*, a 50 year-old standard of pleading, ruling that **antitrust** (emphasis added) conspiracy allegations must be "plausible" to survive a **Motion to Dismiss.** (emphasis added again)

There are three salient factors which make sure that *Twombly* does not apply to our situation:

1. It is an antitrust case which involves tremendous amount of discovery as antitrust cases are complex and time consuming.

   *(There is very little discovery in our case.)*

2. It made general statements of Baby Bells alleged to have acted in *parallel* in trying to thwart entry by potential competitors.

   *(There are definite and concrete allegations of an agreement between the defendants and the State Bar prosecutors to fabricate and suppress document and an agreement that the defendant will commit perjury during the trial.)*

3. Without a definite and plausible allegation of conspiracy, *Twombly* might not survive a Motion to Dismiss.

   *(Defendants cannot file a Motion to Dismiss in this case even if they so desired which they have refused to do as the default has already been entered.)*

If the *Twombly* standard of pleading is applied to our case, it will raise a very novel and precedent setting case before the Supreme Court. Plaintiff's research shows that there has not been a single Federal or State case in the entire United States of America where so much time,

so much energy and so much money has been spent by plaintiff and the Court to get a default judgment against a defendant who has disgraced the court system, degraded the court orders, defied summons and complaints – not once but twice, disobeyed two or more other orders from Judge Chen stating that the defendants had the right to file objections to his report within ten days of the receipt of the mailing of the reports under Fed. R. Civ. P. 72(b) etc. Judge Chen agrees that the process of service has been adequate, see R&R, page 5:11-27. Judge Chen further agrees that there is a possibility that the defendants lied and committed perjury.[3] However, even though they did have their own lawyer, thumbed their noses at the court to make an appearance.

A sincere request is made to this honorable court that it has full authority and complete power to resolve these objections according to Federal Rule of Civil Procedure, Rule 72 (3) which states that "The District judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."

Finally Judge Chen has stated that there has been an error in demand for compensatory damages.

Plaintiff, hereby agrees with Judge Chen and corrects his demand for compensatory damages of $500,000

Submitted with due respect,

---

[3] Both Judge Chen and the Hon. District Judge have concluded that there is no right to private action, express or implied, for perjury. R&R, page 14:3:10.

1  Dated this 26th day of August, 2008

2

3                                              PADAM KUMAR KHANNA

4                                              2600 Tenth Street, Suite 407
                                               Berkeley, CA. 94710

5
                                               Tel: 1-510-549-2786
6                                              Fax:1-510-549-2832
                                               EMail: pkhanna@pacbell.net

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28